UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

BLAKE STEWARDSON,
Plaintiff-Appellee, Cross-Appellant
v.
CHRISTOPHER TITUS
Defendant-Appellant, Cross-Appellee

and

CAMERON BIGGS, *et al.*,
Defendants-Cross-Appellees.

Appeal from the United States District Court
for the Northern District of Indiana
South Bend Division
Cause No. 3:18-cv-00958-DRL-MGG
The Honorable Damon R. Leichty, Judge

**APPELLANT CHRISTOPHER TITUS'S  OPENING BRIEF**

Pamela G. Schneeman
KNIGHT HOPPE KURNIK &
KNIGHT, LTD.
11590 North Meridian Street,
Suite 650
Telephone: (317) 844-3830
Fax: (317) 573-4194
Email: pschneeman@khkklaw.com

*Attorneys for Christopher Titus,
Cameron Biggs, and Sheriff of Cass
County*

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

BLAKE STEWARDSON,
Plaintiff-Appellee, Cross-Appellant
v.
CHRISTOPHER TITUS
Defendant-Appellant, Cross-Appellee

and

CAMERON BIGGS, *et al.*,
Defendants-Cross-Appellees.

Appeal from the United States District Court
for the Northern District of Indiana
South Bend Division
Cause No. 3:18-cv-00958-DRL-MGG
The Honorable Damon R. Leichty, Judge

**APPELLANT CHRISTOPHER TITUS'S OPENING BRIEF**

Pamela G. Schneeman
KNIGHT HOPPE KURNIK &
KNIGHT, LTD.
11590 North Meridian Street,
Suite 650
Telephone: (317) 844-3830
Fax: (317) 573-4194
Email: pschneeman@khkklaw.com

*Attorneys for Christopher Titus,
Cameron Biggs, and Sheriff of Cass
County*

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 23-3262 & 23-3343

Short Caption: Blake Stewardson v. Christopher Titus & Blake Stewardson v. Cameron Biggs, et al.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]  **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Christopher Titus  Cameron Biggs  Cass County Sheriff

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
STEPHENSON MOROW & SEMLER;  KNIGHT HOPPE KURNIK & KNIGHT  LTD

(3)  If the party, amicus or intervenor is a corporation:

   i)   Identify all its parent corporations, if any; and

        Not applicable

   ii)  list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        Not applicable

(4)  Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

Not applicable

(5)  Provide Debtor information required by FRAP 26.1 (c) 1 & 2:


Attorney's Signature: /s/ Pamela G. Schneeman          Date: April 5, 2024

Attorney's Printed Name: Pamela G. Schneeman

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes [✓]  No [ ]

Address: KNIGHT HOPPE KURNIK & KNIGHT, LTD.

        11590 North Meridian Street  Suite 650  Carmel  IN 46032

Phone Number: 317-844-3 80          Fax Number: 317-573-4194

E-Mail Address: pschneeman@khkklaw.com

rev. 12/19 AK

**PROOF OF SERVICE**

I hereby certify that on April 4, 2024, I electronically filed the foregoing APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that service will be accomplished on all participants in the case who are registered CM/ECF users by the CM/ECF system.

*s/ Pamela G. Schneeman*
Pamela G. Schneeman

KNIGHT HOPPE KURNIK & KNIGHT, LTD.
11590 N. Meridian Street, Suite 650
Carmel, IN 46032
Telephone: (317) 844-3830
Fax: (317) 573-4194
Email: pschneeman@khkklaw.com

# TABLE OF CONTENTS

Page

DISCLOSURE STATEMENT .............................................................................i

TABLE OF CONTENTS...................................................................................iii

TABLE OF AUTHORITIES ..............................................................................v

JURISDICTIONAL STATEMENT ....................................................................1

STATEMENT OF THE ISSUE ..........................................................................2

STATEMENT OF THE CASE.............................................................................3

SUMMARY OF ARGUMENT ............................................................................5

ARGUMENT .......................................................................................................6

    A.   Standard of Review ..............................................................................6

    B.  The Court has authority to constitutionally
       correct excessive punitive damages awards. .......................................6

    C.  The Court should exercise its authority to
       constitutionally correct excessive punitive
       damages awards. ...................................................................................8

    D.  The punitive damages imposed  on Titus
       were grossly excessive. .........................................................................9

          1.   On balance, the "guidepost" factors
             demonstrate the punitive damages were
             grossly excessive. ......................................................................11

          2.   The punitive damages imposed
             unconstitutionally subject Titus to a
             lifetime of punishment...............................................................16

          3.  The punitive damages imposed should
             be constitutionally corrected. .....................................................20

CONCLUSION...................................................................................................21

CERTIFICATE OF COMPLIANCE ...................................................................22

PROOF OF SERVICE ........................................................................................23

CIRCUIT RULE 30(d) STATEMENT ..............................................................24

REQUIRED SHORT APPENDIX .......................................................................25

# TABLE OF AUTHORITIES

**<u>Cases</u>**                                                                                               **<u>Page</u>**

*Allahar v. Zahora*, 59 F.3d 693 (7th Cir. 1995) .................................................. 12

*Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984).................................7, 10

*BMV of North America, Inc. v. Gore*, 517 U.S. 559 (1996) ..................... 6, 7, 10-11, 16, 20

*Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257 (1989) ........................................................16

*Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424 (2001)................................................................................6, 7

*Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008)..............................................8

*Green v. Howser*, 942 F.3d 772 (7th Cir. 2019).................................................6

*Harris v. Harvey*, 605 F.2d 330 (7th Cir. 1979) ..................................................10

*Honda Motor Co., Ltd. v. Oberg*, 512 U.S. 415 (1994) .........................................6, 9

*Johansen v. Combustion Engineering, Inc.*, 170 F.3d 1320 (11th Cir. 1999) ........................................................7

*Kemezy v. Peters*, 79 F.3d 33 (7th Cir. 1996) ......................................................10, 20

*Lenard v. Argento*, 699 F.2d 874 (7th Cir. 1983) ...............................................12

*Mathias v. Accor Economy Lodging, Inc.*, 347 F.3d 672 (7th Cir. 2003)................................................................12, 16

*Payne v. Jones*, 711 F.3d 85 (2d. Cir. 2013) ........................................................8, 9

*Perez v. Z Frank Oldsmobile, Inc.*, 223 F.3d 617 (7th Cir. 2000)................................................................10

*Saccameno v. U.S. Bank Nat'l Assoc.*, 943 F.3d 1071 (7th Cir. 2019)................................................................7

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003)................................................................................7, 8, 10

*TXO Production Corp. v. Alliance Resources Corp.*,
509 U.S. 443 (1993)...................................................................................6

*Vasbinder v. Scott*, 976 F.2d 118 (2d Cir. 1992) ..................................10

**Statutes**                                                               **Page**

28 U.S.C. § 1291.......................................................................................2

28 U.S.C. § 1331.......................................................................................1

28 U.S.C. § 1343.......................................................................................1

28 U.S.C. § 1367.......................................................................................1

42 U.S.C. § 1983.......................................................................................3

Indiana Code § 35-42-2-1.......................................................................17

Ind. Code § 35-50-2-7........................................................................17, 18

Ind. Code § 35-50-3-2........................................................................17, 18

**Rules**                                                                    **Page**

Fed. R. Civ. P. 59 .....................................................................................1

# JURISDICTIONAL STATEMENT

The district court had original jurisdiction of this case under 28 U.S.C. §§ 1331, 1343, and 1367. The district court's federal question jurisdiction was based on alleged violations of the Fourth and Fourteenth Amendments to the United States Constitution.

On March 31, 2023, following a three-day jury trial, the district court entered a final judgment in favor of Stewardson and against the Sheriff of Cass County and Christopher Titus. [Short Appendix (hereafter, "S.A") at 1.] The jury awarded Stewardson $400,000 in compensatory damages and imposed $850,000 in punitive damages on Christopher Titus.

On April 27, 2023, the Sheriff of Cass County and Christopher Titus timely filed a motion under Fed. R. Civ. P. 59 seeking remittitur of the compensatory damages and constitutional correction of the punitive damages. [Dist. Ct. Dkt. 255.] Per Federal Rule of Appellate Procedure 4(a)(4), that motion tolled the time for the parties to appeal from the March 31, 2023, final judgment until after the district court ruled on it.

On November 1, 2023, the district court denied the Sheriff of Cass County and Christopher Titus's Rule 59 motion. [S.A. at 3] At that point, the March 31, 2023, final judgment and the district court's order denying the Rule 59 motion merged. *Borrero v. City of Chicago*, 456 F.3d 698, 700 (7th Cir. 2006). The March 31, 2023, final judgment became ripe for review, and the 30-day clock for the parties to appeal from it was started. *Id.*

1

On November 25, 2023, Christopher Titus timely filed his Notice of Appeal. [Dist. Ct. Dkt. 243.] His appeal challenges the constitutionality of the amount of the punitive damages imposed upon him.

Christopher Titus's appeal is taken as a matter of right under 28 U.S.C. § 1291 because it is an appeal from the final decision of a district court of the United States that disposes of all parties' claims.

This is not a direct appeal from the decision of a magistrate judge.

There is one motion pending before the district court: Stewardson's Motion for Order Permitting Consumer Reporting Agencies to Disclose Consumer Reports to Plaintiff for Purposes of Collection (filed on January 16, 2024). [Dist. Ct. Dkt. 256.] That motion does not affect appellate jurisdiction.

## STATEMENT OF THE ISSUE

Whether the $850,000 in punitive damages imposed on Christopher Titus was grossly excessive in relation to the State's legitimate interests in punishing unlawful conduct and deterring its repetition and thereby violated his due process rights.

## STATEMENT OF THE CASE

On January 1, 2018, shortly after midnight, an officer with the Logansport Police Department arrested Stewardson. [Dist. Ct. Dkt. 103 (Ex. A – P.C Aff.).] The Logansport officer transported Stewardson to the Cass County Jail. [*Id*. (Ex. C – Stewardson Dep. p. 84, l. 13-15).] While Stewardson was at the jail, Titus, a jail officer, used force in handling Stewardson. On November 26, 2018, Stewardson filed

this lawsuit under 42 U.S.C. § 1983 alleging that the force had been excessive and also constituted state law battery. [Dist. Ct. Dkt. 1.]

The federal excessive force claims against Titus and the state law battery claims against the Cass County Sheriff based on Titus's use of force under the doctrine of *respondeat superior* were tried to a jury on March 28, 29, and 30, 2023. [Dist. Ct. Dkt. 201, 202 & 208.]

During the trial, the jury heard evidence that Titus "slammed" Stewardson into a wall, "tripped" him to take him to the ground, held him on the ground for 26 minutes while law enforcement officers tried to figure out how to get a broken handcuff off his wrist, and employed a "hip toss" before placing him in a restraint chair. [*See e.g.*, Dist. Ct. Dkt. 223 -- Trial Transcript at p. 576, l. 7 (referencing an "intentional wall-slamming"), at p. 402, l. 22 (referencing that Stewardson was "tripped"), p. 567, l. 3 (referencing the length of time Stewardson was on the ground), p. 513 (referencing a "hip toss").] The jury saw surveillance video of Titus's actions. [*See e.g.*, Dist. Ct. Dkt. 216 – Trial Transcript at p. 8, l. 9 (showing video to the jury).]

As to Stewardson's physical injuries, the jury heard evidence that Stewardson sustained a one-inch laceration on his forehead, had difficulty breathing when he was on the ground, and felt pain throughout his body. It also heard testimony that Stewardson reported to work the very next day and did not seek any medical attention. [Dist. Ct. Dkt. 219 -- Trial Transcript at p. 332, l. 15 – p. 336, l. 3; 339, l. 21- p. 340, l. 17; p. 340, l. 2 – 25; p. 183, l. 14 – p. 184, l. 4; p. 340, l. 22 – p. 341, l. 5.]

As to Stewardson's mental and emotional injuries, the jury heard evidence that Stewardson had a long history of pre-existing mental and emotional issues, including a history of depression, anxiety, post-traumatic stress disorder, ADHD, self-harm, drug use, excessive consumption of alcohol, anger issues, focus problems, memory problems, forgetfulness, poor concentration, had been on a plethora of psychotropic medications, and had attempted suicide several times, including an attempt just five weeks before his arrest on January 1, 2018. [Dist. Ct. Dkt. 219 – Trial Transcript at p. 224, l. 23 – p. 225, l. 16; p. 236, l. 2-16; p. 299, l. 9 - p. 311.]

The jury heard testimony from Stewardson's family and friends all of whom said that Stewardson had changed considerably and was no longer the happy, social, and outgoing person that he had been before his arrest on January 1, 2018. [Dist. Ct. Dkt. 216 – Trial Transcript at p. 30, l. 6-14; p. 35, l. 8 – p 36, l. 14; p. 54, l. 12 -0 p. 55, l. 2; p. 91, l. 15-24.]

The jury also heard rebuttal evidence that Stewardson's life was much improved since January 1, 2018, in that he had not made any further suicide attempts, earned two professional licenses, enrolled at Purdue University where he was working towards a degree in Psychology, got married, had a wife who enthusiastically described his as loving, caring and fantastic, had bought a house, and was expecting a baby [Dist. Ct. Dkt. 219 -- Trial Transcript at p. 341, l. 17 – p. 343, l. 7; p. 83, l. 23-25; p. 98, l. 8-10.]

At the end of the trial, the jury returned a verdict in favor of Stewardson. [S.A. at 1.] It awarded him $400,000 in compensatory damages and imposed $850,000 in

punitive damages on Titus. [*Id.*] The punitive damages are uninsured and Titus will not otherwise be indemnified. [Dist. Ct. Dkt. 226-3.]

## SUMMARY OF THE ARGUMENT

Titus accepts the jury's determination that an imposition of punitive damages is appropriate. But he submits that his conduct was not so reprehensible as to justify the imposition of punitive damages in the amount of $850,000—an amount so large and crushing that that he cannot reasonably expect to pay it in his lifetime.

Titus is a fuel technician with an annual salary of approximately $56,000. [Dist. Ct. Dkt. 111-4 (Titus Dep. p. 17, l. 20-25).] Even if a court should order that his wages be garnished at the rate of 25%, he will only be able to pay Stewardson about $14,000 per year, and it will take Titus, who is now 32 years old, six decades— or until he is 92 (assuming he lives that long)—to satisfy the punitive damages imposed. [Dist. Ct. Dkt. 223 -- Trial Transcript at p. 505, l. 5-6 (Titus was 31 at the time of the trial).]

The jury's award of $400,000 in compensatory damages fully compensated Stewardson for his physical and emotional injuries, and although an additional award of punitive damages is justified, punitive damages are not intended to be a "windfall" to a plaintiff. Nor are punitive damages meant to sentence a defendant to a lifetime of financial ruin.

The imposition of punitive damages is intended to punish unlawful conduct and deter its repetition, but when the size of a punitive damages award goes beyond its intended purpose and is not proportioned to the wrong it meant to deter, punitive

damages cannot be allowed to stand. "Judicial review of the size of punitive damages awarded has been a safeguard against excessive verdicts for as long as punitive damages have been awarded." *Honda Motor Co., Ltd. v. Oberg*, 512 U.S. 415, 421 (1994).

Importantly, if a district court has not corrected an unconstitutionally excessive punitive damages award, an appellate court can correct it and direct the district court to amend its judgment accordingly. That is exactly what the Court should do in this case.

The Court should reduce the punitive damages imposed on Titus to $50,000 and instruct the district to amend its judgment accordingly.

## ARGUMENT

### A.     Standard of Review

When asked to consider the constitutionality of a punitive damages award, appellate courts apply a *de novo* standard of review. *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 426 (2001); *Green v. Howser*, 942 F.3d 772, 782 (7th Cir. 2019).

### B.     The Court has authority to constitutionally correct excessive punitive damages awards.

"The Due Process Clause of the Fourteenth Amendment prohibits a State from imposing a 'grossly excessive' punishment on a tortfeasor." *BMV of North America, Inc. v. Gore*, 517 U.S. 559, 562 (1996) (citing *TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 454 (1993). "Punitive damages may be properly imposed to further a State's legitimate interests in punishing unlawful conduct and

deterring its repetition." *BMV*, 517 U.S. at 568. But punitive damages must not be so grossly excessive as to enter the zone of arbitrariness that they violate due process. *Id*. To the extent a punitive damages award is grossly excessive, it furthers no legitimate purpose and constitutes an arbitrary deprivation of property. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003).

Accordingly, courts have a mandatory duty to correct unconstitutionally excessive punitive damages awards so that they conform to the requirements of the Due Process Clause. *Johansen v. Combustion Engineering, Inc*., 170 F.3d 1320 (11th Cir. 1999) (citing *BMV*, 517 U.S. at 585)); *Saccameno v. U.S. Bank Nat'l Assoc*., 943 F.3d 1071, 1092 (7th Cir. 2019). To that end, courts are empowered to decide the maximum permissible amount of a punitive damages award without offering a new trial because the courts, and not juries, are responsible for determining the constitutional limit. *Saccameno*, 943 F.3d at 1092 (citing *Cooper*, 532 U.S. at 437).

If a district court has not corrected an unconstitutionally excessive punitive damages award, an appellate court can do so and direct the district court to amend its judgment accordingly. *Saccameno*, 943 F.3d at 1092 (reducing $3 million punitive damages award to $582,000, and directing the district court to amend the judgment accordingly); *Bell v. City of Milwaukee*, 746 F.2d 1205, 1267 (7th Cir. 1984) (reducing $350,000 punitive damage award imposed upon a police officer to $50,000 and directing the district court to amend the judgment accordingly).

**C. The Court should exercise its authority to constitutionally correct excessive punitive damages awards.**

It is important for appellate courts to exercise their authority to correct an unconstitutionally excessive punitive damages award when a district court has not. Courts play an important role in ensuring the constitutionality of jury awards of punitive damages.

"Awards of punitive damages are by nature speculative, arbitrary approximations." *Payne v. Jones*, 711 F.3d 85, 93 (2d. Cir. 2013). "No objective standard exists that justifies the award of one amount, as opposed to another, to punish a tortfeasor appropriately for his misconduct." *Id.* "Nor is there any formula to determine the dollar amount to effectuate deterrence." *Id.* Having no objective standards to guide them and being outraged by the conduct of the defendant, jurors may be "impelled to set punitive damages in any amount." *Id.*

Because there is no such thing as a "correct" amount of punitive damages, the legal system has "an obligation to ensure that such awards for intangibles is fair, reasonable, predictable, and proportionate." *Id.* (citing *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 499 (2008)). It is appropriate for courts to review punitive damages awards because judges have greater familiarity with the experience of the legal system and a better awareness of whether a particular award is consistent with the norms that prevail in the system. *Id.* at 96.

It is important for judges to review punitive damages awards because punitive damages serve the same purposes as criminal penalties. *State Farm*, 538 U.S. at 417.

But because punitive damages are imposed in civil proceedings, the civil defendant does not receive the protections afforded a criminal defendant. *Id.* Judicial review of a punitive damages award provides the civil defendant with a degree of protection against arbitrariness. *Id.*

It is also important for judges to review punitive damages awards because excessive awards have great societal costs. When imposed on individuals, excessive punitive damages "can inflict great harm not only on the wrongdoer, but also on the wrongdoer's innocent dependents, and upon bankrupting a family, can inflict further charges on the public treasury." *Payne*, 711 F.3d at 96. Excessive verdicts that are allowed to stand also establish precedent for excessive awards in later cases and encourage future juries to impose similarly large amounts. *Id.*

"Judicial review of the size of punitive damages awarded has been a safeguard against excessive verdicts for as long as punitive damages have been awarded." *Honda Motor Co.,* 512 U.S. at 421. The Court should not hesitate to exercise its authority to constitutionally correct an unconstitutionally excessive punitive damages award.

### D. The punitive damages imposed on Titus were grossly excessive.

In determining whether an imposition of punitive damages violates due process, courts typically consider three "guideposts": (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages awarded; and (3) the difference

between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *BMV*, 517 U.S. at 574-75.

*BMV* did not address a defendant's wealth or ability to pay as one of the "guideposts," but courts, including this court, have recognized that a defendant's wealth or ability should be considered. *See e.g., Bell*, F.2d at 1267 (concluding that reduction in assessment of punitive damages against police officer from $350,000 to $50,000 considered his relative wealth, yet still fulfilled aims of punishment and deterrence); *Kemezy v. Peters*, 79 F.3d 33, 35 (7th Cir. 1996) (recognizing that while the punishment and deterrence purposes of punitive damages are not dependent on receiving proof of a defendant's income, damage awards which greatly exceed a defendant's ability to pay result in a waste of time for the jury and bankruptcy courts); *Perez v. Z Frank Oldsmobile, Inc.*, 223 F.3d 617, 625 (7th Cir. 2000) ("Federal judges may, and should, insist that the award be sensible and justified by a sound theory of deterrence."); *Harris v. Harvey*, 605 F.2d 330, 341 (7th Cir. 1979) (recognizing that in evaluating the constitutionality of a punitive damages award, judges should consider a defendant's "financial hardship"); *Vasbinder v. Scott*, 976 F.2d 118, 121 (2d Cir. 1992) (an award "should not be so high as to result in the financial ruin of the defendant").

Considering all these factors, the punitive damages imposed on Titus are clearly excessive and must be reduced to comport with principles of fundamental fairness and due process.

1. **On balance, the "guidepost" factors demonstrate that the punitive damages were grossly excessive.**

With respect to the first guidepost, the Supreme Court has suggested a hierarchy of reprehensibility with acts of violence or threats of bodily harm being the most reprehensible. *BMV*, 517 U.S. at 575. But the Supreme Court has also stated that "punitive damages may not be "grossly out of proportion to the severity of the offense." *Id.* at 576 (citing *TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 453 (1993)).

The jury determined that Titus's actions justified an award of punitive damages. But this is not a case where someone died or was seriously injured. Stewardson did not have lasting pain or seek any medical treatment. His injuries were almost exclusively mental and emotional—injuries that are intangible and difficult to quantify. His friends and family, people who would know him best but would also be biased to testify favorably for him, noticed changes in him and observed that he was not the happy, social, outgoing person he was before. But there was no expert testimony or medical evidence of Stewardson's declined mental and emotional state.

The fact that conduct is deserving of punishment does not answer the question of what dollar amount is adequate to punish without crossing the line of unconstitutionality. The facts here support punishment, but the first guidepost is of little assistance in evaluating whether the amount of the punitive damages imposed upon Titus was within constitutional limits.

With respect to the second guidepost, the Supreme Court has said that punitive damages awards must bear a reasonable relationship to the compensatory damages awarded. *Id.* at 580. While case law suggests that a ratio of punitive damages to compensatory damages in the single digits is typically reasonable, the judicial function is to determine the reasonableness of a punitive damages award, not assess ratios. *See Mathias v. Accor Economy Lodging, Inc.*, 347 F.3d 672, 678 (7th Cir. 2003) (the judicial function is to police a range, not a point). Indeed, the Supreme Court has "consistently rejected the notion that the constitutional line is marked by a simple mathematical formula." *State Farm*, 538 U.S. at 424.

In this case, the ratio of compensatory damages to punitive damages is within the presumptively acceptable ratio, but it cannot be overlooked that Stewardson was awarded $400,000 in compensatory damages.[1] That sum fully and completely compensated him for his physical and mental and emotional injuries. The punitive damages of $850,000 (an amount approaching $1 million) constitutes a windfall for him. But the law is clear: punitive damages awards "may not constitute merely a windfall to the prevailing party." *Allahar v. Zahora*, 59 F.3d 693, 696-697 (7th Cir. 1995).

Punitive damages that exceed the amount necessary to achieve the objective of punishment and deterrence become a windfall. *Lenard v. Argento*, 699 F.2d 874, 890 (7th Cir. 1983). As discussed in more detail below, the imposition of punitive damages

---

[1] The Supreme Court has suggested that "[w]hen compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outmost limit [of constitutionality]." *State Farm*, 538 U.S. at 424.

on a young man in his 30's with a modest income in an amount so large and crushing that he cannot reasonably be expected to pay them in his lifetime, exceeds the amount necessary to achieve the objective of punishment and deterrence. Condemning a young man to financial ruin for life (a life of perhaps another 60 years) is far more punishment than is necessary to achieve the State's legitimate objective of punishment and deterrence.

The third guidepost requires analysis of the punitive damages awarded in similar cases. Accordingly, a review of the punitive damages awards in similar excessive force cases tried in the Seventh Circuit reveals that the $850,000 punitive damage award assessed against Titus is grossly out-of-line. Indeed, defendants who utilized far more force (including shooting people with ammunition) and who inflicted substantially more serious bodily injuries (such as breaking the bones in their face) have been assessed far less in punitive damages than Titus. The chart below summarizes the cases. [Dist. Ct. Dkt. 226-2 (verdict reports).]

| Case | Injuries | Compensatory Damages Awarded | CPI Adjusted Value to March 2023 | Punitive Damages Awarded | CIP Adjusted Value of Punitive Damages to March 2023[2] |
|---|---|---|---|---|---|
| *Altizer v. Retherford*, No. 1:14-cv-31 (S.D. Ind. Jan. 22, 2016) | Officer struck the plaintiff fully restrained in a hospital bed 3 or 4 times in the face causing the plaintiff to | $200,000 | $254,804.23 | $15,000 | __$19,110.32__ |

---

[2]      These values were calculated using the U.S. Bureau of Labor Statistics Consumer Price Index Inflation Calculator available at https://www.bls.gov/data/inflation_calculator.htm.

| | | | | | |
|---|---|---|---|---|---|
| | suffer multiple facial and nasal fractures, a right wrist fracture and a finger fracture. | | | | |
| *Bryant v. Cummens, et al.* No. 1:11-cv-1345 (N.D. Ill. March 2, 2018) | Officers took the plaintiff to the ground and beat him causing him to suffer a ruptured eardrum, deviated septum, bruised ribs, and severe bruising and swelling to his head and face. | $65,000 | $78,617.61 | $10,000 | **$12,095.02** |
| *Dixon v. Butler, et al.* No. 1:10-cv-5897 (N.D. Ill. March 2, 2016) | Officers slammed plaintiff on a squad car, twisted his arm, punched and kicked him, hit him with a baton, and slammed him to the ground causing him to suffer a hand injury requiring surgery, a blunt head injury and multiple bruises and contusions. | $200,000 | $253,503.10 | $1,000 | **$1,267.52** |
| *Guyton v. Taybron,* No. 1:18-cv-856 | Damages awarded to prison inmate after correctional officer | $15,000 | $16,663.99 | $1,000 | **$1,110.93** |

| | | | | | |
|---|---|---|---|---|---|
| (N.D. Ill. June 11, 2021) | repeatedly slammed the inmates hand into a metal porthole door causing the inmate to need multiple surgeries. | | | | |
| *Harris v. City of Milwaukee,* 2:14-cv-1002 (E.D. Wis. March 4, 2020 | Plaintiff assaulted by officers during traffic stop | $1.56 million (excessive force portion of judgment) | $1.56 million | $40,000-Ofcr1 $50,000-Ofcr2 | **$40,000-Ofcr1** **$50,000-Ofcr2** |
| *James v. Bucks,* 1:14-cv-7955 (N.D. Ill. 2017) | Plaintiff assaulted by officers who broke his jaw. | $304,000 | $374,591.84 | $7,500 | **$9,241.57** |
| *Williams v. Racine Cnty.,* No. 06C0819 (E.D. Wis. March 3, 2011) | Jail officers threw inmate to the floor and beat him causing him to suffer several lacerations. | $350 | $472.74 | $150 | **$202.60** |
| *Williamson v. Ortiz,* No. 1:14-cv-6397 (N.D. Ill. Sept. 18, 2017) | Plaintiff shot 11 times | As awarded to 3 different plaintiffs: $750,000 $1.5 million and $2 million | | As awarded to 3 different plaintiffs: $100,000 $150,000 and $250,000 | As awarded to three different plaintiffs: **$122,290.42** **$183,435.69** **$305,726.05** |

The cases summarized above demonstrate that the jury's assessment of punitive damages against Titus was grossly out-of-line with the punitive damages awards in other excessive force cases tried in this Circuit.  Indeed, the typical punitive damages award in this Circuit is considerably less (even a mere fraction) of the punitive damages award.  And significantly, none of the punitive damages awards in any of these cases exceeded the compensatory damages awarded as it did here.

Based on the jury awards in this Circuit as reflected by the above-referenced cases, the constitutional maximum amount to be imposed upon Titus as punitive damages should not exceed $50,000. Fifty thousand dollars is a substantial amount of money for an individual. It is at the high end of what juries have awarded in other excessive force cases tried in this Circuit. It is less only than the highest punitive damages awarded in the *Williamson* case where an officer shot three individuals multiple times with ammunition, a case much different than the one here. [Dist. Ct. Dkt. 226-2.] It honors the jury's clear desire to impose a harsh punishment on Titus, and it more than fulfills the purpose of punishment and deterrence.

2.    **The punitive damages imposed unconstitutionally subject Titus to a lifetime of punishment.**

Also relevant in considering the excessiveness of a punitive damages award is the amount of punishment that is inflicted. Although *BMV* did not discuss the defendant's ability to pay a punitive damages award as a factor in determining the excessiveness of a punitive damages award, punitive damages are in the nature of a criminal sanction. "[B]ecause punitive damages are penal in nature, the court should compare civil *and* criminal penalties imposed in the same jurisdiction . . . ." *Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 301 (1989) (Brennan, J. concurring) (emphasis in original). It is therefore axiomatic that punitive damages as a punishment should fit the "crime." *See e.g., Mathias*, 347 F.3d at 676.

In this case, the "crime" was utilizing excessive force and causing Stewardson to sustain a one-inch laceration on his forehead, temporary body pain, and the aggravation of his pre-existing mental and emotional injuries—at least for a period of time before things in his life got better. The punishment is an $850,000 punitive damages assessment against a young man who, with a salary of approximately $56,000, will never be able to pay it in his lifetime. [Dkt. 111-4 (Titus Dep. p. 17, l. 20-25).] Even if a court should order that his wages be garnished at the rate of 25%, Titus will only be able to pay Stewardson $14,000 per year, and it will take Titus, who is now 32 years old, six decades—or until he is 92 (assuming he lives that long)— to satisfy the punitive damages award. [Trial Transcript at p. 505, l. 5-6 (Titus was 31 at the time of the trial).]

Had Titus been convicted of battery as a crime, he would not have been sentenced to a lifetime of payments to his victim on a modest salary with little left over to support himself and his family. In Indiana, a person convicted of battery as a Class A misdemeanor is subject to a fine of not more than $5,000, Ind. Code § 35-50-3-2, and a person convicted of battery as a Level 6 Felony may not be fined more than $10,000, Ind. Code § 35-50-2-7.[3] The fact that the civil punishment imposed on Titus so greatly exceeds the criminal punishment for state law battery as a crime is

---

[3] Under Indiana Code § 35-42-2-1(d), person who touches another person in a rude, insolent, or angry manner resulting in bodily injury to the other commits a Class A misdemeanor. Under Indiana Code § 35-42-2-1(e), a person who touches another person in a rude, insolent, or angry manner resulting in moderate bodily injury to the other commits a Level 6 felony.

another reason the Court should constitutionally correct the punitive damages award.

The district court was unpersuaded that the difference between the punitive damages imposed on Titus and the criminal fines for battery were relevant because a person convicted of battery as either a Class A misdemeanor or a Level 6 Felony can also receive prison time. [S.A at 12.]  It is true that a judge in Indiana can impose prison time for battery.  But a person who commits battery as a Class A misdemeanor cannot be imprisoned for a fixed term of more than one year, and a person who is convicted of battery as a Level 6 Felony can be imprisoned only between six months and three years, with a term of imprisonment of one year being the "advisory sentence."  Ind. Code 35-50-3-2; Ind. Code 35-50-2-7(b).  Six-months to three years in prison is no small thing, but at least there is an end in sight.  Paying the punitive damages imposed in this case leaves no end in sight for Titus.

The district court also observed that there was a power imbalance between Titus as a jail officer and Stewardson as an arrestee, which made Titus's conduct more reprehensible and justified a high award of punitive damages.  Even so, the criminal fine and term of imprisonment for battery under Indiana law remains the same.  Had Titus been convicted of battery as a Level 6 Felony, a state court judge could have both imposed imprisonment at the high end of three years and imposed a $10,000 fine to account for Titus's position of power as a jail officer, but there still would have been an end in sight for Titus after three years.

Unless constitutionally corrected, paying off the jury's punitive damages award is something that will burden Titus the rest of his life. Three years in prison and a $10,000 fine is less punitive than a lifetime (in this case, perhaps a lifetime of another 60 years) of financial ruin.

It is no answer for Stewardson to say, as he did in the district court below, that Titus might somehow find the money to pay the punitive damages by getting it from non-parties. [Dist. Ct. Dkt. 235 at 21-22.] Whether Titus might pursue an action of his own, win, collect on a judgment, and then use that money to pay Stewardson is speculative and irrelevant. The constitutionality of a punitive damages award does not turn on a plaintiff's theory that the defendant might raise the money to pay it by suing others.

Likewise, the presentation of evidence of a defendant's wealth or lack thereof at trial is not, as both Stewardson and the district court suggest, a condition precedent to the constitutional correction of an excessive punitive damages award. [Dist. Ct. Dkt. 235 at 21; S.A at. 12.] A court's duty to reduce an excessive punitive damages award is established by the Due Process Clause of the Fourteenth Amendment, not whether in hindsight a party made the correct "strategic decision." [*See* S.A. at 12 (referring to Titus's "strategic decision").]

Indeed, a court's duty to reduce an excessive punitive damages award exists, notwithstanding the presence or absence of evidence of either wealth or poverty at trial. For example, in *BMV*, the Supreme Court found that a $2 million punitive damages award could not stand against a foreign automobile manufacturer,

American distributor, and dealer even though, from all appearances, the defendants could pay it. *See BMV*, 517 U.S. 559.

The absence of evidence of Titus's income and financial situation at trial does not justify the State's violation of Titus's due process rights. The *Kemezy* case referenced by the district court [S.A. at 12] allows a defendant who will not be indemnified for a potential punitive damages award to present evidence of his poverty or inability to pay such an award, but *Kemezy* does not require the presentation of such evidence as a condition precedent to challenging the constitutionality of an actual punitive damages award. *Kemezy*, 79 F.3d 33.

### 3. The punitive damages imposed should be constitutionally corrected.

In sum, the $850,000 in punitive damages imposed upon Titus is shocking to the conscience, violates fundamental notions of fairness, and violates the Due Process Clause of the Fourteenth Amendment. It imposes a grossly excessive punishment on Titus and is not justified by the facts and circumstances of this case, including:

(1)    Stewardson's minimal physical injuries;

(2)    the intangibility of Stewardson's mental and emotional injuries;

(3)    the fact that Stewardson was fully compensated for his physical, mental, and emotional injuries by the substantial award of $400,000 in compensatory damages;

(4)    the fact that the additional award of $850,0000 (almost $1 million) in punitive damages is a windfall to Stewardson;

(5)    the fact that a reasonable survey of the punitive damages awarded by juries in this Circuit in recent years demonstrates that juries have typically awarded far less in

punitive damages for conduct far more egregious than Titus's conduct and in cases involving injuries far more serious than Stewardson's;

(6) the fact that Titus is a young man with a modest income who will never be able to pay the punitive damages imposed upon him in his lifetime; and

(7) the fact that the criminal penalties for battery under Indiana law, even accounting for the possibility of imprisonment, would not have subjected Titus to a lifetime (in this case, a lifetime of perhaps another 60 years) of punishment and financial ruin.

## <u>CONCLUSION</u>

For the reasons set forth above, Christopher Titus respectfully requests that the Court constitutionally correct the punitive damages imposed upon him by (1) reducing the amount to $50,000 and (2) directing the district court to amend its judgment accordingly.

Respectfully submitted,

*s/ Pamela G. Schneeman*
Pamela G. Schneeman
KNIGHT HOPPE KURNIK & KNIGHT
11590 North Meridian Street, Suite 650
Telephone: (317) 844-3830
Fax: (317) 573-4194
Email: pschneeman@khkklaw.com

*Attorneys for Christopher Titus,*
*Cameron Biggs, and Sheriff of Cass County*

# CERTIFICATE OF COMPLIANCE

1.     This brief complies with the typed volume limitation of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32(c) because it contains 5,216 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2     This brief complies with the typeface requirements of Fed. R. Ap. 32(a)(5) and Circuit Rule 32(b) and the style requirements of Fed. R. App. P. 32(a)(5) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 12-point Century Schoolbook font.


 *s/ Pamela G. Schneeman*
Pamela G. Schneeman


KNIGHT HOPPE KURNIK & KNIGHT, LTD.
11590 North Meridian Street, Suite 650
Telephone: (317) 844-3830
Fax: (317) 573-4194
Email: pschneeman@khkklaw.com

## PROOF OF SERVICE

I hereby certify that on April 6, 2024, I electronically filed the foregoing APPELLANT'S BRIEF with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that service will be accomplished on all participants in the case who are registered CM/ECF users by the CM/ECF system.


*s/ Pamela G. Schneeman*
Pamela G. Schneeman

KNIGHT HOPPE KURNIK & KNIGHT, LTD.
11590 North Meridian Street, Suite 650
Telephone: (317) 844-3830
Fax: (317) 573-4194
Email: pschneeman@khkklaw.com

## CIRCUIT RULE 30(d) STATEMENT

Pursuant to Circuit Rule 30(d), I hereby certify that all material required by

Circuit Rules 30(a) and (b) are included in the attached Required Short Appendix.


*s/ Pamela G. Schneeman*
Pamela G. Schneeman


KNIGHT HOPPE KURNIK & KNIGHT, LTD.
11590 North Meridian Street, Suite 650
Telephone: (317) 844-3830
Fax: (317) 573-4194
Email: pschneeman@khkklaw.com

# REQUIRED SHORT APPENDIX

**Page**

Judgment in a Civil Action
[Dist. Ct. Dkt. 212].................................................................................1

Opinion & Order on Motion for Remittitur of the Compensatory
Damagesand Constitutional Correction of the Punitive Damages
Award (entered November 11, 2023)
[Dist. Ct. Dkt. 241].................................................................................3

AO 450 (Rev. 01/09)   Judgment in a Civil Action

# UNITED STATES DISTRICT COURT
for the
## Northern District of Indiana

BLAKE STEWARDSON
               Plaintiff

            v.                                **Civil Action No.**    3:18cv958
CASS COUNTY
termed 2/25/2019;
CASS COUNTY SHERIFF OF;
CHRISTOPHER TITUS
individually and in his capacity as a deputy sheriff;
CAMERON BIGGS
individually and in his capacity as a deputy;
LOGANSPORT CITY OF
termed 10/14/2021;
JOSEPH SCHLOSSER
individually and in his capacity as a police officer for the City of Logansport
termed 10/14/2021;
JOHN DOE
Defendants, individually and in their capacities police officers
termed 10/14/2021
               Defendants

## JUDGMENT IN A CIVIL ACTION

The court has ordered that (*check one*):

☐ the plaintiff _____ recover from the defendant _____ the amount of _____ dollars $_____, which includes prejudgment interest at the rate of _____% plus post-judgment interest at the rate of _____ % along with costs.

☐ the plaintiff recover nothing, the action is dismissed on the merits, and the defendant _____ recover costs from the plaintiff _____.

**X** Other: <u>Jury returned verdict in favor of plaintiff Blake Stewardson and against defendants Cass County Sheriff and Christopher Titus. Jury returned verdict in favor of defendant Cameron Biggs and against plaintiff Blake Stewardson. Jury AWARDED compensatory damages for Mr. Stewardson's injuries in the amount of $400,000.00 (Four hundred thousand dollars), and punitive damages against defendant Christopher Titus in the amount of $850,000.00 (Eight hundred fifty thousand dollars).</u>

This action was (*check one*):

**X** tried to a jury with Judge <u>Damon R. Leichty</u> presiding, and the jury has rendered a verdict.

**Short Appendix 0001**

☐ tried by Judge _____ without a jury and the above decision was reached.


☐ decided by Judge _____ on a motion _____


DATE: <u>March 31, 2023</u>          *Chanda J. Berta, Acting Clerk Of Court*

                                    by <u>s/ D. Kirkwood</u>
                                    *Signature of Clerk or Deputy Clerk*

**Short Appendix 0002**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BLAKE STEWARDSON,

          Plaintiff,

    v.                            CAUSE NO. 3:18-CV-958 DRL

CASS COUNTY *et al.*,

          Defendants.

## OPINION AND ORDER

On March 31, 2023, a jury found that Christopher Titus violated Blake Stewardson's Fourth Amendment rights by using excessive force and committing battery, with the Sheriff of Cass County held then liable for the battery. The jury awarded $400,000 in compensatory damages against both. The jury also awarded $850,000 in punitive damages against Mr. Titus. Mr. Titus and the Sheriff now ask the court to remit the compensatory damage award and vacate the punitive damage award or alternatively grant a new trial under Rule 59. The court denies the motion.

### BACKGROUND

Mr. Stewardson sued the Sheriff of Cass County, former officer Christopher Titus, and Officer Cameron Biggs for excessive force, battery, and failure to intervene, after a January 1, 2018 incident when officers arrested and detained Mr. Stewardson for driving while intoxicated. Over three days, Mr. Stewardson and the defendants presented evidence to a jury. The jury found Mr. Titus and the Sheriff liable and exonerated Officer Biggs.

During the trial, the jury heard and saw evidence about the interaction between Mr. Titus and Mr. Stewardson, including video footage of Mr. Titus slamming Mr. Stewardson into a concrete wall [Ex. 101 11:48:15-21] and executing a leg sweep to get him to the floor after Mr. Stewardson was stripped naked [Ex. 101 12:19:13-18]. Mr. Stewardson presented evidence of the long-lasting impacts the episode had on

his already extensive struggles with mental health, including testimony of family and friends who described the changes in him [Tr. 35]. He asked the jury to award over $2 million in damages [Tr. 562:17-18]. Instead, the jury awarded $400,000 in compensatory damages and $850,000 in punitive damages. The result is not surprising given the conduct plainly demonstrated on video.

## STANDARD

Rule 59 permits a party to move for a new trial or alter or amend the judgment. Fed. R. Civ. P. 59. The court may "grant a new trial on some or all of the issues." Fed. R. Civ. P. 59(a). "A new trial is appropriate if the jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving party." *Venson v. Altamirano*, 749 F.3d 641, 656 (7th Cir. 2014). It is an "extraordinary remed[y] reserved for the exceptional case." *Childress v. Walker*, 787 F.3d 433, 442 (7th Cir. 2015) (citations omitted).

Rule 59 allows for a new trial only if "the verdict is against the weight of the evidence, the damages are excessive, or if for other reasons the trial was not fair to the moving party." *Pickett v. Sheridan Health Care Ctr.*, 610 F.3d 434, 440 (7th Cir. 2010) (quoting *Emmel v. Coca-Cola Bottling Co.*, 95 F.3d 627, 636 (7th Cir. 1996)). Courts "uphold a jury verdict…as long as a reasonable basis exists in the record to support [the] verdict." *Id.* When considering a motion for a new trial, "the evidence must be viewed in the light most favorable to the prevailing party." *Carter v. Moore*, 165 F.3d 1071, 1079 (7th Cir. 1998).

Under Rule 59(e), a court may also "alter or amend a judgment." Fed. R. Civ. P. 59(e). This includes remittitur. *Baier v. Rohr-Mont Motors, Inc.*, 175 F. Supp.3d 1000, 1007 (N.D. Ill. 2016); *see also Sommerfield v. Knasiak*, 967 F.3d 617, 622 (7th Cir. 2020). On review, a court must give a jury's damage determination "substantial deference" but "must also ensure that the award is supported by competent evidence." *Ramsey v. Am. Air Filter Co.*, 772 F.2d 1303, 1313 (7th Cir. 1985). If an award is excessive, "it is the duty of the trial judge to require a remittitur or a new trial." *Linn v. United Plant Guard Workers*, 383 U.S. 53, 65-66 (1966); *see also Baier*, 175 F. Supp.3d at 1007 ("If the [c]ourt finds that damages are excessive,

2

**Short Appendix 0004**

the proper remedy is remittitur."). Remittitur is appropriate for damage awards that are "monstrously excessive," bear no rational connection to the evidence, and are not "roughly comparable to awards made in similar cases." *Gracia v. Sigmatron Int'l, Inc.*, 842 F.3d 1010, 1022 (7th Cir. 2016).

Movants must show that "no rational jury could have rendered a verdict against them." *King v. Harrington*, 447 F.3d 531, 534 (7th Cir. 2006). Courts use the same analysis for Rule 59 motions as summary judgment, except they "now know exactly what evidence the jury considered in reaching it verdict." *Harvey v. Office of Banks & Real Estate*, 377 F.3d 698, 707 (7th Cir. 2004). The court must consider the evidence in the light most favorable to the prevailing party at trial, leaving issues of credibility and weight of evidence to the jury. *Carter*, 165 F.3d at 1079.

DISCUSSION

A. *Compensatory Damages.*

The defendants ask the court to reduce the $400,000 compensatory damage award to $100,000 or offer Mr. Stewardson a new trial on damages. They bear the burden of showing that this jury behaved irrationally in reaching this amount, *see King*, 447 F.3d at 534, already substantially less than the $2 million in compensatory damages that Mr. Stewardson requested [Tr. 562:16-18]. Initially, the court observes that the jury only awarded 20 percent of Mr. Stewardson's proposed number, which alone suggests deliberation and analysis; as does the questions posed by the jury during deliberations.

Three factors bear on whether a compensatory award exceeds rational limits: "whether the damages awarded (1) were monstrously excessive; (2) had no rational connection between the award and the evidence; and (3) were roughly comparable to awards made in similar cases." *EEOC v. AutoZone, Inc.*, 707 F.3d 824, 833 (7th Cir. 2013). "A monstrously excessive verdict is one that is a product of passion and prejudice" and is essentially the same inquiry as factor two: was this verdict irrational? *Adams v. City of Chi.*, 798 F.3d 539, 543 (7th Cir. 2015); *accord Green v. Howser*, 942 F.3d 772, 780-81 (7th Cir. 2019).

3

Courts have affirmed substantial compensatory damage awards in "cases that include even the slightest physical element." *EEOC*, 707 F.3d at 834 (listing large awards). The inquiry is not whether the jury could have possibly reached a lesser award, but instead whether the amount bears a rational connection to the evidence at trial. *Adams*, 798 F.3d at 543; *see also Hendrickson v. Cooper*, 589 F.3d 887, 893 (7th Cir. 2009) ("A different jury may have chosen a lower number, but this uncertainty is unavoidable when making different estimates of pain and suffering."). Comparisons to other cases matter, but "such comparisons are rarely dispositive given the fact-specific nature of damages claims." *Hendrickson*, 589 F.3d at 892.

The defendants advance three arguments for reducing compensatory damages. None convinces the court that remittitur is appropriate. Their first and second points basically suggest that Mr. Stewardson did not suffer enough for a $400,000 award. First, they argue that the evidence at trial demonstrated very minor physical injuries. The way the defendants spin the story, Mr. Stewardson had only a small cut and a brief period of difficulty breathing. They note that Mr. Stewardson didn't seek medical attention or miss work the next day. Second, they argue that the evidence did not support a finding that Mr. Stewardson's emotional and mental condition worsened after the excessive force. The jury believed the evidence supported $400,000 in damages, and this court sees no reason to doubt the jury. *See G.G. v. Grindle*, 665 F.3d 795, 799 (7th Cir. 2011) ("Great deference must be given to the jury's verdict, because…the jury [is] in a superior position to find facts and determine a proper damages award.") (quotations omitted).

This jury was in an especially privileged position to judge the damage done—they saw the whole incident unfold on tape—and anyone watching it could reasonably conclude that the force was excessive, even at different times, and worthy of compensation. Mr. Stewardson told the jury he remembered "fear" and "pain" from that night [Tr. 238:18-22]. He said that his face hit a cinderblock wall [Tr. 242:25-243:2]. Then the jury watched [Ex. 101 11:48:15-21]. He described feeling like he was "being crushed and held" [Tr. 252:21-23], and the jury saw officers hold him in a folded position for 26 minutes [Ex. 101 11:49-

4

12:15:04]. Between hearing about Mr. Stewardson's efforts to "try and get the blood out of [his] face and breathe" [Tr. 256:5-6], and his back, shoulder, head, and kidney pain and the shame and humiliation he felt [Tr. 265:17-19], the jury had plenty of evidence of harm to rely on beyond a simple cut to the forehead—a cut the jury witnessed create a pool of blood on the padded cell floor twice [Ex. 101 1:01:30; 1:21]. Mr. Stewardson described how "everything hurt" [Tr. 275:12]. *See Hendrickson,* 589 F.3d at 893 ("Given the uniquely subjective nature of pain," it is understandable for plaintiffs to rely on their own testimony for damages evidence.).

In addition, the jury heard testimony on his long-lasting emotional damage. The defense acknowledges that mental health expert testimony is not required for mental or emotional damage. But they ask the court to weigh its absence anyway, something the jury would have done. *See United States v. Longstreet,* 567 F.3d 911, 919 (7th Cir. 2009). Mr. Stewardson's wife testified about his nervousness, his avoidance of family occasions, and how easily frightened he became [Tr. 85-86, 88, 91:15-24]. Jessica Ulrey, Mr. Stewardson's mother, described the changes in her son after the incident, including how he missed family events like his sister's graduation and became uncharacteristically withdrawn and uncommunicative [Tr. 53-55]. Other friends of Mr. Stewardson's also testified that he was withdrawn after the incident [Tr. 36 (Sarah Silence); Tr. 30 (Charles Hedges)]. The jury could have rationally concluded that this evidence supported a sizeable damages award, although again not nearly as large as Mr. Stewardson requested.

As for the incident, the jury heard plenty of evidence to support damages. The jury heard Mr. Titus describe how he "redirected" Mr. Stewardson when in truth he caused his head to hit the wall twice [Tr. 105-06]. They heard Mr. Titus's testimony that he performed a leg sweep because of Mr. Stewardson's attitude and expression [Tr. 115-16] and watched Mr. Titus slam open the cell door into a naked Mr. Stewardson and then execute the leg sweep [Ex. 12:19:13-18]. All of this could validate and lend more support to the pain and suffering that needed to be compensated.

**Short Appendix 0007**

The defendants presented the argument that Mr. Stewardson's life improved after January 1, 2018, and they now claim that the evidence does not support a finding that Mr. Stewardson's mental health worsened after the incident. The jury heard all the same evidence they now point to—that Mr. Stewardson was married and expecting a child and seemingly doing well—and still decided that damages were warranted [226 at 6; Tr. 341]. The court also instructed the jury that Mr. Steward could recover "for the extent that defendant aggravated Mr. Stewardson's preexisting condition" but not "for the preexisting condition itself" [213 at 5, Instr. No. 10]. Courts presume that juries follow judicial instructions, and the defendants offer nothing to rebut that presumption here other than the complaint that the damages are high. *See Chlopek v. Fed. Ins. Co.*, 499 F.3d 692, 702 (7th Cir. 2007). Based on this record, the court cannot say that because six years later a plaintiff is doing well, there was not sufficient damage to sustain the award or that the jury disregarded the court's instructions.

The defendants next provide the court with a chart of cases they believe are comparable. Other cases "provide a reference point that assists the court in assessing reasonableness; they do not establish a range beyond which awards are necessarily excessive." *Farfaras v. Citizens Bank & Trust*, 433 F.3d 558, 566 (7th Cir. 2006). They point to cases where "plaintiffs sustained negligible injuries" and received much smaller awards *See Driggers v. Sanders*, No. 1:06-cv-1112 (C.D. Ill. March 5, 2009); *Kaufman v. City of Chi.*, No. 1:17-cv-7491 (N.D. Ill. May 21, 2021); *Williams v. Racine Cnty.*, No. 06C0819 (E.D. Wis. March 3, 2011). These awards range from $150 to $53,700. But these cases are on the low end, even for their chart, which also includes awards as high as $1.56 million for a hospitalized plaintiff. *See Harris v. City of Milwaukee*, No. 2:14-cv-1002 (E.D. Wis. March 4, 2020). The defendants focus on physical injury, specifically surgery and hospitalization, but the jury in this case was also considering mental injury—and not unreasonably so given the events.[1] Mr. Stewardson presents cases with compensation as high as $1.85

---

[1] The jury was instructed to "consider the following types of compensatory damages, and no others: the physical, mental, and emotional pain and suffering, loss of a normal life, and loss of an ability to function as a whole person that Mr. Stewardson has experienced and is reasonably certain to experience in the future." [213 at 5, Instr. No. 9].

6

**Short Appendix 0008**

million. *See Klein v. Cnty. of Lake*, No. 2:28-cv-349 (N.D. Ind. Sept. 20, 2019). Mr. Stewardson also offers a $2.5 million compensatory award without hospitalization or severe physical injuries. *See Ibanez v. Velasco*, 2002 U.S. Dist. LEXIS 7364 (N.D. Ill. Apr. 25, 2002).

Considering not just the acceptable range of these cases but their nature, and then the unique nature of this case, $400,000 was not an unreasonable or irrational award. The jury's award was both sufficiently connected to the evidence presented and within the range of damages in comparable cases. Accordingly, the court denies the motion to remit.

B. *Punitive Damages.*

Mr. Titus next asks the court to reduce the punitive damages award against him to $50,000 or grant a new trial on the issue of punitive damages. Mr. Titus asserts that the award of $850,000 violates the Fourteenth Amendment's due process clause. *See BMW of North America, Inc. v. Gore*, 517 U.S. 559, 568 (1996); U.S. Const. Am. XIV. Due process forecloses punitive damage awards from being "grossly excessive." *BMW*, 517 U.S. at 562; *Beard v. Wexford Health Sources, Inc.*, 900 F.3d 951, 953 (7th Cir. 2018). Courts must look at three guideposts when determining the constitutionality of a punitive damages award: "the reprehensibility of the defendant's conduct, the ratio between punitive and compensatory damages, and any civil penalties that punish similar behavior." *Beard*, 900 F.3d at 954; *see also State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003).

Punitive damages must have a "reasonable relationship" to compensatory damages. *BMW*, 517 U.S. at 580. Although due process eludes an exact formula, *see id.* at 582-83, "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process," *State Farm*, 538 U.S. at 425; *accord EEOC*, 707 F.3d at 839. Courts "police a range, not a point." *Est. of Moreland v. Dieter*, 395 F.3d 747, 757 (7th Cir. 2005) (citation omitted). Depending on the compensatory damages amount and the harm, an even greater ratio may be permissible. *State Farm*, 538 U.S. at 425. The analysis turns on the particular facts and circumstances. *Id.*; *see Mathias v. Accor Econ.*

*Lodging, Inc.,* 347 F.3d 672, 676-78 (7th Cir. 2003) (upholding a punitive damages award ratio of 37:1 based on the case's specific facts). "So long as the award has a reasonable basis in the evidence, a jury has wide discretion in determining damages." *Gracia,* 842 F.3d at 1025. Courts largely defer to the jury's discretion, only reducing awards that are "monstrously excessive," "not rationally connected to the evidence," or the result of juror "passion or prejudice." *American Nat'l Bank & Trust Co. v. Reg'l Transp. Auth.,* 125 F.3d 420, 437 (7th Cir. 1997) (citation omitted).

Mr. Titus first claims that the $850,000 award stemmed from the jury's passion or prejudice. He points to Mr. Stewardson's closing argument and evidence about his troubled past to argue that the award lacks a rational connection to the evidence.

Mr. Titus waived objections to Mr. Stewardson's closing arguments when counsel declined to object at trial. "Counsel for the defense cannot as a rule remain silent, interpose no objections, and after a verdict has been returned seize for the first time on the point that comments to the jury were improper and prejudicial." *Carmel v. Clapp & Eisenberg, P.C.,* 960 F.2d 698, 704 (7th Cir. 1992) (quoting *United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 238-39 (1940)); *see also Smith v. Rosebud Farm, Inc.,* 898 F.3d 747, 753 (7th Cir. 2018) (holding that a party waived any argument over improper closing statements when counsel failed to object). A curative jury instruction would have been the proper remedy if an error occurred, and rather than ask for one Mr. Titus chose to gamble on the jury, a risk the law usually holds is "binding on the gambler," with few exceptions. *Holmes v. Elgin, J. & E. Ry.,* 18 F.3d 1393, 1398 (7th Cir. 1994) (citation omitted). Only plain error might save a party—when the statements, viewed in light of the whole record, prevented a fair trial. *United States v. Briseno,* 843 F.3d 264, 269 (7th Cir. 2016) (no new trial "unless there was an error so egregious that the district judge should have stepped in even though no objection was made") (quotations omitted).

Mr. Titus raises several objections to the closing. He claims that Mr. Stewardson's counsel made "obvious references to instances of police misconduct reported in the national media" because he said

the case was about "officers everywhere" [225 at 16; Tr. 540:7]. But Mr. Stewardson's counsel used "officers everywhere" in the context of explaining that "the overwhelming majority of officers are good…great." [Tr. 540:7-9]. He was contrasting Mr. Titus with the good officers, not hinting subversively at police misconduct. He argued that letting Mr. Titus' actions go without consequence may be one drop, but without deterrence or consequence, one action could create ripples by making other officers think the action was permissible, leading to a "white squall" rather than one drop [Tr. 541:21-22]. Punitive damages are there in part to act as deterrence and make statements about what a community finds reprehensible—explaining that this didn't create prejudice.

Mr. Titus also objects to comments about the culture of the jail [226 at 17]. These comments were made in reference to the failure to intervene count against Officer Biggs, not Mr. Titus' excessive force and battery, and thus not indicative of prejudice when the jury exonerated Officer Biggs [Tr. 546-547; 561:10-14]. Finally, Mr. Titus objects to the alleged assertion that they (a reference to the Sheriff of Cass County) ignored arrestees, denied them telephone calls, left them in the freezing cold, denied them medical care, and denied them food. But that's not what Mr. Stewardson's counsel said. He took the jury through a timeline of things Mr. Stewardson asked for; those aren't unfair allegations but requests Mr. Stewardson made that were denied or ignored [Tr. 560-61]. Mr. Titus tries to characterize arguments as accusations of broad cultural misconduct, but all Mr. Stewardson's counsel did was tell the jury what happened to Mr. Stewardson, in this one instance. Once the missing context is provided, the statements aren't troubling, and certainly none were so egregious as to warrant the court's unsolicited interjection at trial. *See Briseno*, 843 F.3d at 269.

Mr. Titus argues that he did not object because courts disfavor objections during closing arguments and that no curative instruction could have erased the statements from the jury's memory. Neither argument warrants a new trial. Indeed, the arguments merely underscore that the decision was a strategic one, not one of error. What is more, if the statements made at closing were so prejudicial as to

**Short Appendix 0011**

prohibit a fair trial, then Mr. Titus should have objected even if he believed the court disfavored objections during closing; the court assures Mr. Titus judicial economy disfavors redoing trials more. He also had the option to ask for a curative instruction. Courts have a "strong presumption" that the jury follows instructions, and curative instructions are designed to mitigate harm. *Chlopek*, 499 F.3d at 702; *see also Willis v. Lepine*, 687 F.3d 826, 834 (7th Cir. 2012). Mr. Titus does not provide the court with any reason to override that presumption and find that a curative instruction would have failed here.

Second, Mr. Titus argues that sympathy for the plaintiff's childhood clouded the jury's judgment. He claims that an award this size must have been born of passion or prejudice and cannot possibly be rationally related to the evidence. The jury saw plenty of evidence beyond just Mr. Stewardson's childhood to reach this amount, including video footage of the incident and testimony about the damage to Mr. Stewardson's mental health. Curiously the video was not shown to the jury during closing argument, and still the images of excessive force that the jury once saw could leave an indelible impression. And Mr. Titus invited some of the information that now concerns him [Tr. 299-306].[2] He cannot open the door during trial then try to close it afterwards. Rule 59 isn't a tool to correct strategic litigation decisions with the benefit of hindsight or rethought. *See Resnick*, 594 F.3d at 568.

Mr. Titus next argues that the BMW guideposts factors (reprehensibility, ratio, and comparable civil penalties) mandate the vacatur of the jury's $850,000 verdict. *See Beard*, 900 F.3d at 954; *State Farm*, 538 U.S. at 418. With respect to reprehensibility, "perhaps the most important indicum of the reasonableness of a punitive damages award," *Kunz v. DeFelice*, 538 F.3d 667, 679 (7th Cir. 2008), even

---

[2] The defense now objects to testimony that evoked sympathy for Mr. Stewardson's "sad childhood and troubled life," claiming that unfairly prejudiced the jury [226 at 9], but the defense invited statements like "[m]y whole life has been a dark place" from Mr. Stewardson on cross [Tr. 303]. Mr. Titus questioned Mr. Stewardson on his mental health, asking "you had, in fact, attempted to commit suicide at least twice before, correct?" [Tr. 299:9-11] and "you were seen at Four County in the early 2000s, 2002 through 2004" [Tr. 300:14-16]. The questioning was so thorough that Mr. Stewardson even asked opposing counsel, "Do I have to relive some of the darkest moments of my life over and over again?" [Tr. 305:23-25]. If the defense was concerned about the potential prejudicial effects, one might have expected them not to focus on presenting more of this information to the jury.

Mr. Titus concedes that his actions were violent, which the law deems most reprehensible. *BMW*, 517 U.S. at 575-76. An officer's brutality, done while in a position of public trust, also contributes to the reprehensibility for punitive damage purposes. *Kunz*, 538 F.3d at 679. The video evidence here showed repeated uses of force—wall slams, holding Mr. Stewardson to the floor for 26 minutes, and the unnecessary leg sweep. An intoxicated individual presents unique challenges, but this wasn't an open street or field but confined quarters with an overwhelming presence of officers. Piling onto the violence here was a certain level of callousness; Mr. Stewardson credibly testified he could hear laughter from inside his cell [Tr. 272] [Ex. 101 at 12:57 (officers rewatching leg sweep and laughing)]. Mr. Titus appeared to laugh while testifying about it at trial [Tr. 129:15-20]. He was not a sympathetic witness. A jury could understandably find these events reprehensible, given its violent nature and Mr. Titus's seemingly flippant approach to it. The most important factor in the analysis weighs heavily against Mr. Titus. *See Kunz*, 538 F.3d at 679.

Mr. Titus next argues that the ratio between compensatory damages ($400,000) and punitive damages ($850,000) is flawed. Single digit ratios are typically reasonable. *State Farm*, 538 U.S. at 425; *EEOC*, 707 F.3d at 839. This ratio is 2.1:1—well beneath "judicial eyebrow" raising territory. *See BMW*, 517 U.S. at 583. Mr. Titus attempts to dispute the ratio's premise, arguing that the compensatory damages were so unreasonable and irrational that that award cannot possibly be a fair baseline for the ratio. But not so on this record.

Finally, Mr. Titus reaches the comparable penalties prong, which he argues is most important in this case. He asserts that others who used significantly more force were assessed far less in punitive damages. He points the court to judgments from other cases, but *BMW* focuses on statutory consequences and judgments. *BMW*, 517 U.S. at 584. Mr. Titus explains that battery is a Level 6 felony. *See* Ind. Code § 35-42-2-1(e). Under Indiana law, his actions could have resulted in incarceration between 6-30 months and up to a $10,000 fine. Ind. Code 35-50-2-7(b). The parties focus on the fine, but the

**Short Appendix 0013**

conduct is also reprehensible enough that the Indiana legislature attaches prison time. Additionally, the state battery charge does not encompass the power imbalance inherent in the officer-arrestee relationship, something that adds to the considerable reprehensibility here. *See Kunz*, 538 F.3d at 679; *see also Farfaras*, 433 F.3d at 567 (emphasizing the increased reprehensibility surrounding using power imbalance as an opportunity to harm someone).

Courts can also consider civil penalties imposed in other cases, *Kapelanski v. Johnson*, 390 F.3d 525, 534 (7th Cir. 2004), and both parties suggest that is the more appropriate path here. Civil judgments in similar cases cover a broad amount range. And in these cases, the court's work is maintaining an acceptable range. *See Est. of Moreland*, 395 F.3d at 757. Even weighing this factor as part of the mix, the court cannot say the punitive damage award is irrational or unconstitutional.

Mr. Titus nonetheless argues that a punitive award this high will punish him for the rest of his life. One should think of that before engaging in this type of conduct. Personal finances may factor into punitive damage calculations when the defendant cannot possibly pay. *Kemezy v. Peters*, 79 F.3d 33, 36 (7th Cir. 1996). "The defendant who cannot pay a large award of punitive damages *can point this out to the jury* so that they will not waste their time and that of the bankruptcy courts by awarding an amount that exceeds his ability to pay." *Id.* (emphasis added). But, as Mr. Stewardson says, Mr. Titus chose not to argue this to the jury [Tr. 505-513 (direct examination of Mr. Titus)]. *See Stewardson v. Cass Cnty.*, 2023 U.S. Dist. LEXIS 48423, 19 (N.D. Ind. Mar. 22, 2023). Once more this was a strategic decision that Rule 59 was not designed to undo. That wisdom doesn't change with an expensive verdict. The court denies the request to vacate the punitive damage award.

C. *New Trial.*

The defendants argue that they are entitled to a new trial even if the court declines to remit or vacate the damage awards based on cumulative issues that caused the trial to be fundamentally unfair.

**Short Appendix 0014**

None of their arguments warrants a new trial, an "extraordinary remed[y] reserved for the exceptional case." *Childress*, 787 F.3d at 442.

> 1. *Order in Limine.*

The defendants first argue they are entitled to a new trial because the court excluded evidence that Mr. Stewardson was intoxicated and acting belligerently at the scene of his arrest. The court has already addressed this evidence's admission twice [195 at 14; Tr. 211-12]. The defendants provide no reason to reverse these decisions now. *See* Fed. R. Evid. 403, 404, 602.

The evidence the defendants sought to present was not particularly probative to the case's legal and factual questions, especially in light of its propensity and prejudicial nature. *See* Fed. R. Evid. 403, 404. Excessive force is assessed under an objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395-96 (1989). The jury must analyze whether the officer's actions were objectively reasonable in light of the facts and under the circumstances confronting the officer at the time of the incident. *Id.* at 396-97. The "circumstances" mean "only those circumstances known and information available to the officer at the time of his action." *Sherrod v. Berry*, 856 F.2d 802, 804 (7th Cir. 1988). "Knowledge and facts gained after the fact . . . have no proper place in a court's or jury's analysis of the reasonableness of the actor's judgment." *Common v. City of Chi.*, 661 F.3d 940, 943 (7th Cir. 2011). In evaluating the officer's actions, "the fact finder must do so with blinders on—viewing the circumstances and facts only as they were known to the officer at the time." *Id.* "[E]vidence outside the time frame of the [incident] is irrelevant and prejudicial." *Palmquist v. Selvik*, 111 F.3d 1332, 1339 (7th Cir. 1997).

The defense continues to argue the *Common* exceptions. The law permits a "peek under the blinders in certain circumstances," namely that (1) the credibility of a witness "can always be attacked by showing that his capacity to observe, remember or narrate is impaired" and (2) a "witness could always be impeached by demonstrating contradictions in his testimony." *Common*, 661 F.3d at 943-44.

No one disputed that Mr. Stewardson was intoxicated during the events on January 1, 2018. He admitted it at trial [Tr. 237:14-15]. The officers knew he was intoxicated at the jail. That not just lessens the probative value of evidence of his intoxication at the scene of arrest but enhances the undue delay and cumulativeness that such evidence would have caused at trial. *See* Fed. R. Evid. 403. It also illustrates that Mr. Stewardson's state of intoxication wasn't a factual issue seriously in dispute to justify reaching back to the arrest scene.

In addition, at the final pretrial conference, the court saw little proffer that the defendants knew about Mr. Stewardson's conduct during his arrest [195 at 14]. At trial, the defense offered the testimony of Officer Schlosser, one of the arresting officers, but still never proved that officers at the jail knew about the arrest scene conduct [Tr. 208]. Additionally, the court permitted the defense to introduce testimony about what happened once Mr. Stewardson was brought to the facility, what happened when he exited the squad car, and what may have happened in the moments before he exited the squad car [Tr. 211-212]. The defense asserts that the court excluded Mr. Stewardson's behavior "immediately before his arrival at the Cass County Jail," but as the transcript shows the court allowed some evidence of his behavior—the reason for his arrest, his blood alcohol content, his comments before exiting the car— which makes one wonder about the defense's definition of "immediate" [Tr. 211]. No one disputed that Mr. Stewardson was intoxicated, and everyone, including Mr. Stewardson, agreed that he was still intoxicated at the jail, making the other evidence superfluous [Tr. 211; 237].

The defense alleges that the exclusion of this evidence made the trial "fundamentally unfair" because it would have made the fact that Mr. Stewardson stumbled and resisted at the jail more probable. In addition to the evidence *supra*, the jury heard testimony from Mr. Titus about Mr. Stewardson's condition [Tr. 508]. Perhaps most important, the jury watched the incident unfold on tape. The probative value of additional evidence would have been exceedingly low. *See* Fed. R. Evid. 403. Excluding evidence of conduct the officers at the jail did not even know about, particularly when Mr. Stewardson admitted

14

his intoxicated state, did not make the trial fundamentally unfair. Its probative value, marginally if any, was substantially outweighed by its prejudice, cumulativeness, and risk of confusion.

2. *Closing Statements.*

The defendants waived their objections to Mr. Stewardson's closing argument. Additionally, even if Mr. Titus had not waived this argument, new trials after improper closing statements are "warranted only if [the] allegedly improper closing remarks depart from the evidence presented at trial and result in substantial prejudice to the opposing party." *Willis v. Lepine*, 687 F.3d 826, 834 (7th Cir. 2012) (quoting *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 731 (7th Cir. 1999)). "[I]mproper comments during closing argument rarely rise to the level of reversible error." *Willis*, 687 F.3d at 834; *see also Smith v. Rosebud Farm, Inc.*, 898 F.3d 747, 753 (7th Cir. 2018) (same).

The defendants now object to opposing counsel's statements, like telling the jury it was the "conscience of the community" and referencing police misconduct generally. But the defendants are decontextualizing and mischaracterizing the arguments. Mr. Stewardson mentioned "officers everywhere" when discussing how good most officers are, not police misconduct, as Mr. Titus alleges [226 at 17; Tr. 540]. Mr. Titus complains about Mr. Stewardson asking the jury to consider the consequences of his actions for the community and argues that comments about the culture in the jail were wrong; but one of the very purposes of punitive damages is deterrence, so these considerations were in line with this request. *See BCS Servs. v. BG Invs., Inc.*, 728 F.3d 633, 641 (7th Cir. 2013). The court finds no error worthy of a retrial.

3. *Proposed Jury Instruction No. 8.*

The defense also spends two paragraphs in its Rule 59 motion arguing that the exclusion of its proposed instruction (No. 8) misapplied Indiana law. The proposed instruction read: "Indiana law places the burden on plaintiffs to overcome a presumption that police officers who use force do so reasonably and in good faith" [171-1 at 9, Instr. No. 8].

"A district court has considerable discretion in phrasing, organizing, and adapting jury instructions to the specific needs of the case, as long as the instructions fairly and accurately summarize the law and have support in the record." *United States v. Benabe*, 654 F.3d 753, 775 (7th Cir. 2011). A jury instruction error warrants a new trial "only if the instructions as a whole misled the jury as to the applicable law." *United States v. Rainone*, 816 F.3d 490, 494 (7th Cir. 2016) (quotation and citation omitted). A misstatement of the law must also "prejudice the objecting litigant." *Huff v. Sheahan*, 493 F.3d 893, 899 (7th Cir. 2007). Here, the argument seems to be that the given instructions failed to paint a whole picture, but courts consider the jury instructions given as a whole.

The trial instructions properly guided the jury. The court provided the jury with the following instruction on the battery claim:

> "To succeed on a battery claim against the Sheriff of Cass County, Mr. Stewardson must prove each of the following two things by a preponderance of the evidence: 1. Officer Titus, in his official capacity, intentionally used force against Mr. Stewardson. 2. The force Officer Titus used was unreasonable. If you find that Mr. Stewardson has proven each of these things by a preponderance of the evidence, then you must decide for Mr. Stewardson, and go on to consider the question of damages against the Sheriff of Cass County. If, on the other hand, you find that Mr. Stewardson has failed to prove any one of these things by a preponderance of the evidence, then you must decide for the Sheriff of Cass County, and you will not consider the question of damages against the Sheriff of Cass County." [213 at 2-3, Instr. No. 4].

The court also instructed the jury that "law enforcement officers can use force that is reasonably necessary under the circumstances" [213 at 4, Instr. No. 6] and that Mr. Stewardson bore the burden of proving that the force was unreasonable [213 at 2, Instr. No. 3]. Nothing in today's motion explains why the jury was misled or failed to perceive the full picture of the law, nor does it explain how the defendants were prejudiced. The jury instructions, taken as a whole, *see Rainone*, 816 F.3d at 494, provided the jury with the information that officers could use reasonable force and that the burden rested on Mr. Stewardson to prove that the force was instead excessive or unreasonable [213 at 2-3, Instr. Nos. 3, 4, 5]. The court explained the factors that the jury could use to analyze the reasonableness [213 at 4, Instr. No. 6]. When analyzed as a whole, the jury instructions address the proposed instruction.

16

**Short Appendix 0018**

Additionally, the jury had to find that Mr. Titus acted with malice or in reckless disregard to award punitive damages—and did. This means that the jury found that Mr. Stewardson proved that the force was both unreasonable and done intentionally, with malice or "in reckless disregard of Mr. Stewardson's rights" [213 at 6, Instr. No. 13]. Such a finding means that Mr. Stewardson proved that Mr. Titus did not act reasonably or in good faith. Excluding the proposed instruction did not prejudice the defendants or mislead the jury.

Finally, the defendants argue that if any individual issue doesn't warrant a new trial, then the combination created a fundamentally unfair trial. The defense argues the cumulative issues "present an exceptional circumstance that constitutes plain error" and warrant a new trial. Three weak objections don't create a strong one. A new trial is not warranted.

## CONCLUSION

Accordingly, the court DENIES the Sheriff of Cass County and Mr. Titus's motion for remittitur of compensatory damages, vacatur of punitive damages against Mr. Titus, and a new trial [225].

SO ORDERED.

November 1, 2023                         s/ Damon R. Leichty
                                         Judge, United States District Court

**Short Appendix 0019**