# In the
# United States Court of Appeals
## for the Seventh Circuit

BLAKE STEWARDSON,

*Plaintiff-Appellee/Cross-Appellant,*

v.

CHRISTOPHER TITUS,

*Defendant-Appellant/Cross-Appellee,*

and

CAMERON BIGGS, et al.,

*Defendants-Cross-Appellees.*

_____

Appeals from the United States District Court
for the Northern District of Indiana, South Bend Division, No. 3-18-cv-00958-DRL-MGG.
The Honorable Damon R. Leichty, Judge Presiding.

## BRIEF OF PLAINTIFF-APPELLEE/CROSS-APPELLANT BLAKE STEWARDSON

DURAN L. KELLER (*Counsel of Record*)
KELLER LAW LLP
8 North Third Street, Suite 403
Lafayette, Indiana 47901
(765) 444-9202

*Counsel for Appellee/Cross-Appellant*

 

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: <u>23-3262 & 23-3343</u>

Short Caption: <u>Stewardson v. Titus</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

<u>Blake Stewardson</u>

_____

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

<u>Keller Law</u>

_____

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    <u>N/A</u>

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

    <u>N/A</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

<u>N/A</u>

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

<u>N/A</u>

Attorney's Signature: <u>/s/ Duran L. Keller</u>        Date: <u>May 8, 2024</u>

Attorney's Printed Name: <u>Duran L. Keller</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑    No ☐

Address: <u>8 North Third Street, Suite 403</u>

<u>Lafayette, Indiana 47901</u>

Phone Number: <u>(765) 444-9202</u>        Fax Number: <u>(765) 807-3388</u>

E-Mail Address: <u>duran@kellerlawllp.com</u>

## Table of Contents

Circuit Rule 26.1 Disclosure Statement ................................................................. i

Table of Authorities ..................................................................................... iii

Jurisdictional Statement on Appeal ............................................................. 1

Statement of the Case on Appeal ................................................................. 3

Summary of the Argument on Appeal ........................................................ 4

Argument on Appeal ..................................................................................... 4

I.      The punitive damage assessment is not excessive ......................... 5

II.     Defendant-Appellant waived any issue based on his financial condition ............ 11

Conclusion on Appeal ................................................................................... 14

CROSS-APPEAL BRIEF ............................................................................. 15

Jurisdictional Statement ............................................................................... 15

Statement of the Issue ................................................................................... 15

Statement of the Case ................................................................................... 16

Summary of Argument ................................................................................. 18

Argument ....................................................................................................... 19

I.      Standard of Review ............................................................................ 19

II.     A reasonable jury could have determined that Appellee Biggs engaged in
        excessive force. ................................................................................... 19

III.    A reasonable jury could have determined that Cross-Appellee Biggs had and
        did not take an opportunity to intervene and prevent Appellant Titus' fourth
        use of excessive force. ....................................................................... 22

IV.     A reasonable jury could have determined that the Cass County Jail has a custom
        of stripping and/or tying to a chair uncooperative detainees which caused both
        of those things to happen to Appellant Stewardson ..................... 24

Conclusion ..................................................................................................... 30

# Table of Authorities

Cases

*Alioto v. Town of Lisbon*,
651 F.3d 715 (7th Cir. 2011) ................................................................. 12

*American National Bank & Trust Company of Chicago v. Regional Transportation Authority*,
125 F.3d 420 (7th Cir. 1997) .................................................................... 5

*Anderson v. Branen*,
17 F.3d 552 (2d Cir. 1994) ..................................................................... 23

*Bell v. Wolfish*,
441 U.S. 520 (1979) ............................................................. 24, 28, 29, 30

*Belom v. Nat'l Futures Ass'n*,
284 F.3d 795 (7th Cir. 2002) ................................................................. 12

*Block v. Rutherford*,
468 U.S. 576 (1984) .............................................................................. 24

*BMW of N. Am., Inc. v. Gore*,
517 U.S. 559, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996) .................... 5, 6

*Borrero v. City of Chicago*,
456 F.3d 698 (7th Cir. 2006) ................................................................... 2

*Byrd v. Brishke*,
466 F.2d 6 (7th Cir. 1972) ..................................................................... 22

*City of Newport v. Fact Concerts, Inc.*,
453 U.S. 247, 69 L. Ed. 2d 616, 101 S. Ct. 2748 (1981) ...................... 11

*Clash v. Beatty*,
77 F.3d 1045 (7th Cir. 1996) ................................................................. 21

*Collignon v. Milwaukee Cty.*,
163 F.3d 982 (7th Cir. 1998) ................................................................. 24

*Cooper v. Casey*,
97 F.3d 914 (7th Cir. 1996) ..................................................................... 9

*Davis v. Nanny*,
2020 WL 3452492 (S.D. Ill., June 24, 2020) ........................................ 13

*Dunn v. Nordstrom, Inc.*,
260 F.3d 778 (7th Cir. 2001) ................................................................. 25

*E.E.O.C. v. AutoZone, Inc.,*
707 F.3d 824 (7th Cir. 2013) .................................................................6

*Estate of Novack v. Cty. of Wood,*
226 F.3d 525 (7th Cir. 2000) ...............................................................24

*Farfaras v. Citizens Bank & Tr.,*
433 F.3d 558 (7th Cir. 2006) ...........................................................5, 10

*Fishman v. Clancy,*
763 F.2d 485 (1st Cir. 1985) ...............................................................12

*Florence v. Bd. of Chosen Freeholders of Cty. of Burlington,*
566 U.S. 318 (2012) .............................................................................24

*Gertz v. Robert Welch, Inc.,*
418 U.S. 323, 350, 41 L. Ed. 2d 789, 94 S. Ct. 2997 (1974) ...............11

*Goudy v. Cummings,*
922 F.3d 834 (7th Cir. 2019) ...............................................................26

*Graham v. Connor,*
490 U.S. 386 (1989) .............................................................................19

*Harding v. Giddings,*
73 F. 335 (7th Cir. 1896) .....................................................................12

*Harris v. Harvey,*
605 F.2d 330 (7th Cir. 1979) ...............................................................12

*Heller v. Equitable Life Assur. Soc. of U.S.,*
833 F.2d 1253 (7th Cir. 1987) .............................................................12

*Hively v. Ivy Tech Community College of Indiana,*
853 F.3d 339 (7th Cir. 2017) ...............................................................12

*John F. Fleming, Inc. v. Beutel,*
395 F.2d 21 (7th Cir. 1968) .................................................................26

*Kemezy v. Peters,*
79 F.3d 33 (7th Cir. 1996) ...................................................................13

*Kingsley v. Hendrickson,*
576 U.S. 389 (2015) .........................................................................19, 24

*Kunz v. DeFelice,*
538 F.3d 667 (7th Cir. 2008) .............................................................7, 8

*Lane v. Structural Iron Workers Local No. 1 Pension Trust Fund*,
   74 F.4th 445 (7th Cir. 2023) ..................................................................12

*Lanigan v. Village of East Hazel Crest*,
   110 F.3d 467 (7th Cir. 1997) ...........................................................22, 23

*Mathias v. Accor Econ. 8 Lodging, Inc.*,
   347 F.3d 672 (7th Cir. 2003) ................................................................10

*Mays v. Dart*,
   974 F.3d 810, 819 (7th Cir. 2020) .........................................................19

*McGinnis v. American Home Mortgage Servicing, Inc.*,
   901 F.3d 1282 .......................................................................................19

*McNabola v. Chicago Transit Auth.*,
   10 F.3d 501 (7th Cir. 1993) ....................................................................5

*Mendez v. Perla Dental*,
   2008 WL 821882, *aff'd in part*, 646 F.3d 420 (7th Cir. 2011)..................6

*Montano v. City of Chicago*,
   535 F.3d 558 (7th Cir. 2008) ................................................................22

*Mother and Father v. Cassidy*,
   338 F.3d 704 (7th Cir. 2003) ................................................................12

*Murphy v. Smith*,
   2015 WL 13236221, *aff'd in part, remanded in part*,
   844 F.3d 653 (7th Cir. 2016), *aff'd*, 583 U.S. 220 (2018) ...................8-9

*Payne v. Pauley*,
   337 F.3d 767 (7th Cir. 2003) ................................................................21

*Pitzer v. City of E. Peoria, Illinois*,
   708 F. Supp. 2d 740 (C.D. Ill. 2010) ...................................................23

*Pullen v. House*,
   88 F. Supp. 3d 927 (W.D. Wis. 2015) .............................................20, 21

*Rice v. Correctional Medical Servs.*,
   675 F.3d 650 (7th Cir. 2012) ................................................................26

*Saccameno v. U.S. Bank National Association*,
   943 F.3d 1071 (7th Cir. 2019) ..........................................................9, 10

*Smith v. Ball State Univ.*,
   295 F.3d 763 (7th Cir. 2002) ................................................................20

*State Farm Mutual Auto. Ins. Co. v. Campbell*,
    538 U.S. 408, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003) .................................................6, 10

*Stewardson v. Biggs*,
    43 F.4th 732 (7th Cir. 2022) ...................................................................................23

*TXO Prod. Corp. v. All. Res. Corp.*,
    509 U.S. 443, 113 S. Ct. 2711, 125 L. Ed. 2d 366 (1993) ......................................10

*Williamson v. Ortiz*,
    2018 WL 3344592 (N.D. Ill., July 9, 2018, No. 14-CV-6397) ...............................6

*Yang v. Hardin*,
    37 F.3d 282 (7th Cir. 1994) .....................................................................................22

*Zarcone v. Perry*,
    572 F.2d 52 (2nd Cir. 1978) .....................................................................................12


Statutes and Other Authorities

28 U.S.C. § 1331 .................................................................................................................1, 15

42 U.S.C. § 1983 .............................................................................................................1, 15, 22

Cass County Sherrif's Rule 30(b)(6) ...................................................................................24

Circuit Rule 28(b) ...................................................................................................................1

Fed. R. App. P. 4(a)(3) ...........................................................................................................2

Fed. R. App. P. 4(a)(4) .......................................................................................................1-2

Fed. R. Civ. P. 59 ................................................................................................................1, 2

**Jurisdictional Statement on Appeal**

The Jurisdictional Statement of the Appellant Christopher Titus is not complete and correct because it omits the cross-appeal of plaintiff/cross-appellant Blake Stewardson as against cross-appellees, Cameron Biggs and Cass County Sheriff. Stewardson accordingly submits the following pursuant to Circuit Rule 28(b).

The district court's jurisdiction derives from a federal question brought pursuant to 28 U.S.C. § 1331 by way of 42 U.S.C. § 1983.

On March 9, 2021, the district court issued a summary judgment ruling. [Doc. 133]. On April 8, 2021, Defendant/Cross-Appellee Cameron Biggs requested the district court to reconsider that decision. [Doc. 138]. On October 14, 2021, the district court granted reconsideration and partially upheld its prior decision. [Doc. 145].

Cross-Appellee Biggs filed a Notice of Appeal on November 12, 2021. This Court rejected his appeal, and the claims that the district court denied were sent back for trial. [Doc. 163].

On March 31, 2023, following a three-day jury trial, the District Court entered a final judgment in favor of Stewardson and against the Sheriff of Cass County and Christopher Titus. [Doc. 212]. The jury's verdict was composed of $400,000 in compensatory damages and $850,000 in punitive damages against Christopher Titus. [*Id.*] The jury found for Biggs on the solitary failure to intervene claim before them. [Doc. 209].

On April 27, 2023, the Sheriff of Cass County and Christopher Titus timely filed a motion under Fed. R. Civ. P. 59 seeking remittitur of the compensatory damages and constitutional correction of the punitive damages. [Doc. 255.] Per Federal Rule of

Appellate Procedure 4(a)(4), that motion tolled the time for the parties to appeal from the March 31, 2023, final judgment until after the district court ruled on it. On November 1, 2023, the district court denied the Sheriff of Cass County and Christopher Titus's Rule 59 motion. [Doc. 241].

Upon the entry of the November 1, 2023, denial of Cass County Sheriff and Titus's Rule 59 motion, the March 31, 2023, final judgment then became ripe for review. *Borrero v. City of Chicago*, 456 F.3d 698, 700 (7th Cir. 2006).

On November 25, 2023, Christopher Titus timely filed his Notice of Appeal. [Doc. 243.] His appeal claims the jury's punitive damages verdict and District Court's upholding of the verdict was unconstitutional.

Following the filing of Christopher Titus' notice of appeal, Plaintiff/Cross-Appellant Stewardson timely filed his December 8, 2023, Notice of Cross-Appeal [Doc. 249] as to the district court's summary judgment rulings. [Doc. 133 & 145]. See Fed. R. App. P. 4(a)(3). Stewardson's cross-appeal challenges the District Court's summary judgment rulings in favor of Cross-Appellees Biggs and Sheriff of Cass County on Stewardson's claims that Biggs committed excessive force and failed to intervene following multiple instances of proven excessive force by Appellant Titus [Doc. 133 & 145], that the Cass County Sheriff has a custom of stripping and/or tying to a chair uncooperative detainees [Doc. 133].

This is not a direct appeal from the decision of a magistrate judge. There are no motions pending before the District Court.

## Statement of the Case on Appeal

This Court gives great deference to the jury's verdict, and interpret the evidence, including the video, in the light most favorable to that verdict.

Plaintiff-Appellee was taken to the Cass County Jail. [Doc. 113-1, (Surveillance Video) at 12:48:09]. When he arrived, Plaintiff-Appellant was handcuffed behind his back. [Doc. 113-1, 12:48:09; Doc. 219, 242:11-22]. Defendant-Appellant slammed his face into a wall [Doc. 219, 242:11-22], twice [Doc. 113-1, 9:49:20-22]., tripped him face first to the ground without warning (while handcuffed) [Doc. 113-1, Surveillance Video, 9:49:34], and helped numerous other officers pile on top of him for almost thirty minutes [Doc, starting at 109:51:15]. As indicated by his police report, Titus applied pressure points behind both ears. [Doc. 219, 177:15-19]. Titus pinned Blake to the floor and pressed Blake's face into a pool of his own blood. [Doc. 113-1, 1:09:58:40]. Then Titus strips Stewardson naked [Doc. 111-4, p. 194:2-195:22], [Doc. 111-7, ¶19, p. 5-7]. After that ordeal appeared over, Defendant-Appellant Titus beckoned Plaintiff-Appellee Stewardson towards the cell door and slammed it into him without warning. [Doc. 113-1, 1:19:14]. Defendant-Appellant Titus then entered the cell and, with Plaintiff-Appellee clearly retreating, attacked again, picking up Plaintiff-Appellee and slamming his naked bleeding body to the ground. [Doc. 113-1, 1:19:17], [Doc. 111-4, p. 180:20-181:8], [Doc. 111-4, p. 184:14-185:19; see also Doc. 113-1 at 187:190:3]. Then, Defendant-Appellant Titus tied Plaintiff-Appellee, naked, to a chair. [Doc. 113-1, 1:19:55]; [Doc. 111-4, p. 190:4-191:18]. Titus then spent time at work laughing and showing off the video of his actions and smiling. [Doc. 113-1, 1:19:17]; [Doc. 219, p. 272].

## Summary of the Argument on Appeal

Defendant-Appellant's conduct was extremely reprehensible. Checking every box for all of the reprehensibility considerations, the punitive damages assessment concerning Titus' reckless misconduct fits soundly within established jurisprudence. The amount is not grossly excessive and could be higher and still withstand scrutiny. Mr. Stewardson suffered significant physical harm and long-lasting emotional harm. The ratio between the compensatory damages and the punitive damages indicates that the punitive damages award is presumptively constitutional.

Titus concedes the existence of all the Due Process factors by offering no argument in his opening brief.

Defendant-Appellant Titus waived any issue related to his financial condition. He did not present any evidence of his financial condition at trial. Despite choosing not to introduce his financial picture at trial, Titus offers his disputed financial picture on appeal, while citing to inapposite case law for support. He cannot now rely on arguments regarding his financial condition on appeal.

## Argument on Appeal

Whether by concession or waiver, by offering no argument in his opening brief, Titus concedes the existence of all the Due Process guideposts supporting the jury's verdict and the District Court. [Doc. 13, generally]. Likewise, Titus offers no challenge concerning the comparable cases found by the District Court or the comparable cases/penalties argued by Stewardson below [Doc. 235 at 20-21]. Instead, Titus largely

attacks the availability of punitive damages. Titus downplays his misconduct[1] and parrots the word 'windfall' 5 times. [*Id.*] But see *Farfaras v. Citizens Bank & Tr.*, 433 F.3d 558, 567 (7th Cir. 2006) ("The punitive damages award in this case is not duplicative of the compensatory damages award. Instead, the award is calculated to achieve one of the goals of punitive damages: deterrence of similar future conduct."

## I.    The punitive damage assessment is not excessive.

The properly instructed jury is the best deliberating body to decide the appropriate amount of punitive damages. The jury's damage calculations are entitled to great deference, and the Court may only vacate the jury's verdict if the award is either "monstrously excessive," "shocks the judicial conscience," "has no rational connection to the evidence," or "clearly appears to be the result of passion or prejudice." *American National Bank & Trust Company of Chicago v. Regional Transportation Authority*, 125 F.3d 420, 437 (7th Cir. 1997); *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 516 (7th Cir. 1993).

In addition to not presenting evidence of his financial condition, Defendant-Appellant did not object to the jury instructions, did not object to evidence and testimony, opened the door to damaging evidence, and did not object to closing arguments. In this light, punitive damages are assessed by the standard set in *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996),

> The Supreme Court has established three "guideposts" to assist courts in determining whether punitive damages are constitutionally excessive: (1) the "degree of reprehensibility" of the defendant's improper conduct; (2)

---

[1] "The jury determined that Titus's actions justified an award of punitive damages. But this is not a case where someone died or was seriously injured." Titus Br., Doc. 13 at 19.

the "disparity between the harm or potential harm suffered by [the plaintiff] and [the] punitive damages award;" and (3) the difference between the punitive damages and the civil penalties authorized or imposed in comparable cases. *BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 575, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996); *see also State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 419, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003) (reiterating *Gore* 's three guideposts).

*Mendez v. Perla Dental,* 2008 WL 821882, *aff'd in part,* 646 F.3d 420 (7th Cir. 2011).

Of these guideposts, degree of reprehensibility is the most important factor. *E.E.O.C. v. AutoZone, Inc.* 707 F.3d 824, 838–840 (7th Cir. 2013)("The first guidepost requires us to consider the reprehensibility of the defendant's conduct and is perhaps the most important indicium of the reasonableness of a punitive damages award.")(cleaned up). Defendant-Appellant disregards this "guidepost" as of "little assistance[.]" [Doc. 113 at 19].[2]

There are five factors in determining the reprehensibility of actions at issue. *Williamson v. Ortiz,* 2018 WL 3344592, *7 (N.D. Ill., July 9, 2018) <u>citing</u>, *State Farm Mutual Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003).

> The degree of reprehensibility is the most significant factor in assessing the propriety of a punitive damages award. *State Farm Mutual Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003). The reprehensibility of a defendant's conduct is assessed based on (1) whether the harm was physical or economic in nature; (2) whether the conduct evinced an indifference to or reckless disregard for the health or safety of others; (3) whether the target of the conduct was especially vulnerable; (4) whether the conduct involved repeated actions; and (5) whether the harm was the result of malice, trickery, or deceit, or mere accident.

---

[2] We believe surveillance video was the CD cross-appellee sent in, marked as Doc. 113-1.

In this case, all five of these factors weigh heavily in favor of a conclusion that the amount of punitive damages awarded by this jury were appropriate.

As to factors 1 and 4, Defendant-Appellant's repeated actions were unquestionably malicious and reprehensible. Not only did Defendant-Appellant Titus inflict physical harm—the only visible remnant being Stewardson's scar leaving one eyebrow shorter than the other [Doc. 219, 274:25-276:07]—Titus' conduct was not limited to a single incident. There was more than enough of a "cooling off" period between each use of force where Defendant-Appellant made an affirmative, specific choice to engage in further brutality. Further, as articulated by the District Court, "[a]n officer's brutality, done while in a position of public trust, also contributes to the reprehensibility or punitive damage purposes. *Kunz*, 538 F.3d at 679." [Doc 1, p. 48]. Therefore, the reprehensibility factor weighs heavily in favor of the jury's punitive damages decision. This is especially true since another factor to consider is Defendant-Appellant's repeated actions; each subsequent act of excessive force by someone in a position of public trust is exponentially more reprehensible than the previous act of excessive force.

As to factors 2 and 5, Defendant-Appellant's actions were beyond indifferent to the health and safety of Mr. Stewardson. Not only was Defendant-Appellant maliciously trying to hurt Plaintiff-Appellee on numerous occasions, but there was also, according to the District Court, "a certain level of callousness; Mr. Stewardson credibly testified he could hear laughter from inside his cell [Doc. 219, p. 272] [Ex. 101 at 12:57 (officers rewatching leg sweep and laughing)]. Mr. Titus appeared to laugh while testifying about it at trial [Doc. 219, 129:15-20]. He was not a sympathetic witness. A jury could

understandably find these events reprehensible, given its violent nature and Mr. Titus's seemingly flippant approach to it. The most important factor in the analysis weighs heavily against Mr. Titus. See *Kunz v. DeFelice*, 538 F.3d 667, 679 (7th Cir. 2008). Regarding health and safety specifically, the jury may well have noted that it took a very long time after the brutality before there was any evidence of medical treatment.

As to factor 3, Plaintiff-Appellant was especially vulnerable. He was handcuffed behind his back for the first three instances of excessive force. This means he could not reach out and soften the impact of his face to cinderblock. Twice. This means he could not catch himself as he plummeted face first to the jail cell's ground. Then, for twenty-six minutes, a pile of officers was on top of him, contorting and twisting him, to the point he thought he was going to die. [Doc. 219, p. 259:01-259:11].[3] Then he was stripped naked, adding to his vulnerability, and left alone in the room to keep bleeding. Still naked, and trying to obey orders by approaching his abuser when called, he was hit with a large door and then, despite obviously surrendering, was grabbed and slammed to the ground again. Once tied to a chair, naked, (which according to Defendant-Appellant's training is a method of dehumanization), [Doc. 223, p. 429:4-430:6], he could do nothing but listen to the laughter and jokes made by public servants at his expense.

In *Murphy v. Smith*, that court noted that,

In *Kunz*, the Court found a defendant's conduct reprehensible because it was a physical injury that occurred while the plaintiff was "shackled and defenseless," and the defendant very clearly intended his actions. *Id.* at 679. That case is precisely analogous to the situation here, where Defendant

---

[3] "I knew I was at their mercy, and I couldn't to – there's nothing I could do. I thought I was going to die. I couldn't breathe. My face is in blood. I'm panicked. I'm defenseless."

Smith intentionally punched Plaintiff in the face while he was shackled and the other defendants covered it up and delayed getting Plaintiff medical care. As the court there noted, brutality by those in a position of trust is a serious issue that justifies a substantial punitive damage awards. *Id.* citing, *Cooper v. Casey*, 97 F.3d 914, 919 (7th Cir. 1996)).

2015 WL 13236221, at *6–7, *aff'd in part, remanded in part*, 844 F.3d 653 (7th Cir. 2016), *aff'd*, 583 U.S. 220 (2018). The facts here are not just analogous, but worse. This is why Defendant-Appellant's reliance on *Saccameno v. U.S. Bank National Association*, 943 F.3d 1071 (7th Cir. 2019) is misplaced.

> Ocwen's conduct was reprehensible, but not to an extreme degree. It caused no physical injuries and did not reflect any indifference to Saccameno's health or safety…[.] No evidence supports that Ocwen was acting maliciously, though the number of squandered chances it had to correct its mistakes comes close. These factors then point toward a substantial punitive damages award, but not one even approaching the $3,000,000 awarded here. Such an award was deemed proper in *McGinnis v. American Home Mortgage Servicing, Inc.*, 901 F.3d 1282, a factually similar case, but there the jury found a specific intent to harm, and the Eleventh Circuit considered evidence supporting all five factors. *Id.* at 1288–91. Ocwen's conduct was less reprehensible than that in *McGinnis* and thus warrants a smaller punishment.

*Saccameno* at 1088. The Court in *Saccameno* distinguishes when there is malice and evil intent as well as physical harm. The Court therein stepped in because none of those elements were present. They are present in this case, like they seemingly were in the Eleventh Circuit where there was a specific intent to harm.

Defendant-Appellant cites to many cases involving the "arbitrary" nature of punitive damages and uses terms like "fairness," "speculative," "approximate," "no objective standard," "no formula" and "proportionate" to imply that the punitive

damages awarded herein have no relation to the harm inflicted upon Plaintiff-Appellee.

Yet,

> This guidepost is often represented as a ratio between the compensatory and punitive damages awards. The Supreme Court, however, has been reluctant to provide strict rules regarding the calculation of this ratio and instead has offered some general points of guidance. *Id.* at 425, 123 S.Ct. 1513. First, few awards exceeding a single-digit ratio "to a significant degree" will satisfy due process. *Id.* Second, the ratio is flexible. Higher ratios may be appropriate when there are only small damages, and conversely, "[w]hen compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit." *Id.* Third, the ratio should not be confined to actual harm, but also can consider potential harm. *TXO Prod. Corp. v. All. Res. Corp.*, 509 U.S. 443, 460–61, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993).

*Saccameno*, at 1088. The ratio of the compensatory vs punitive damages in this case is in the very low single digits. Moreover, Defendant-Appellant Titus wholly fails to mention the third element, the consideration of the potential harm. In addition to his long-lasting emotional harms, Plaintiff-Appellee Stewardson could have suffered serious permanent injury or even died. [Doc. 113-1 at 1:12:58; Doc. 219, p. 259:01-259:11]. Mr. Stewardson had previous suicide attempts. Mr. Titus' abuse certainly does not lessen the likelihood that a suicidal man would commit suicide. The analysis turns on the particular facts and circumstances of the case. *State Farm*, 538 U.S. at 425. See also, *Mathias v. Accor Econ. 8 Lodging, Inc.*, 347 F.3d 672, 676-78 (7th Cir. 2003)(upholding a punitive damages award ratio of 37:1 based on the case's specific facts).

Another purpose of punitive damages is deterrence. *Farfaras v. Citizens Bank & Tr.*, 433 F.3d at 567. Punitive damages may be awarded to punish a defendant for his outrageous conduct but also to deter the defendant and others from engaging in the same

or similar conduct. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350, 41 L. Ed. 2d 789, 94 S. Ct. 2997 (1974); see also, *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 69 L. Ed. 2d 616, 101 S. Ct. 2748 (1981). Defendant-Appellant says nothing about deterrence, only his own purported finances and claims of a 'windfall.' State actors, armed with badges and positions of authority, hold positions with a duty to protect people, the opposite of beating and humiliating them. The desire to avoid a windfall cannot erase the jury's sound judgment of what measure accomplishes deterrence.

In any event, Defendant-Appellant Titus may have also waived this point on appeal. As noted by the district court, Defendant-Appellant's attack on the punitive damage ratio was based on an argument that "the compensatory damages were so unreasonable and irrational that that award cannot possibly be a fair baseline for the ratio." [Doc 1, p. 48.] Defendant-Appellant did not appeal the compensatory award. As such, as to the argument which was preserved in the district court, the foundation for it was waived.

Titus' persistent reckless indifference to Stewardson's defenseless body, his sensitive mind, and Titus' consistent and overpowering humiliation each support the jury's finding that $850,000 warranted to punish and deter this malicious use of force. Titus also perpetrated this attack right in the presence of other officers.

## II.     Defendant-Appellant waived any issue based on his financial condition.

Defendant-Appellant Titus finally argues that the amount of the punitive damages should be reduced from $850,000 to $50,000 because he does not have the money to pay

this judgment. At trial, Defendant-Appellant did not raise the issue of his financial condition or his financial ability to cover any judgment.

The standard of the Court when addressing issues not raised at trial is to not consider said issues.

> It is a cardinal rule of appellate practice that we ignore arguments not presented below. *Harding v. Giddings*, 73 F. 335, 341 (7th Cir. 1896); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011). While we can affirm on any basis supported by the record, the converse is not true: Arguments not made in the district court are waived on appeal. E.g., *Belom v. Nat'l Futures Ass'n*, 284 F.3d 795, 799 (7th Cir. 2002). Except in truly exceptional circumstances inapplicable here, see, for example, *Mother and Father v. Cassidy*, 338 F.3d 704, 707 (7th Cir. 2003), or *Hively v. Ivy Tech Community College of Indiana*, 853 F.3d 339, 351 (7th Cir. 2017) (en banc), we do not reverse district courts for failing to address arguments they never heard. Cf. *Heller v. Equitable Life Assur. Soc. of U.S.*, 833 F.2d 1253, 1261 (7th Cir. 1987) ("[A] trial judge may properly depend upon counsel to apprise him of the issues for decision. He is not obligated to conduct a search for other issues which may lurk in the pleadings.").

*Lane v. Structural Iron Workers Local No. 1 Pension Trust Fund*, 74 F.4th 445, 450–451 (7th Cir. 2023). Defendant-Appellant did not raise the issue at trial, therefore, he cannot raise this issue on appeal.

Defendant-Appellant's own citations compel the conclusion of waiver. One such case on which Defendant-Appellee relies is *Harris v. Harvey*, 605 F.2d 330, 341 (7th Cir. 1979). Titus Opening Brief, Doc. 13, at p. 10. In *Harris*, the Court noted that, "the plaintiff [was not] required to present evidence relating to defendants' net worth. The authority cited suggests that a defendant bears the burden of proving financial hardship." 605 F.2d at 341. This is a consistent rule throughout the circuits. See, e.g., *Zarcone v. Perry*, 572 F.2d 52, 56 (2nd Cir. 1978); *Fishman v. Clancy*, 763 F.2d 485, 490 (1st Cir. 1985). Similarly,

Defendant-Appellant cites to this Court's decision in *Kemezy v. Peters*, 679 F.3d 33 (7th Cir. 1996), but the Court still concluded that the evidence of financial condition must be part of the record in the trial to be considered on the appeal. *Kemenzy* at 36, ("The defendant who cannot pay a large award of punitive damages can point this out to the jury so that they will not waste their time and that of the bankruptcy courts by awarding an amount that exceeds his ability to pay.").

Plaintiffs seeking punitive damages need not put in evidence of the defendant's net worth. *Kemenzy*, at 35-36, ("A plaintiff is not required to seek punitive damages in the first place, so he should not be denied an award of punitive damages merely because he does not present evidence that if believed would persuade the jury to award him even more than he is asking… The reprehensibility of a person's conduct is not mitigated by his not being a rich person, and plaintiffs are never required to apologize for seeking damages that if awarded will precipitate the defendant into bankruptcy. A plea of poverty is a classic appeal to the mercy of the judge or jury, and why the plaintiff should be required to make the plea on behalf of his opponent eludes us.").

Titus makes a plea of poverty in this case, citing various pieces of *dicta*, but even those citations caution that such pleas "do not establish that [Defendant-Appellant] is unable to pay the punitive damages award, nor [is there] a full picture of Defendant-Appellant]'s finances." *Davis v. Nanny*, 2020 WL 3452492, at *4 (S.D. Ill. June 24, 2020). Thus, in some cases it is inadmissible, but in no cases is it required. Furthermore, when the defendant is to be fully indemnified, such evidence, far from being required, is inadmissible. Where the district court ruled in limine that if evidence of financial

condition was introduced by the defense at trial that the issue of insurance may be admissible, in the light most favorable to the verdict (and that this issue was not raised on appeal), the Court should infer that Defendant-Appellant is not without ability to pay. This highlights the importance of the waiver issue, as Plaintiff-Appellee did not have a fair opportunity to make a sufficient record in order for this Court to rule in any way other than what the jury determined. For whatever reason, Defendant-Appellant did not raise the issue of his financial condition in the district court. He should not now benefit from his own strategic choices. And litigants should not be incentivized for concealing evidence from the jury only to then seek multiple levels of appellate review based thereon.

## <u>Conclusion on Appeal</u>

Mr. Titus' slammed a handcuffed man into a cinderblock wall face-first, twice. He took him to a cell and without warning, slammed him to the floor again. He held him in a pretzel. He stipped him naked and then returned to body slam him again before he was tied to a restraint chair. Then he laughed about it, on camera. Mr. Stewardson was never the same. Stewardson brought a federal lawsuit, and Titus denied all wrongdoing. During his testimony, Titus then smirked again at trial.

Titus offers no argument concerning the guideposts put into place to assure the constitutionality he claims lacking. Titus presents nothing to warrant a reduction of the punitive damages amount assessed by a well-informed jury or the District Court. The District Court's ruling on punitive damages should be affirmed.

## [CROSS-APPEAL BRIEF]

## Jurisdictional Statement

The district court's jurisdiction derives from a federal question brought pursuant to 28 U.S.C. § 1331 by way of 42 U.S.C. § 1983.

On March 9, 2021, the district court issued a summary judgment ruling. [Doc. 133]. On April 8, 2021, Appellee Biggs requested the district court to reconsider that decision. [Doc. 138]. On October 14, 2021, the district court granted reconsideration and partially upheld its prior decision. [Doc. 145].

Appellee Biggs filed a Notice of Appeal on November 12, 2021. This Court rejected his appeal, and the claims that the district court denied were sent back for trial. [DOC. 163]. Following a jury trial in the district court, a jury found for Biggs on the failure to intervene claim before them. [Doc. 209].

Following final judgment, Appellant Stewardson filed a Notice of Appeal as to the district court's summary judgment rulings. [Doc. 209].

## Statement of the Issue

First Issue: Did the district court err by granting Cross-Appellee Cameron Biggs summary judgment as to excessive force?

Second Issue: When a law enforcement officer witnesses his subordinate's use of excessive force, must the officer take steps to prevent the subordinate's additional unconstitutional conduct against that same suspect?

Third Issue: Did the district court err by granting Appellee Sheriff's summary judgment as to *Monell* claims regarding the custom of stripping people naked and tying them to a chair for any subjective act of resistance?

**Statement of the Case**

On December 31, 2017, Appellant Stewardson was arrested and brought to the Cass County Jail. [Doc. 102, pp. 1-2]. Appellant Biggs was in charge of the Cass County Jail that night. [Doc. 111-3, p. 128:13-17]. When Stewardson arrived, he was almost immediately subjected to excessive force when Appellant Titus slammed Appellant Stewardson's face into a concrete wall. [Doc. 113-1, 9:48:18-21; Doc. 111-3, 106:24-108:7]. Twice. [Doc. 113-1, 9:49:20-22]. Appellee Biggs assisted his subordinate, Titus, in escorting Appellant Stewardson into the cell, and Appellee Biggs watched Titus slam handcuffed Stewardson face-first into the floor. [Doc. 113-1, Surveillance Video, 9:49:34] Appellee Biggs witnessed these instances of excessive force and took no action to caution Appellant Titus against the use of excessive force against detainees generally, or Appellant Stewardson specifically. [Doc. 145, p. 5].

Appellee Biggs and Appellant Titus, after picking up Appellant Stewardson from the floor, walked Appellant Stewardson to a jail cell. [Doc. 113-1, 9:49:30-32]. As soon as they arrived in the cell, Appellant Titus, again in the presence of Appellee Biggs, committed another instance, his third, of excessive force against Appellant Stewardson, tripping him face first to the ground. Doc. 113-1, 9:49:34]. Appellee Biggs acknowledged this. [Doc. 111-3, 186:25-187:12]. Appellee Biggs witnessed this instance of excessive force [Doc. 219, 357:16-20], and again took no action to caution Appellant Titus against the use

of excessive force against detainees generally, or Appellant Stewardson specifically. Titus was never disciplined. [Doc. 111-4, p.57-58].

For the next twenty-six minutes, numerous individuals including Appellee Biggs restrained Appellant Stewardson like a human pretzel. [Doc. 113-1, starting at 109:51:15]. During this period of time, Appellant Biggs struck Appellant Stewardson with "common peroneal knee strikes" and used the maximum force that Appellee Biggs could muster. [Doc. 111-3, p. 49:16-50.2]. Before Appellant Stewardson was stripped, a jail officer brings a green blanket to be used for suicidal individuals. [Doc. 111-4, p. 192:23-194:3]. Eventually, pursuant to a custom at the Cass County Jail, wherein Appellee Biggs was in charge, Appellant Stewardson was stripped naked. [Doc. 111-4, p. 194:2-195:22], [Doc. 111-7, ¶19, p. 5-7].

A short time later, Appellee Biggs instructed Appellant Titus to tie Appellant Stewardson, naked, to a chair. [Doc. 111-4, p. 167:15-16]. Appellant Titus complied with Appellee Biggs' order. [Doc. 111-4, p. 180:20-181:8]. This is the fate of anyone who enters the Cass County Jail and resists in *any way*. [Doc. 111-4, p. 194:2-195:22], [Doc. 111-7, ¶19, p. 5-7].When Appellant Titus entered the cell to tie Appellant Stewardson to the chair, Appellant Titus again committed excessive force. [Doc. 111-4, p. 180:20-181:8], [Doc. 111-4, p. 184:14-185:19; see also Doc. 113-1 at 187:190:3]. Appellant Stewardson was then tied to a chair. [Doc. 111-4, p. 190:4-191:18]. While naked and tied to the chair, various jail officers mocked Appellant Stewardson, e.g., making fun of the size of his penis. Mr. Stewardson later heard the officers' laughter coming from outside the jail cell. [Doc. 219, p. 272:17-19].

## Summary of Argument

Excessive force occurs when an officer uses more force than needed to accomplish his lawful goals. Appellee Biggs struck Appellant Stewardson on numerous occasions, and each use of force must be independently justified. Not only must Appellee Biggs justify the use of force, but also the amount of force that he used. Appellee Biggs uses the maximum amount of force that he can without regard to its relation to the need for the force. Therefore, a jury should be permitted to determine if Appellee Biggs' use of force was justified *and* whether the amount of force used by Appellee Biggs was justified.

An officer who witnesses excessive force has a duty to intervene against the offending officer. Appellee Biggs witnessed Appellant Titus use excessive force against Appellant Stewardson on three separate occasions. Following each such use of force, Appellee Biggs did not intervene. Following these three uses of excessive force, Appellant Biggs, *without* so much as warning Appellant Titus not to use excessive force again, sent Appellant Titus into Appellant's Stewardson's cell for the purpose of tying Appellant Stewardson to a chair. Appellant Titus then committed excessive force again. The law of this case is that whether Appellee Biggs had a reasonable opportunity to intervene against Appellant Titus' third instance of excessive force was a question for the jury. Therefore, a jury should be permitted to determine if Appellee Biggs had an opportunity to intervene against Appellant Titus' fourth use of excessive force.

A *Monell* custom exists when, as applicable here, an unofficial custom is so pervasive that it is effectively the policy in force. In the Cass County Jail, anytime a detainee exhibits what is subjectively deemed a lack of cooperation at any level, that

detainee is stripped naked and/or tied to a chair. Both the stripping and the tying constitutes a use of force. Since every use of force must be independently justified, the custom of automatically stripping and/or tying any uncooperative detainees to a chair has a high likelihood of causing constitutional violations. Therefore, a jury should be permitted to determine if the Cass County Jail custom of stripping any uncooperative detainee and/or tying them to chairs caused those actions as to Appellant Stewardson and whether those uses of force were excessive.

**Argument**

I.      **Standard of Review**

On appeal of a summary judgment ruling, the Circuit Court reviews the record *de novo*. This means that if a reasonable jury could conclude that the moving party is liable, then summary judgment must be denied, and the appeal therefrom must succeed.

II.     **A reasonable jury could have determined that Appellee Biggs engaged in excessive force.**

Force is excessive and unconstitutional if it was "objectively unreasonable." *Mays v. Dart*, 974 F.3d 810, 819 (7th Cir. 2020), <u>citing</u> *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015). The test of objective reasonableness is discussed in *Graham v. Connor*, 490 U.S. 386, 396 (1989)(severity of the crime at issue; immediate threats to health and safety of officers or others; presence of active resistance or attempts to evade by flight).

For purposes of this analysis, the "severity of the crime at issue" would appropriately be considered "laying on a floor in a pool of his own blood under a number of law enforcement officers crushing him while he tried to breathe" since that is what was

happening when Appellant Biggs used his force at issue. [Doc. 104 111-1, 1:15:34-1:15:37]. Since there is no question that Appellant Stewardson was firmly in officer's control at the time, there is no appreciable danger to the health and safety of the officers or anyone else. *Id*. Understanding Appellee Biggs claimed that Appellant Stewardson was actively resisting or trying to escape, a reasonable jury could have determined based on the video alone that Appellant was either not actively resisting or resisting in self-defense. *Id.*

Importantly, this analysis applies not just to the decision for Appellee Biggs to strike Appellant Stewardson, but also to the Appellee Biggs' decision regarding the amount of force used. *Smith v. Ball State Univ.*, 295 F.3d 763, 770 (7th Cir. 2002)("The amount of permissible force depends on the specific situation…"). Appellee Biggs testified that he used all his available force to strike Appellant Stewardson. [Doc. 111-3, p. 49:16-50.2]. A reasonable jury could determine under the circumstances that are plainly seen on video that Appellee Biggs did not need to strike Appellant at all, let alone with maximum force.

Unlike in *Smith* (cited by the district court) where the officer accused of excessive force had just "arrived on scene" to something already in progress (*Smith* at 766, 770-71), Appellee Biggs was present the entire time. Not only was Appellee Biggs present the entire time, he witnessed three uses of excessive force against Appellant Stewardson already. Also, Appellee Biggs actually connected with his multiple maximum force knee strikes, unlike in *Smith* where the officer "slipped and, rather than apply a [single] knee strike to Smith's leg, tackled [Smith and two other officers]." *Smith* at 766. The district court also cited to *Pullen v. House*, 88 F.Supp.3d 927 (W.D.Wis. 2015). [Doc. 133, p. 10].

That case however supports Appellant Stewardson's position that summary judgment was inappropriate since "police officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever." *Pullen* at 940 <u>citing</u>, *Payne v. Pauley*, 337 F.3d 767, 780 (7th Cir. 2003), and *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996).

The district court ruled on summary judgment that "the knee strikes here weren't violating a constitutional right that was clearly established, particularly when the detainee was verbally aggressive, threatening, unpredictable, and unwilling to cooperate, nor were the knee strikes objectively unreasonable. His broken handcuff was a potential weapon. In the heat of these tense moments, a reasonable officer wouldn't believe that what Deputy Biggs did was objectively unconstitutional." [Doc. 133, p. 10].

As an initial matter, the only evidence in the record is that a reasonable officer would have intervened against all of the force applied to Appellant Stewardson in this case. [Doc. 219, 197:16-198:3]. Beyond that, the district court did not cite to anything in the record to conclude that any reasonable officer would have believed or not. Further, in the light most favorable to Stewardson, this was not in the heat of tense moments or in a rapidly evolving and unpredictable situation. Appellee Biggs' knee strikes occurred over the course of twenty-six minutes, all while Appellant Stewardson was squished to the ground and contorted into balloon animal shapes. [Doc. 113-3, 109:53].

The evidence of the record also shows that Appellant Stewardson did not have the opportunity to cooperate. As soon as they entered the cell, Appellant Titus slammed Appellant Stewardson to the ground. A jury has already determined that the slam was

excessive. [Doc. 209, p.1]. The evidence is incontrovertible that the slam was the start of the 26-minute pile. At the time of the strikes in question, a reasonable jury could determine that under the totality of the circumstances, Appellee Biggs' actions were unreasonable. Therefore, the district court's summary judgment ruling should be REVERSED and this matter should be REMANDED for Trial.

### III. A reasonable jury could have determined that Cross-Appellee Biggs had and did not take an opportunity to intervene and prevent Appellant Titus' fourth use of excessive force.

"One who is given a badge of authority…may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge." *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972). Therefore, a "failure to intervene" claim under § 1983 exists, and requires a plaintiff to show that the defendant had reason to know: "… or (3) that any constitutional violation has been committed by a law enforcement official; *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Lanigan v. Village of East Hazel Crest,* 110 F.3d 467, 479 (7th Cir. 1997) (*quoting Yang v. Hardin,* 37 F.3d 282, 285 (7th Cir.1994)); *see also, Montano v. City of Chicago,* 535 F.3d 558, 569 (7th Cir. 2008).

For purposes of this appeal, since at least 1994 the law has been clearly established that, at minimum, officer have a duty to tell other officers to stop using excessive force against a detainee. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)(a failure to intervene claim can be sustained if a defendant fails to "caution[] [the predicate offending officer] to stop…"). Should an officer do nothing in the face of police brutality, and that officer further brutalizes a detainee, the non-intervening officer can be liable under 7th Circuit

law. *Pitzer v. City of E. Peoria, Illinois*, 708 F. Supp. 2d 740, 750 (C.D. Ill. 2010)("The Court finds that this case presents timing circumstances similar to those of *Lanigan* [*v. Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467, 478 (7th Cir. 1997)], where Seventh Circuit held that the plaintiff had failed to state a claim for failure to intervene because the onlooking officer 'did not have a realistic opportunity to intervene in any situation between Lanigan and Sergeant Krane,' where the alleged excessive force was a single, quick, 'poke and push.' *Though the onlooking officer could have acted to stop further violence, none was alleged*, and so the plaintiff had failed to state a claim for failure to intervene.")(quotations in original; emphasis added).

In this case, Appellant Biggs failed to caution his subordinate against the excessive force on three separate occasions. Then, in light of those failures, that same subordinate committed a fourth instance of excessive force against the same detainee, the "hip toss." Under Seventh Circuit law, a jury must determine Appellee Biggs' liability at trial. *Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 478 (7th Cir. 1997)("Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other office is generally an issue for the trier of fact...") <u>citing</u>, *Anderson v. Branen*, 17 F.3d 552, 557 (2nd Cir. 1994). In *Lanigan*, the Court wrote, "Chief Robertson certainly could have intervened had he felt that further physical force might ensue between Sergeant Krane and Lanigan," but that he did not have the opportunity to stop the one instance of force, and there were no further acts or threats of further force. *Lanigan* at 478. See, e.g. *Stewardson v. Biggs*, 43 F.4th 732, 736 (7th Cir. 2022).

Therefore, the district court's summary judgment ruling should be REVERSED and this matter should be REMANDED for Trial.

## IV. A reasonable jury could have determined that the Cass County Jail has a custom of stripping and/or tying to a chair uncooperative detainees which caused both of those things to happen to Appellant Stewardson

A jail is permitted to have "reasonable" policies to maintain institutional security and preserve internal order and discipline. *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 328 (2012); *Bell v. Wolfish*, 441 U.S. 520, 546-47 (1979). Strip searches of anyone coming into the jail are constitutional; it is part of the "substantial discretion to devise reasonable solutions" to the reality of operating a jail. *Kingsley v. Hendrickson*, 576 U.S. 389, 399 (2015); *Florence*, 566 U.S. at 330; see also, *Block v. Rutherford*, 468 U.S. 576, 585 (1984).

Stripping suicidal inmates is potentially constitutional, since suicide is a serious harm under the law. *Estate of Novack v. Cty. of Wood*, 226 F.3d 525, 529 (7th Cir. 2000); see also, *Collignon v. Milwaukee Cty.*, 163 F.3d 982, 990-91 (7th Cir. 1998)(Suicide is a "serious harm," and prison officials must "take reasonable preventative steps" when there is a "substantial risk that an inmate may attempt to take his own life.").

Here, the district court determined that Appellee Biggs "reasonably believed Mr. Stewardson was suicidal based on his own words to that effect." (Doc. 133, p. 7). To make this finding the District Court relied on 2-3 pages of Officer Biggs testimony during Cass County Sheriff's Rule 30(b)(6) representative. [Doc. 133, p.7, citing 103-5, p.119-20]. In that testimony, Biggs testified as follows:

- "[E]ach inmate has to be individually searched, either patted down or strip searched if it qualifies for that" (*Id.*, p 118)

- "At some point in the hour long, whatever it was interaction, Mr. Stewardson had made the comment that he was suicidal, that he was going to kill himself whenever we left the cell ***I believe is what he said***." (*Id.*, p. 119)

- Asked what he said that made Biggs believe he was suicidal, Biggs responded, "He simply stated – ***I think*** it was 'I'm gonna kill myself,' 'I'm gonna kill myself,' ***or*** 'I'm gonna kill myself when you leave.'" (Id., p. 119)

- Asked whether Biggs belief that Stewardson was in the right state of mind that he "probably could have" or "would have done it maybe" could be said for every intoxicated person who comes into the jail, Biggs responded, "If they don't say it, no. . . . But unfortunately, that's every single person that comes to the jail could be labeled under that." (Id. at 120).

- Testing his knowledge, Biggs was asked at what point Blake stated something to the effect that he was suicidal, Biggs first responded, "I don't recall at what point." (Id. at 120-121).

[Doc 103-5, p.118-121].

It is under this equivocal—"I believe," "I think," "or"—testimony that the District Court based its finding. What Appellant Biggs (or anyone else) believed and whether or not that belief was reasonable is a jury question for trial. *Dunn v. Nordstrom, Inc.*, 260 F.3d 778, 785 (7th Cir. 2001) ("statements of 'beliefs' or 'opinions' are insufficient to create a genuine issue of material fact"). The District Court should have deferred this qualified

testimony to a jury to decide. *John F. Fleming, Inc. v. Beutel*, 395 F.2d 21, 27 (7th Cir. 1968) ("The record is sufficiently equivocal, in our opinion, so that this element of the case does not establish as a matter of law that defendants were entitled to judgment.") See, e.g., *Goudy v. Cummings*, 922 F.3d 834, 841 (7th Cir. 2019) (reversing grant of summary judgment based on equivocal testimony). Underscoring the equivocal nature of this testimony was Biggs' testimony at trial, asked directly if Stewardson said anything about being suicidal before he was stripped naked, that Biggs did not remember. [Doc. 219, 369:1-5 & 369:20-370:2].[4]

Further, the testimony establishes Biggs assertion—that he believed Stewardson to be suicidal—could apply to "every single person that comes to the jail could be labeled [the way Biggs claimed to label Stewardson.]" [Doc. 103-5, p.119:20-120:24]. Tying suicidal inmates to a chair is also only potentially constitutional. See, *Rice v. Correctional Medical Servs.*, 675 F.3d 650, 668 (7th Cir. 2012)(other considerations include resisting or impeding law enforcement). But Stewardson was not resisting. Here again, the district court determined whether Appellant Biggs was "reasonabl[e]" and then ruled in Appellant Biggs' favor despite being the moving party on summary judgment.

Despite these potentialities of constitutionality, it is clear that the justification for such extreme measures is the extreme harm that is suicide. A reasonable jury in this case will have evidence that the Cass County Jail strips and/or ties down all allegedly

---

[4] "I still don't know when. I said, 'During this incident' – or 'during the incident, he stated.' I don't know if I meant the incident of removing his clothing or the incident as in like the whole entirety." [Doc. 219, 369:23-370:1].

uncooperative inmates, not just the suicidal ones. Titus specifically confirmed this point. [Doc. 194:6-195:22].[5] This means that a reasonable jury could determine that Appellee Biggs' alleged belief in this case is mere pretext for the unconstitutional custom. Separately, the methodology of the custom is to forego the individualized assessment of the reasonableness of stripping and/or tying down individual suspects. Stated another way, since according to the custom all uncooperative detainees are stripped and/or tied down, there is no determination as to whether those actions are excessive they just, pursuant to the custom, automatically happen.

In particular, the district court's grant of summary judgment also relied in part on the fact that Appellant Stewardson "had tried to cover up the security camera with a blanket, which would have blocked law enforcement's view of the cell." (Doc. 33, p. 8). The evidence of record however showed conclusively that Appellant Stewardson was not actually able to accomplish that goal, as the blanket immediately falls to the floor. [Doc. 223, 398:23-399:11]. Therefore, a reasonable jury could have determined that, in light of the facts of this case (Appellant Stewardson could not actually cover the camera, Appellee Biggs did not in any way order Appellant Stewardson to stop trying to cover up the camera, by the time someone was sent to tie Appellant to the chair, he had already stopped trying to cover up the camera), a reasonable jury could determine that less force could have been used to ensure visual surveillance on Appellant Stewardson.

---

[5] "That was—that was kind of the—kind of the rules. I mean, that was what we were told. Let's just put it that way. . . . I mean, I can't really recall who said it. But it was just one of those things that was said. It was kind of passed along—along the way. And then everybody had—knew that that's what you were supposed to do." [*Id*. 194:24-195:4].

In deciding the reasonableness of the policy, a District Court must consider "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell*, 441 U.S. at 559. The district court made two rulings in regard to this claim. First, that stripping Appellant Stewardson and tying him to a chair was an "isolated incident." (Doc. 133 p. 8). Second, that doing so was "not unconstitutional as applied here or as a general practice or policy under similar circumstances." *Id.*

As an initial matter, in the light most favorable to Appellant Stewardson, what happened to him is not an isolated incident. [Doc. 111-4, p. 194:2-195:22], [111-7, ¶19, p. 5-7]. Then when the *Bell* factors are considered, a jury should decide certain underlying facts as opposed to those having been decided by the district court. First, the scope of the intrusion regarding stripping was total, Appellant Stewardson was completely naked. A reasonable jury could have determined that it was unreasonable to not allow Appellant Stewardson to keep on his underpants. Second, the manner in which Appellant Stewardson was stripped was brutal. His clothes were ripped off his body after suffering excessive force after excessive force after excessive force and also being folded into a human origami sculpture.

As to the third factor, *if* a jury believes that Appellee reasonably believed that Appellant Stewardson was suicidal there *might* not be a constitutional violation. That is a question of credibility for the jury. Even if the jury believes that Appellee Biggs reasonably believed that Appellant Stewardson was suicidal, it was still their prerogative to determine that the extent of the stripping (e.g., even the underpants) was unreasonable

under the circumstances. As to the final *Bell* factor, it is true that the stripping took place in the jail cell. While this likely falls in favor of Appellant, it is uncontroverted that the cell was video recorded and the Cass County Jail staff all watched video replays of Appellant Stewardson's suffering and mocked his nudity.

The *Bell* factors must also be applied to tying Appellant Stewardson to the chair. First, and again, the scope of the intrusion was total, Appellant Stewardson's arms and legs were both tied down. He was also still completely naked. *Id.* While the district court noted that Appellant was initially covered with a blanket "so he wasn't needlessly exposed," a jury could have considered that the actual written policies at the Cass County Jail were violated; naked people are never to be tied to chair. [Doc. 223, 429:14-430:6].

As to the second *Bell* factor, the manner in which Stewardson was tied to the chair was, again, brutal. He was slammed to the floor and physically assaulted. Again. As to the third *Bell* factor, a reasonable jury could determine since Appellant Stewardson already stopped trying to cover the camera (which was the justification, allegedly, for tying him to the chair), his being tied to the chair was not reasonable. A reasonable jury could determine that he was tied down, not to protect him[6] but to, as cautioned in the training itself, further demean and humiliate him. [Doc. 111-4 at 194:6-195:21 & 198:13-22]. At the Cass County jail, if you want clothes, you have to comply. [*Id*. at 200:6-9]. This

---

[6] The district court noted that "once release [from the chair], [Appellant Stewardson] began digging at his laceration to the point of making it bleed and forming a puddle of blood on the floor-once again signifying the danger he posed to himself." (Doc. 133 p. 8). In the light most favorable to Appellant Stewardson, same could have been due to his continued brutalization and humiliation as opposed to being evidence of danger of suicide. In any event, the temporal order of events means that this fact could not actually be considered as justification for what had already happened.

possibility is especially compelling at summary judgment considering that Appellant's nudity was demeaned in a humiliating fashion. The final *Bell* factor is less applicable as a seizure as opposed to a search per se, but again, his being tied to the chair led to the mocking of Appellant Stewardson's nudity. The haphazardly tossed blanket fell off him shortly after he was tied down. [Doc. 126, 399:9-11; see also Doc. 113-1]. He also did not have, as policy required, his smock. [Doc. 111-4, p. 193:24-194:3].

As to this claim on appeal, a reasonable jury could find that there is a custom to strip and/or tie down all uncooperative inmates. A reasonable jury could determine that as a natural and unavoidable result of that policy, some people are very likely going to be unreasonably stripped and/or tied down since there is no individual assessment of the need to do either. A reasonable jury could determine that Appellant was not reasonably stripped or tied down since, inter alia, it was total, brutal, and likely not for purposes of Appellant Stewardson's safety; rather for his unconstitutional punishment. Therefore, the district court's summary judgment ruling should be REVERSED and this matter should be REMANDED for Trial.

## CONCLUSION

Could a man with a history of suicidal ideation claim to be suicidal on another occasion just to stop repeated abuse by jail officers? Sure. And if the evidence were uncontracted, meaning Biggs' testimony wasn't equivocal and uncertain as to when Stewardson indicated he was suicidal, if he ever did; then the reasonableness of tying him to a restraint chair is still a jury question because the Cass County custom is to strip

everyone (suicidal or not) naked and tie them to a chair and jury could certainly find that Biggs' claimed belief that Stewardson was suicidal was simply pretext. Thus, a reasonable jury could find that the Cass County Sheriff has an unconstitutional custom of stripping and/or tying to a chair.

Likewise, A reasonable jury could find that Cross-Appellee Biggs committed excessive force when he used all his available force to strike Stewardson, and that Biggs failed to intervene following multiple instances of proven excessive force by Appellant Titus.

Concerning the District Court's summary judgment rulings to the contrary, the District Court should be reversed and those issues should proceed to trial.

Respectfully submitted,


*/s/ Duran L. Keller*
Duran L. Keller
KELLER LAW
8 North Third Street, Suite 403
Lafayette, Indiana 47901
(765) 416-8884

*Counsel for Plaintiff-Appellee*
*Blake Stewardson*

**CERTIFICATE OF COMPLIANCE**

This document complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32 because this document contains 8,730 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally-spaced typeface using Microsoft Word 2016 in 12-point Century Schoolbook style font.

Dated: May 8, 2024

*/s/ Duran L. Keller*
Duran L. Keller
Counsel for Appellant

## CIRCUIT RULE 30(d) STATEMENT

Pursuant to Circuit Rule 30(d), counsel certifies that all materials required by Circuit Rule 30(a) and (b) are included in the Appendix.

*/s/ Duran L. Keller*
Duran L. Keller

**CERTIFICATE OF SERVICE**

I hereby certify that on May 8, 2024 the Brief of Appellee was filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF. system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Duran L. Keller*
Duran L. Keller

# SUPPLEMENTAL APPENDIX

## Table of Contents to Supplemental Appendix

Opinion and Order entered March 9, 2021 (Doc. 133)......................................................SA-1

Opinion and Order entered October 14, 2021 (Doc. 145) ..............................................SA-16

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BLAKE STEWARDSON,

          Plaintiff,

     v.                             CAUSE NO. 3:18-CV-958 DRL-MGG

CASS COUNTY *et al.*,

          Defendants.

<u>OPINION & ORDER</u>

     Law enforcement arrested Blake Stewardson for operating a vehicle while intoxicated and resisting law enforcement. At the jail, he physically struggled with law enforcement on several occasions, so officers tied him to a restraint chair. He alleges that law enforcement violated his constitutional rights. The remaining defendants—Sheriff Randy Pryor, Deputy Sheriff Christopher Titus, and Deputy Cameron Biggs—request summary judgment.[1] The court grants the motion in part.

FACTUAL BACKGROUND

     On January 1, 2018, Logansport Police Officer Joseph Schlosser arrested Blake Stewardson for operating a vehicle while intoxicated and resisting law enforcement (ECF 103-1; ECF 103-2). He transported Mr. Stewardson, who was intoxicated and impaired, to the Cass County Jail (ECF 103-3 at 84, 91). Mr. Stewardson confronted jail staff there and made obscene comments to Deputy Sheriff Christopher Titus, who ordered him to face the wall in the entryway between two sets of sliding doors so that he could perform a pat-down search (ECF 103-5 at 78-80). While trying to put him against the wall, Mr. Stewardson resisted Deputy Titus (ECF 103-3 at 93; ECF 103-5 at 85). Deputy Titus threw

---

[1] Mr. Stewardson resolved his claims with the City of Logansport, Officer Joseph Schlosser, and the John Doe defendants (*see* ECF 132).

SA-1

Mr. Stewardson into the wall,[2] causing a laceration over his left eye (ECF 103-3 at 85, 151; ECF 103-6 ¶¶ 3-4). Deputy Cameron Biggs was the officer in charge and observed this initial altercation, though he was still outside the entryway when it occurred (ECF 103-6 ¶ 2; 111-3 at 106-108 (describing firsthand knowledge of attack; *see also* ECF 103-8 Video at 12:47:58-12:48:22 AM).

Mr. Stewardson thereafter fell to the floor, and Deputies Titus and Biggs—Deputy Biggs had walked to the entryway by this time—piled on top of him (ECF 103-3 at 86). Mr. Stewardson physically resisted the officers, and they exchanged obscenities (ECF 103-3 at 96, 121-22). Mr. Stewardson says he was again thrown into the wall (ECF 103-3 at 123-24). The deputies didn't finish their search because of his resistance, so they took him to a padded cell (ECF 103-3 at 124; 103-5 at 91-92). They did so because he wasn't complying with orders, had an open wound, and could be concealing contraband (ECF 103-5 at 92-93; *see* Video at 12:48:22-12:49:35 AM).

Upon entering the cell, Deputy Titus leg swept Mr. Stewardson to the ground after he refused to get on his knees, with words exchanged (ECF 103-3 at 87; ECF 103-5 at 106-07; Video at 12:49:34-12:49:40 AM). Deputies Titus and Biggs restrained Mr. Stewardson at various pressure points; and once satisfied he was secured, Deputy Titus tried removing Mr. Stewardson's handcuffs (ECF 103-3 at 87). Though he was able to remove the handcuff from the right hand, he couldn't remove the handcuff from the left hand because the key broke (ECF 103-5 at 114). Fearing he might use the handcuff still around his left wrist as a weapon, Deputies Titus and Biggs (along with other officers) continued restraining Mr. Stewardson (ECF 103-5 at 114; *see* Video at 12:49:35-12:54:44 AM).

Mr. Stewardson, while continuously resisting law enforcement's efforts, tried pulling his right arm away from Deputy Biggs while kicking another officer (ECF 103-3 at 95-96). Deputy Biggs responded with a "common peroneal knee strike" on Mr. Stewardson (ECF 103-5 at 236; *see* Video at

---

[2] The parties dispute the nature of this physical altercation (*see* ECF 111-3 at 107). That said, the court views the evidence in the light most favorable to the non-moving party.

SA-2

12:54:44-12:54:53 AM). Later, an officer brought bolt cutters to cut off the handcuff on Mr. Stewardson's left wrist (ECF 103-5 at 238). After the handcuffs were removed, Mr. Stewardson again resisted officers, so Deputy Biggs performed a second peroneal knee strike (Video at 1:15:20-1:15:40 AM). Throughout this period, Mr. Stewardson continued yelling threats and obscenities at the officers.

At some point, Mr. Stewardson said he was suicidal, so Deputy Biggs put him on suicide watch (ECF 103-5 at 119-20, 123-24). Arrestees on suicide watch are usually not allowed to have clothing because of the risk that their clothing could be swallowed to induce a stoppage of the air passageway or hang themselves (ECF 103-5 at 30). Perceiving this to be a risk, officers removed Mr. Stewardson's clothing while he continued resisting them, though they left him with a blanket (Video at 1:15:40-1:17:30 AM).

Once the officers left, Mr. Stewardson tried covering the surveillance camera with the blanket (Video at 1:18:22-1:18:47 AM). In response, Deputy Biggs decided Mr. Stewardson needed to be tied to the restraint chair to prevent him from blocking the camera or harming himself (ECF 103-5 at 141-42). Deputy Titus, acting under Deputy Biggs' authority as officer in charge, ordered Mr. Stewardson multiple times through the cell door to go to the back of the cell, but he refused to comply and threatened Deputy Titus in return (ECF 103-5 at 134). Deputy Titus then pinned Mr. Stewardson to the wall with the door so officers could enter the cell (ECF 103-5 at 133-38; Video at 1:19:13-1:19:17 AM). After entering, Deputy Titus ordered Mr. Stewardson to go to the back of the cell, but he refused (ECF 103-3 at 104). Accordingly, Deputy Titus "hip tossed" Mr. Stewardson to the ground (ECF 103-5 at 254), and Deputy Titus and other officers tied him to the restraint chair while he resisted (ECF 103-3 at 96-97). He was strapped naked, but they covered him with a blanket so that he was no longer exposed (Video at 1:19:13-1:21:57 AM).

After approximately 40 minutes, the officers released Mr. Stewardson from the restraint chair (ECF 103-6 ¶ 18) and left him with blankets (Video 2:01:52-2:15:02 AM). By then, the laceration above

3

SA-3

his left eye had stopped bleeding (ECF 103-6 ¶ 18). Mr. Stewardson began digging at the laceration, and it started bleeding, forming a puddle of blood on the floor (ECF 103-6 ¶ 19; Video 2:16:23-2:19:00 AM). Deputy Biggs alerted the nurse, and he applied gauze to the bleeding (ECF 103-6 ¶¶ 20-26; Video 2:34:19-2:35:26 AM). While Deputy Biggs was on duty, Mr. Stewardson never made a medical complaint, requested to see a nurse, requested to go to the hospital, or claimed to have an unmet medical need (ECF 103-6 ¶ 28). Deputy Biggs didn't believe Mr. Stewardson needed to go to the hospital for medical treatment or that he needed additional medical attention on top of what the nurse provided (ECF 103-6 ¶ 20).

Mr. Stewardson sued multiple government defendants for violations of his constitutional rights. Defendants Sheriff Randy Pryor, Deputy Sheriff Christopher Titus, and Deputy Cameron Biggs moved for partial summary judgment (ECF 101). The City of Logansport had moved to dismiss claims against John Doe defendants (ECF 109) and the City of Logansport and Officer Joseph Schlosser moved for summary judgment for themselves (ECF 112), but these parties subsequently settled and the court mooted these motions accordingly (ECF 132). The Sheriff defendants' motion for summary judgment is the only dispositive motion pending.

STANDARD

Several arguments have been mooted because Mr. Stewardson abandoned claims in his response.[3] The court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present the court with evidence on which a reasonable jury could rely to find in his favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). The court must construe all facts in the light most favorable to the non-moving party, view all reasonable

---

[3] The abandoned claims include counts 1-3 against Sheriff Pryor in his individual capacity; counts 3 against each defendant in their official capacity; counts 6-7 against each defendant in their individual capacity; count 8 against each defendant in their official capacity; and counts 9 and 10 as to all defendants.

inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491-92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

In its review, the court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Nor is the court "obliged to research and construct legal arguments for parties." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011). Instead, the "court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* The court must grant a summary judgment motion when no such genuine factual issue—a triable issue—exists under the law. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011).

DISCUSSION

Mr. Stewardson alleges violations of his constitutional rights under 42 U.S.C. § 1983. Section 1983 serves as a procedural vehicle for lawsuits "vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). To establish a § 1983 claim, he must show that he was "deprived of a right secured by the Constitution or federal law, by a person acting under color of law." *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006). He may bring a § 1983 claim only against those individuals "personally responsible for the constitutional deprivation." *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 614 (7th Cir. 2002).

A.      *The Court Denies Leave to File a Surreply.*

Before addressing the summary judgment motion's merits, the court addresses Mr. Stewardson's motion for leave to file a surreply (ECF 127). This motion was filed approximately five weeks after the remaining defendants filed their summary judgment reply. Mr. Stewardson doesn't explain the reason or good cause for a surreply or why it was necessary on this timeline, so the court won't reopen briefing. The court denies the motion.

B.    *The Court Grants Summary Judgment on Counts 1 and 2 Against Sheriff Pryor in his Official Capacity.*

Mr. Stewardson claims that the Cass County Sheriff's Department had an unconstitutional policy or practice (count 1) and failed to train and supervise its employees (count 2). Mr. Stewardson abandoned these claims against Sheriff Pryor in his individual capacity but maintains them in his official capacity only.

Suits against officials in their official capacity are not suits against the officials themselves but against their office—here, the Cass County Sheriff's Department. *See Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989). A government entity is legally responsible for a constitutional violation only when its policies, practices, or customs caused the violation. *Monell v. Dept. of Social Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). The policy or practice must be the "moving force" behind the constitutional violation; merely being a factor in the violation isn't enough. *See City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *Estate of Sims v. County of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007). There are three instances when government entities are liable: "(1) through an express policy that, when enforced, causes a constitutional deprivation; (2) through a wide-spread practice that although not authorized by written law and express policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) through an allegation that the constitutional injury was caused by a person with final decision policymaking authority." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005).

Mr. Stewardson doesn't argue that an express policy or person with final decision policymaking authority violated his constitutional rights. Instead, he says the Cass County Jail had a widespread unconstitutional practice or custom of stripping people naked and tying them to restraint chairs that they unlawfully used against him here, and that the Sheriff's Department failed to train and supervise employees. Mr. Stewardson's claim stumbles on two grounds: he doesn't show that the jail's practice of stripping people naked and tying them to a restraint chair is unconstitutional or that his rights were violated here. *See D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 800 (7th Cir. 2015) ("a

6

SA-6

municipality cannot be found liable under *Monell* when there is no underlying constitutional violation by a municipal employee").

Correctional officials may devise "reasonable search policies" to maintain institutional security and preserve internal order and discipline. *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 328 (2012); *see Bell v. Wolfish*, 441 U.S. 520, 546-47 (1979). Because officers "are often forced to make split-second judgments," *Graham v. Connor*, 490 U.S. 386, 397 (1989), they retain "substantial discretion to devise reasonable solutions to the problems they face," *Kingsley v. Hendrickson*, 576 U.S. 389, 399 (2015); *Florence*, 566 U.S. at 326; *see also Block v. Rutherford*, 468 U.S. 576, 585 (1984). For this reason, strip searches (including visual body cavity inspections) of all persons entering jail are constitutional, *see Florence*, 566 U.S. at 330, though there are some limits on how far a strip search may go, *Henry v. Hulett*, 969 F.3d 769, 778-79 (7th Cir. 2020). The court must assess the reasonableness of the actions in each circumstance, considering "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell*, 441 U.S. at 559.

Suicide risk often justifies stripping a detainee of clothing. *See Myers v. Cty. of Lake*, 30 F.3d 847, 850 (7th Cir. 1994) (suicidal "inmates may be deprived not only of belts and ties but also of pens, sheets, blankets, even clothing, for almost any object may be used to harm oneself"). Suicide is a "serious harm," and prison officials must "take reasonable preventative steps" when there is a "substantial risk that an inmate may attempt to take his own life." *Estate of Novack v. Cty. of Wood*, 226 F.3d 525, 529 (7th Cir. 2000); *see also Collignon v. Milwaukee Cty.*, 163 F.3d 982, 990-91 (7th Cir. 1998).

Law enforcement reasonably believed Mr. Stewardson was suicidal based on his own words to that effect (ECF 103-5 at 119-20). As Deputy Biggs recognized (ECF 103-5 at 30), suicidal detainees like Mr. Stewardson could use clothes to suffocate or hang themselves. Additionally, when law enforcement cannot properly search a detainee because he resists, as here, a risk exists that he is

7

SA-7

carrying harmful tools in his clothing. Indeed, allowing Mr. Stewardson to have kept his clothes could have risked a different constitutional violation—failing to take adequate measures to prevent his suicide. The action here was reasonable.

Restraint chairs are also reasonable on detainees like Mr. Stewardson who resist law enforcement, impede law enforcement's ability to do its job, or risk committing suicide. *See Rice v. Correctional Medical Servs.*, 675 F.3d 650, 668 (7th Cir. 2012). Mr. Stewardson had tried to cover up the security camera with a blanket, which would have blocked law enforcement's view of the cell. Deputy Biggs reasonably decided Mr. Stewardson should be placed in the restraint chair to prevent him from taking these measures. He was removed after 40 minutes. Once released, he began digging at his laceration to the point of making it bleed and forming a puddle of blood on the floor—once again signifying the danger he posed to himself. While in the restraint chair, the officers covered him in a blanket so he wasn't needlessly exposed. These are reasonable precautions under the circumstances.

Moreover, each officer was trained and supervised regarding the use of force and adequately reviewed each use of force, including the instance here (ECF 103-7 ¶¶ 4-7, 14, 20). Even if Mr. Stewardson could show that Deputy Titus used excessive force here, this isolated incident wouldn't be sufficient to establish the government entity's liability. *See Palmer v. Marion Cty.*, 327 F.3d 588, 597 (7th Cir. 2003). Neither the acts of stripping detainees nor tying them to a restraint chair are unconstitutional as applied here or as a general practice or policy under similar circumstances. Accordingly, the court grants summary judgment on the remaining official capacity claims in counts 1 and 2.

      B.    *The Court Grants Summary Judgment on Count 3 Against Deputy Biggs, Except to the Extent it Concerns a Failure to Intervene.*

Deputy Biggs moves for summary judgment on Mr. Stewardson's claim that Deputy Biggs used excessive force against him in violation of both the Fourth and Fourteenth Amendments with

both common peroneal knee strikes.[4] This circuit has recently specified that pretrial detainees' claims of excessive force, like Mr. Stewardson's, are governed by the Fourteenth Amendment, *see Mays v. Dart*, 974 F.3d 810, 819 (7th Cir. 2020), *petition for cert. filed*, though an earlier case said claims regarding confinement of a pretrial detainee who hasn't yet had a probable cause determination are governed by the Fourth Amendment, *see Williams v. Rodriguez*, 509 F.3d 392, 402-03 (7th Cir. 2007). Because *Mays* is this circuit's most recent pronouncement, the court follows it and applies the Fourteenth Amendment analysis, though the court notes that the result is the same under either the Fourth or Fourteenth Amendment analysis. Under the Fourteenth Amendment, the pretrial detainee "must show only that the force purposely or knowingly used against him was objectively unreasonable, rather than demonstrate deliberate indifference." *Mays*, 974 F.3d at 819 (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015)). The Fourth Amendment also carries the objective unreasonableness test for excessive force. *See Graham*, 490 U.S. at 388.

Qualified immunity further protects officers sued for money damages for alleged instances of excessive force, and Deputy Biggs asserts that protection here. Qualified immunity shields officials from liability unless a claimant proves two elements: first, that the official violated a constitutional right; and, second, that the right was clearly established at the time of the conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). The court may address either element first, *id.*, though this circuit has endorsed analyzing the second element first to prevent unnecessary litigation, *Kemp v. Liebel*, 877 F.3d 346, 351 (7th Cir. 2017).

Clearly established law must be "particularized" to the facts of a case, *Anderson v. Creighton*, 483 U.S. 635, 640 (1987), such that "existing precedent . . . place[s] the statutory or constitutional question beyond debate," *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Ashcroft*, 563 U.S. at 741). Mr.

---

[4] Sheriff Pryor also moved for summary judgment here, but Mr. Stewardson abandoned the claim against him in his response.

Stewardson cannot simply say an officer used excessive force and thereby overcome qualified immunity; indeed, this is but a general assertion not particularized to the facts of a case. *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019); *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018). He may instead point to "closely analogous cases" establishing the conduct as unlawful, or he may "demonstrate that the violation is so obvious that a reasonable state actor would know that what he is doing violates the Constitution." *Morrell v. Mock*, 270 F.3d 1090, 1100 (7th Cir. 2001); *see also Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 359 (7th Cir. 2005).

Mr. Stewardson doesn't cite any closely analogous cases—indeed, he cites none—and the court finds none from its independent review. To the contrary, courts have held that knee strikes are often reasonable when confronted with an individual resisting law enforcement. *See Smith v. Ball State Univ.*, 295 F.3d 763, 770 (7th Cir. 2002); *Pullen v. House*, 88 F. Supp.3d 927 (W.D. Wis. 2015). It is a use of force to subdue someone who is actively resisting without resorting to more severe measures of force. On this record, the knee strikes here weren't violating a constitutional right that was clearly established, particularly when the detainee was verbally aggressive, threatening, unpredictable, and unwilling to cooperate, nor were the knee strikes objectively unreasonable. His broken handcuff was a potential weapon. In the heat of these tense moments, a reasonable officer wouldn't believe that what Deputy Biggs did was obviously unconstitutional. He is entitled to qualified immunity.[5]

Mr. Stewardson pivots to say Deputy Biggs is liable for failing to intervene while Deputy Titus used excessive force. He didn't explicitly entitle such a claim in his complaint, but he needn't do so. He cannot amend his complaint in his summary judgment response. *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002). He needed only to provide adequate notice of his claims in his complaint. *See Currie v. Chhabra*, 728 F.3d 626, 629 (7th Cir. 2013). He did so here. He describes that Deputy Titus

---

[5] As a last-ditch effort, Mr. Stewardson says his resistance was justified because he was acting in self-defense, but he cites no evidence. This is mere speculation and without support, so insufficient to defeat summary judgment. *See Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007).

slammed Mr. Stewardson's face against the wall while "police staff watched" (ECF 28 ¶ 32), and he then describes additional acts that occurred while the officers were present, including Deputy Biggs. He argues that Deputy Biggs should have intervened at some point before Deputy Titus used a hip toss. Deputy Biggs doesn't argue that he is entitled to qualified immunity on this claim.

Liability for failing to intervene arises when a police officer has "a realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's right through the use of excessive force but fail[s] to do so." *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). A realistic opportunity to intervene may exist whenever an officer could have "called for a backup, called for help, or least cautioned [the officer] to stop." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). This claim almost always implicates genuine disputes of material fact, *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005), and here it does too.

Mr. Stewardson alleges three separate instances when Deputy Titus used excessive force, the first of which gave no time or opportunity for Deputy Biggs to intervene. Thereafter, particularly once on notice of his colleague's conduct, which for purposes of this motion hasn't been claimed to be reasonable, Deputy Biggs had the time and opportunity to intervene. As the officer in charge, he had the authority to do so. He observed the alleged instances of excessive force, and he had other officers available—including himself—who could have dealt with Mr. Stewardson rather than Deputy Titus. The events occurred over the course of several hours after all. A reasonable jury could find that Deputy Biggs failed to intervene as he should have. Accordingly, though the court grants summary judgment on the excessive force claim against Deputy Biggs, the court denies the motion on the failure to intervene claim in count 3.

C.    *The Court Grants Summary Judgment on Counts 4 and 5 in all Respects.*

Each defendant moves for summary judgment on Mr. Stewardson's claims that they failed to provide medical care for the laceration on his head (count 4) and cruelly and unusually punished him in violation of the Eighth Amendment in failing to do so (count 5).

As a pretrial detainee, Mr. Stewardson's failure to provide medical care claims are governed by the Fourteenth Amendment instead of the Eighth Amendment. *Miranda v. Cnty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018). Accordingly, the court applies the "objective unreasonableness inquiry" instead of the "deliberate indifference" standard. *Id.* Indeed, a pretrial detainee like Mr. Stewardson cannot be punished at all, which the Eight Amendment allows for prisoners, much less can he be punished "maliciously and sadistically." *Kingsley*, 576 U.S. at 400-01. The Fourteenth Amendment presents a lower bar, so to the extent he alleges an Eighth Amendment violation, he necessarily also alleges a Fourteenth Amendment violation. *See Lewis v. Downey*, 581 F.3d 467, 475 (7th Cir. 2009) ("anything that would violate the Eighth Amendment would also violate the Fourteenth Amendment"). Before recovering on this claim, though, a claimant must present "verifying medical evidence that the delay in medical care caused some degree of harm," which may come in the form of expert testimony or medical records. *Miranda*, 900 F.3d at 347; *see also Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008); *Williams v. Liefer*, 491 F.3d 710, 714-15 (7th Cir. 2007). Mr. Stewardson fails to do that here.

Even if he had, his claim still fails, as both Deputies Titus and Biggs are entitled to qualified immunity on this claim. *See Ashcroft*, 563 U.S. at 735. Deputy Biggs reasonably believed Mr. Stewardson was not suffering from a serious brain injury or that he needed additional medical attention on top of what the nurse provided. Indeed, any injury Mr. Stewardson suffered was due in large part to his own actions. The laceration had stopped bleeding, yet he dug at it and caused it to bleed again. The laceration was only about an inch in length, and the amount of blood originally coming out of it was normal. Not every laceration presents a serious medical need. *See Davis v. Jones*, 936 F.2d 971, 972-73

(7th Cir. 1991) ("No reasonable person would believe that a one-inch cut presents such a risk unless the injured person is a hemophiliac."). He also continuously resisted law enforcement, delaying opportunities to provide him with medical care. He never asserted a medical complaint, requested to see a nurse, said he needed to go to the hospital, or claimed to have an unmet medical need. Mr. Stewardson continued to communicate verbally. Once Mr. Stewardson made the cut start bleeding again, Deputy Biggs applied gauze to the bleeding and alerted the nurse. Under these circumstances, neither Deputies Titus nor Biggs was "plainly incompetent" or "knowingly violate[d] the law," *see Mullenix*, 577 U.S. at 12, nor were their actions objectively unreasonable, *Miranda*, 900 F.3d at 352.

To the extent Mr. Stewardson intends to pursue this claim against Sheriff Pryor, it fails because there was no underlying violation, and Sheriff Pryor wasn't personally involved or condoned the violation. *See Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1988). Accordingly, the court grants summary judgment on counts 4 and 5 in their entirety.

> D.     *The Court Grants Summary Judgment on Counts 6, 7, and 8 Against Defendants in their Individual Capacities.*

Mr. Stewardson asserted claims for assault (count 6), battery (count 7), and intentional infliction of emotional distress (count 8). These state-based claims against government employees in their individual capacities are barred when the employee acted within the scope of his employment. Ind. Code § 34-13-3-5(b); *Bushong v. Williamson*, 790 N.E.2d 467, 472 (Ind. 2003). Mr. Stewardson pleaded that both Deputies Titus and Biggs were acting within the scope of their employment with the Cass County Sheriff's Department here (ECF 28 ¶ 124). He doesn't now argue they acted outside the scope of their employment; indeed, his response doesn't address this argument. With his own admission that they were acting within the scope of their employment, these individual capacity claims against Deputies Titus and Biggs are barred.

This leaves only claims against Sheriff Pryor in his official capacity, which is a suit against the Cass County Sheriff's Department. *See Will*, 491 U.S. at 71. Indiana recognizes vicarious liability for

13

SA-13

government employers. *Cox v. Evansville Police Dept.*, 107 N.E.3d 453, 560 (Ind. 2018). Government entities are generally immune from liability under Indiana law, though, for losses resulting from the enforcement or failure to enforce a law. Ind. Code § 34-13-3-3(8). This doesn't apply, however, to assault, battery, and excessive force claims. *Wilson v. Isaacs*, 929 N.E.2d 200, 203-04 (Ind. 2010). Accordingly, the Sheriff's Department may be liable if Mr. Stewardson proves that Deputy Titus committed one of these torts, so the court denies summary judgment for Sheriff Pryor in his official capacity as to assault and battery.

This immunity applies to "add on" claims such as intentional infliction of emotional distress, however, *see City of Anderson v. Weatherford*, 714 N.E.2d 181, 185-86 (Ind. Ct. App. 1999); *Chapman v. Indiana*, 2014 U.S. Dist. LEXIS 63593, 11-12 (N.D. Ind. May 8, 2014) (Simon, J.); *Ashcraft v. City of Crown Point*, 2013 U.S. Dist. LEXIS 158003, 17-19 (N.D. Ind. Nov. 5, 2013) (DeGuilio, J.), so the court grants summary judgment for Sheriff Pryor in his official capacity on that claim only.

E.    *Summary.*

There are pending discovery disputes (ECF 80, 82, 87, 90). That said, Mr. Stewardson hasn't shown by affidavit or declaration that he cannot present facts essential to justify his position here, nor does he argue so in his briefing. *See* Fed. R. Civ. P. 56(d); *Smith v. OSF HealthCare Sys.*, 933 F.3d 859, 864-65 (7th Cir. 2019) (applying Rule 56(d) and holding that the "mere fact that discovery is incomplete is not enough to prevent summary judgment"). The pending discovery disputes don't impact the court's ruling, and those will be left for ruling by the magistrate judge to the extent this opinion doesn't moot any of them.

In summary, the court grants summary judgment for Sheriff Pryor in his official capacity on counts 1 and 2 alleging an unconstitutional practice or policy and failure to train and supervise employees, grants summary judgment on count 3 for Deputy Biggs in his individual capacity for excessive force though denies it for the failure to intervene claim, grants summary judgment for

defendants on counts 4 and 5 alleging inadequate medical care, grants summary judgment for defendants on counts 6, 7, and 8 alleging various state law claims, except as to the assault and battery claims against Sheriff Pryor in his official capacity, and grants summary judgment on counts 9 and 10.

For clarification, these claims remain for trial: excessive force against Deputy Titus and failure to intervene against Deputy Biggs in their individual capacities (count 3) and state law assault and battery claims against Sheriff Pryor in his official capacity (counts 6 and 7). The court grants summary judgment on all other claims, either as pursued in this briefing or abandoned. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 788 (7th Cir. 2008).

CONCLUSION

The court DENIES Blake Stewardson's motion for leave to file a surreply (ECF 127) and GRANTS IN PART and DENIES IN PART Sheriff Randy Pryor's, Deputy Cameron Biggs', and Deputy Sheriff Christopher Titus' motion for summary judgment (ECF 101).

SO ORDERED.

March 9, 2021                                      *s/ Damon R. Leichty*
                                                          Judge, United States District Court

SA-15

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BLAKE STEWARDSON,

   Plaintiff,

 v.          CAUSE NO. 3:18-CV-958 DRL-MGG

CASS COUNTY *et al.*,

   Defendant.

<u>OPINION & ORDER</u>

Earlier this year, the court granted and denied in part the defense's partial summary judgment motion leaving these claims for trial: excessive force against Deputy Christopher Titus, failure to intervene against Deputy Cameron Biggs, and state law assault and battery claims against Sheriff Randy Pryor in his official capacity. Deputy Biggs asks the court to reconsider. He says he lacked adequate notice of the failure to intervene claim and argues anew for qualified immunity.

The court has inherent power to revisit an interlocutory order. *See Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012); *Peterson v. Lindner*, 765 F.2d 698, 704 (7th Cir. 1985); *see also* Fed. R. Civ. P. 54(b) (interlocutory orders "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities"); *White v. Gerardot*, 509 F.3d 829, 833 (7th Cir. 2007) (denial of summary judgment is interlocutory). Motions for reconsideration serve a limited function: without new evidence, to correct manifest errors of law or fact. *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987).

A manifest error means a "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Burritt v. Ditlefsen*, 807 F.3d 239, 253 (7th Cir. 2015) (quoting *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000)). A motion for reconsideration may address circumstances when the court misunderstands a party, decides issues outside those presented by the parties, or makes

SA-16

an error of apprehension (not of reasoning). *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). A reconsideration motion is not a vehicle to rehash soundly rejected arguments. *See, e.g., Vesely v. Armslist LLC*, 762 F.3d 661, 666 (7th Cir. 2014).

Deputy Biggs merely rehashes an issue the court has soundly decided—that the first amended complaint articulated facts giving rise to a failure to intervene theory, one that remains reasonably for the jury to decide. *See Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000); *see also Currie v. Chhabra*, 728 F.3d 626, 629 (7th Cir. 2013) ("no duty to plead legal theories"). Deputy Biggs argues that each claim based on a "separate transaction or occurrence" must be stated in a separate count, *see* Fed. R. Civ. P. 10(b); but, to the extent this language makes sense here, the claims (excessive force and failure to intervene) are based on the same occurrence and operative facts.

Deputy Biggs argues too that the excessive force claim and failure to intervene claim are "legally distinct." But that alone doesn't translate into a straightjacket of separately labeled counts. "A complaint need not identify legal theories, and specifying an incorrect theory is not a fatal error." *Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011); *accord Ryan v. Ill. Dept. of Children & Family Servs.*, 185 F.3d 751, 764 (7th Cir. 1999). "Though legally distinct, the fate of [a] failure to intervene claim is closely linked to that of [an] excessive force claim since, by definition, if there was no excessive force then there can be no failure to intervene." *Abdullahi v. City of Madison*, 423 F.3d 763, 767 (7th Cir. 2005). Closely linked as theories, they may be closely linked in the factual allegations of a pleading.

Deputy Biggs cites *Guth v. Texas Co.*, 155 F.2d 563, 565-66 (7th Cir. 1946), which said that separate theories for negligence and account should've been stated in separate counts; but nonetheless the court of appeals—though agreeing with the district court that the negligence claim could not be maintained—specifically held that the district court erred by not considering the account theory that the pleading's facts supported and that the plaintiff pivoted to argue: "[I]ndeed we must, under the extremely liberal rules of the Federal Rules of Civil Procedure take any possible view of the facts which

2

SA-17

would entitle the plaintiff to relief." *Id.* at 566. Far from helpful to Deputy Biggs, the case supports this court's prior ruling.

The focus today remains on the facts, not labels. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011); *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1986). "Identifying legal theories may assist defendants and the court in seeing how the plaintiff hopes to prevail, but this organization does not track the idea of 'claim for relief' in the federal rules. Putting each legal theory in a separate count is a throwback to code pleading[.]" *N.A.A.C.P. v. Am. Fam. Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir. 1992). This remains true even in the wake of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft*, 556 U.S. 662. *See Whitaker v. Milwaukee Cnty.*, 772 F.3d 802, 808-09 (7th Cir. 2014). "[T]here must be sufficient facts pleaded to allow the court and the defendants to understand the gravamen of the plaintiff's complaint." *Doherty v. City of Chicago*, 75 F.3d 318, 326 (7th Cir. 1996).

Mr. Stewardson's failure to intervene theory wasn't an amendment, much less an improper amendment at summary judgment. Even when a plaintiff raises a so-called new claim at summary judgment, the court must first consider "whether [the new claim] changes the complaint's factual theory, or just the legal theories plaintiff has pursued so far." *Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 860 (7th Cir. 2017). If the new claim changes the complaint's factual theories, the court may construe it as an impermissible attempt to alter the complaint. *See id.* at 859; *Whitaker*, 772 F.3d at 808. On the other hand, if the new claim adds another legal theory based on facts already alleged in the complaint, the court should allow it to proceed "unless the changes unfairly harm the defendant or the case's development—for example, by making it more costly or difficult to defend the case, or by causing unreasonable delay." *Chessie Logistics*, 867 F.3d at 859 (quoting *Vidimos, Inc. v. Laser Lab Ltd.*, 99 F.3d 217, 222 (7th Cir. 1996)). Deputy Biggs offers no such reasons even if the court were to credit his view that this claim wasn't obvious. The court denies the motion to reconsider in this respect.

3

SA-18

Deputy Biggs next says qualified immunity serves as a defense to the failure to intervene claim. He argued this defense vis-à-vis the excessive force claim at summary judgment, not the failure to intervene claim. Though often arguments not made are waived, qualified immunity proves a unique defense that is suitable to address today. *See Mitchell v. Forsyth*, 472 U.S. 511, 526, (1985); *see also Henry v. Hulett*, 969 F.3d 769, 786-87 (7th Cir. 2020); *Jogi v. Voges*, 480 F.3d 822, 836 (7th Cir. 2008); *Apostol v. Gallion*, 870 F.2d 1335, 1338 (7th Cir. 1989); *Alvarado v. Picur*, 859 F.2d 448, 451 n.3 (7th Cir. 1988).

Qualified immunity shields officials from liability unless a claimant proves two elements: first, that the official violated a constitutional right; and second, that right was clearly established at the time of the conduct. *Ashcroft*, 563 U.S. at 735. The court may address either element first, *id.*, though this circuit has endorsed analyzing the second element initially to prevent unnecessary litigation, *Kemp v. Liebel*, 877 F.3d 346, 351 (7th Cir. 2017).

Officials are shielded from civil liability "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982)). A right is clearly established if it is sufficiently clear that a reasonable official would understand that his or her actions violate that right, meaning that existing precedent must have placed the statutory or constitutional question beyond debate. *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions" and "protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft*, 563 U.S. at 743 (internal quotations omitted). The law cautions against defining clearly established rights at a high level of generality. *Mullenix*, 136 S. Ct. at 308.

Mr. Stewardson alleges two instances when Deputy Biggs should've intervened to prevent Deputy Titus' excessive force—the first being when Deputy Titus tripped and slammed a handcuffed Mr. Stewardson to the floor and the second when Deputy Titus "hip-tossed" Mr. Stewardson

SA-19

approximately thirty-one minutes later. Of course, the court construes the facts in Mr. Stewardson's favor because this argument harkens back to the summary judgment motion. "[A]n officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know that excessive force was being used or that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). Triable issues remain for the jury as to Deputy Titus' use of force—and tied to it Deputy Biggs' failure to intervene. *See Abdullahi*, 423 F.3d at 774. On this record, Deputy Biggs is entitled to qualified immunity only in part.

As to the Deputy Titus' second instance of excessive force (*i.e.*, tripping Mr. Stewardson to the ground) and Deputy Biggs' first opportunity to intervene, it is clearly established that officers have a duty to intervene when a realistic opportunity would prevent use of excessive force on handcuffed individuals, individuals who are not or have stopped resisting arrest, and even individuals resisting law enforcement. *See Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000); *Yang*, 37 F.3d at 285-86; *Byrd v. Brishke*, 466 F.2d 6, 9-11 (7th Cir. 1972); *Byrd v. Clarke*, 783 F.2d 1002, 1007 (11th Cir. 1986); *Webb v. Hiykel*, 713 F.2d 405, 408 (8th Cir. 1983). Deputy Biggs may also be held to account for his failure to intervene in another officer's use of excessive force even while he too is using force. *See Sanchez v. City of Chicago*, 700 F.3d 919, 925-26 (7th Cir. 2012).

Only moments before Deputy Titus tripped and slammed a handcuffed Mr. Stewardson onto the ground, Deputy Biggs witnessed him slam Mr. Stewardson into a wall. Deputy Biggs was present and witnessed both uses of excessive force. Though the court recognizes that the circumstances surrounding Mr. Stewardson falling to the ground are highly disputed, it must accept all facts and reasonable inferences in the light most favorable to the non-moving party—here, Mr. Stewardson. *See Bellaver v. Quanex, Corp.*, 200 F.3d 485, 491-492 (7th Cir. 2000).

Furthermore, construing the facts in the light most favorable to Mr. Stewardson, Deputy Titus'

conduct would have been obvious as a violation to Deputy Biggs by mere observation that his fellow

deputy was using excessive force. *See e.g., Abdullahi*, 423 F.3d at 775; *see also Morrell v. Mock*, 270 F.3d

1090, 1100 (7th Cir. 2001) (clearly established law may also be shown by demonstrating "that the

violation is so obvious that a reasonable state actor would know that what he is doing violates the

Constitution."); *accord City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019).

Approximately thirty-one minutes after Deputy Titus tripped Mr. Stewardson onto the

ground, he "hip-tossed" him. Deputy Biggs wasn't present. He didn't observe this use of force or its

imminence. Mr. Stewardson asserts that Deputy Biggs failed to intervene to prevent such action after

witnessing previous instances of excessive force, but no such right is clearly established. Mr.

Stewardson doesn't cite any closely analogous cases, outside of a district court case, to establish that

Deputy Biggs' failure to intervene to prevent excessive force separated by time, personal observation,

and presence was clearly unlawful. *See Anderson v. Romero*, 72 F.3d 518, 525 (7th Cir. 1995) ("Neither

an unpublished circuit court decision nor a district court decision can clearly establish the law because

they are not authoritative as precedent and therefore do not establish the duties of nonparties."). In

its independent review, the court also finds none. Per clearly established statutory and constitutional

rights, a reasonable person, such as Deputy Biggs, wouldn't have known or understood that his failure

to intervene to prevent a later "hip-toss"—separated by time, observation, and presence—was

unlawful. *See Mullenix*, 136 S. Ct. at 308; *Pearson*, 555 U.S. at 231. Accordingly, Deputy Biggs is

qualifiedly immune as to the claim of failure to intervene to prevent Deputy Titus' "hip-toss," but not

as to the claim of failure to intervene to prevent Deputy Titus from tripping Mr. Stewardson.

On March 22, 2021, the court granted Mr. Stewardson's motion for leave to amend his

complaint for the sole purpose of dismissing the City of Logansport, Joseph Schlosser, and John Doe.

The same day, Mr. Stewardson filed his second amended complaint. It went beyond the scope of the

SA-21

court's order and pleaded new facts and changed legal theories. Such unauthorized amendments to the pleading at this stage in the litigation aren't allowed, particularly when discovery has closed and summary judgment has been decided. At no time did Mr. Stewardson request leave to expand his claims or provide cause for doing so.

Accordingly, the court strikes the second amended complaint. Because his dismissal of three defendants wasn't a dismissal of the entire action, Rule 41(a) doesn't apply. *See Taylor v. Brown*, 787 F.3d 851, 857-58 (7th Cir. 2015). Rule 15 instead authorizes a pleading's amendment that drops singular parties or claims, *id.* at 858, and the court should freely give leave when justice so requires, *see* Fed. R. Civ. P. 15. In addition, the defendants indicate that they have no objection to substituting the "Sheriff of Cass County" for the previously named Sheriff Randy Pryor, given the official capacity claims in counts 6 and 7. *See Sonner v. Reinhard*, 847 F.2d 384, 394 (7th Cir. 1988) ("An official-capacity suit is really just another way of suing the government."); Fed. R. Civ. P. 25(d) ("The officer's successor is automatically substituted as a party.").

As written, the rules could prove terribly inefficient for counsel and clients if they were required to file an amended complaint, thereby triggering a new answer, just to perform the simple task of removing a claim or party that everyone agrees has turned out immaterial to the suit. This is no less true given the liberty taken after the court's last order and the other disagreements still pending in this case. Accordingly, the court deems the amendment—by deletion and dismissal of the City of Logansport, Joseph Schlosser, and John Doe (rather than by interlineation) and the substitution of the Sheriff of Cass County—effectuated through this order under Rules 15 and 25(d) without further need to file an amendment. The court strikes the second amended complaint.

Accordingly, the court DENIES IN PART Deputy Biggs' motion for reconsideration as it relates to notice and his qualified immunity for his failure to intervene to prevent the tripping of Mr. Stewardson, but GRANTS IN PART the motion as it relates Deputy Biggs' qualified immunity for

SA-22

his failure to intervene to prevent the "hip-toss" [ECF 138]. The court also GRANTS the motion to strike [ECF 137], STRIKES the second amended complaint [ECF 136], and ORDERS the clerk to dismiss and terminate the City of Logansport, Joseph Schlosser, and John Doe and to substitute the Sheriff of Cass County for Sheriff Randy Pryor as a defendant.

SO ORDERED.

October 14, 2021                                        s/ Damon R. Leichty
                                                       Judge, United States District Court

8

37

SA-23