# In the
# United States Court of Appeals
## for the Seventh Circuit

BLAKE STEWARDSON,

*Plaintiff-Appellee/Cross-Appellant,*

v.

CHRISTOPHER TITUS,

*Defendant-Appellant,*

CAMERON BIGGS, et al.,

*Defendants/Cross-Appellees.*

_____

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division, No. 3:18-cv-.00958-DRL-MGG.
The Honorable Damon R. Leichty, Judge Presiding.

## REPLY BRIEF OF PLAINTIFF-APPELLEE/CROSS-APPELLANT BLAKE STEWARDSON

DURAN L. KELLER (*Counsel of Record*)
KELLER LAW LLP
8 North Third Street
Suite 403
Lafayette, Indiana 47901
(765) 444-9202

*Counsel for Plaintiff-Appellee/Cross-Appellant*

 

# Table of Contents

Table of Authorities ................................................................................................. ii

Argument ............................................................................................................... 1

I.    Summary Judgment as to Biggs' Excessive Force was Improperly Granted .............. 1

    A.    Biggs Misreads Stewardson's Summary Judgment and Appellate Argument on Excessive Force, that the Amount of Force Used Must be Reasonable, Independently of the Reasonableness of the Initial Decision to Use Force ....................................................................... 1

    B.    The District Court Only Analyzed the Reasonableness of Biggs' Initial Decision to Use Force, Not Whether the Amount of Force Biggs Used was Reasonable ............................................................... 3

    C.    Biggs' Appellate Arguments Fail to Address the District Court's Error ........................................................................................................ 5

II.   Summary Judgment as to Biggs' Failure to Intervene was Improperly Granted ................................................................................................... 6

    A.    Biggs Misremembers Stewardson's Summary Judgment and Appellate Argument on Failure to Intervene, that Failing to Warn Titus Against the Excessive Force Biggs Witnessed and then Giving Titus Unrestricted Access to Stewardson Where More Excessive Force Was Used Against Stewardson Violated the Fourth Amendment. ............................................................................................. 6

    B.    Biggs was sufficiently on notice from the Seventh Circuit that he had a duty to prevent Titus' additional excessive force .................................... 7

    C.    Whether Biggs was "present" is a question for the jury precluding qualified immunity summary judgment in this case ................................... 10

III.  Summary Judgment as to Cass County's Custom of Automatically Stripping All Uncooperative Inmates was Improperly Granted ................................ 12

    A.    Cass County Waived Argument Against this Claim by Failing to Argue Against it at Summary Judgment ......................................................... 12

    B.    The District Court's Conclusion Relied on Facts that Required a Jury to Resolve ................................................................................. 15

    C.    Cass County's Appellate Arguments Fail to Address the District Court's Errors ...................................................................................... 16

Conclusion ............................................................................................................ 18

# Table of Authorities

**Page(s)**

**Cases**

*Abdullahi v. City of Madison,*
423 F.3d 763 (7th Cir. 2005) ............................................................... 7-8

*Anderson v. Branen,*
17 F.3d 552 (2d Cir. 1994) ..................................................................... 6

*Byrd v. Brishke,*
466 F.2d 6 (7th Cir. 1972) ........................................................... 8, 10, 11

*Cyrus v. Town of Mukwonago,*
624 F.3d 856 (7th Cir. 2010) ............................................................... 1, 2

*Edwards v. Honeywell, Inc.,*
960 F.2d 673 (7th Cir. 1992) .................................................................. 14

*Gold v. Wolpert,*
876 F.2d 1327 (7th Cir.1989) ................................................................ 14

*Gonzalez v. City of Elgin,*
578 F.3d 526 (7th Cir. 2009) ................................................................... 1

*Heidelberg v. Manias,*
2020 WL 7034315 (C.D. Ill. Nov. 30, 2020) ............................................. 7

*Holman v. Indiana,*
211 F.3d 399 (7th Cir.  2000) ................................................................ 14

*Kingsley v. Hendrickson,*
576 U.S. 389 (2015) ................................................................................ 2

*Lanigan v. Village of East Hazel Crest, Ill.,*
110 F.3d 467 (7th Cir. 1997) ........................................................*passim*

*Lester v. City of Chicago,*
830 F.2d 706 (7th 1987) .......................................................................... 1

*Medical Assur. Co., Inc. v. Miller,*
No. 4:08–cv–29, 2010 WL 2710607 (N.D. Ind. Jul.7, 2010) ..................... 15

*Miller v. Gonzales,*
761 F.3d 822 (7th Cir. 2014) ................................................................... 8

*Narducci v. Moore,*
572 F.3d 313 (7th Cir. 2009) ................................................................. 14

*O'Neal v. Reilly,*
    961 F.3d 973 (7th Cir. 2020) ................................ 14

*Richman v. Sheahan,*
    512 F.3d 876 (7th Cir. 2008) ................................ 2

*Taylor v. City of Milford,*
    10 F.4th 800 (7th Cir. 2021) ................................ 1

*Wonsey v. City of Chicago,*
    940 F.3d 394 (7th Cir. 2019) ................................ 14

*Wright v. United States,*
    139 F.3d 551 (7th Cir. 1998) ................................ 14

*Yang v. Hardin,*
    37 F.3d 282 (7th Cir. 1994) ................................ 7, 8, 10, 12

**Argument**

I.   Summary Judgment as to Biggs' Excessive Force was Improperly Granted.

    A.    Biggs Misreads Stewardson's Summary Judgment and Appellate Argument on Excessive Force, that the Amount of Force Used Must be Reasonable, Independently of the Reasonableness of the Initial Decision to Use Force.

An officer's use of force is unreasonable if "the officer used greater force than was reasonably necessary to make the arrest." *Gonzalez v. City of Elgin*, 578 F.3d 526, 539 (7th Cir. 2009) <u>quoting</u>, *Lester v. City of Chicago*, 830 F.2d 706, 713 (7th 1987). The Seventh Circuit has cautioned that "summary judgment is often inappropriate in excessive-force cases because the evidence surrounding the officer's use of force is often susceptible of different interpretations." *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 862 (7th Cir. 2010); *Taylor v. City of Milford*, 10 F.4th 800, 811 (7th Cir. 2021).

Nothing in Biggs' brief counters the arguments presented by Stewardson. First, Biggs points out the reasons for his decision to use force by way of the two knee strikes. Doc. 25, pp. 19-20. But neither of these excuses acknowledges or answers the arguments Stewardson advanced at Summary Judgment. Doc. 111, p. 8 ("Any force beyond what is minimally necessary to gain a suspect's compliance, is by definition, excessive force. Defendant Biggs testified that his common peroneal knee strike was with the maximum force he could muster.")(citations omitted). This argument was known to Biggs both at Summary Judgment and on appeal. Doc. 25, p. 28. Even at this juncture, Biggs ignores that the excessiveness at issue regarded the *amount* of force that he used against Stewardson as opposed to the use of force itself.

Second, it is firmly established that the use of force is an independent analysis from the amount of force used. *Richman v. Sheahan*, 512 F.3d 876, 885 (7th Cir. 2008)("We repeat that what is excessive in the way of force used to seize a person is relative to circumstances, which in this case include the situation facing the deputies and the amount of force they used in trying to resolve it."); *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)("Considerations such as the following may bear on the reasonableness or unreasonableness of the force used [as relevant here]: the relationship between the need for the use of force and the amount of force used; any effort made by the officer to temper or to limit the amount of force."); *Cyrus,* 624 F.3d at 862 (overturning summary judgment because there was a question about the reasonableness of the amount of force used being "obviously material because the amount of force used bears directly on whether that force was a reasonable response to the situation faced by the officer.").

Biggs' argument against Excessive Force at Summary Judgment was limited to his initial decision to use force. Biggs concludes at summary judgment that "[t]he circumstances here justified the force Biggs used." Doc. 102, p. 16. However, Biggs did not address the fact that he used the maximum force he could when he struck Stewardson with his knees, argued specifically at Doc. 111, p. 8 ("Defendant Biggs testified that his common peroneal knee strike was with the maximum force he could muster. Ex. C, Notes of Testimony, Cameron Biggs, 49:16-50:2.").

Stewardson's argument against Biggs' Excessive Force at Summary Judgment could not have been more specifically stated. Doc. 111, p. 8 ("A Jury must determine

if automatically using the maximum amount of force against a suspect is excessive under the circumstances."). This is the same argument advanced here in this Appeal, yet Biggs again fails to address this argument. Doc. 25 pp. 26-34. All of Biggs' arguments only apply to the initial decision to use force. An officer can use reasonable force to gain control; there is no dispute as to that legal reality. None of Biggs' arguments address the decision to use the maximum force that he could under the circumstances was, in fact, reasonable. As noted in Stewardson's Summary Judgment response, "…the level of force used being beyond what is necessary as relates to the common peroneal knee strikes is a jury question. Ex. E, Rules and Regulations, p. 14." Biggs even violated a jail rule that required him to only use the minimal force necessary, yet Biggs used the maximum force available.

This Court should find that Biggs again waived this argument, and REMAND this matter for trial.

B.   The District Court Only Analyzed the Reasonableness of Biggs' Initial Decision to Use Force, Not Whether the Amount of Force Biggs Used was Reasonable.

The District Court determined that Biggs' knee strikes were not objectively unreasonable. The District Court noted that "courts have held that knee strikes are often reasonable when confronted with an individual resisting law enforcement." Doc. 25, p. 29 <u>citing</u>, Doc. 133, p. 10. The District Court then concludes, generally, that since Stewardson was "was verbally aggressive, threatening, unpredictable, and unwilling to cooperate[]" with the "potential weapon" of the broken handcuff, "a

reasonable officer wouldn't believe what Deputy Biggs did was obviously unconstitutional." *Id*.

The District Court's conclusion was error. Aside from the fact that Appellee Biggs waived the issue, even the language of the District Court's decision was that Court's "often" determine that knee strikes are reasonable. The Court is still required to determine if the knee strike was reasonable in this case. Since the District Court never addressed the evidence Stewardson presented that Biggs not only used force, but used as much of it as he could, granting Qualified Immunity on the amount of force was in error. Further, the clearly established law requirement is not a question of hyper-specificity as generally advanced by public officials invoking it. The law was undoubtedly clearly established that the amount of force used must be reasonable independently from the decision to use the force. The Court also erred by generally concluding factual issues when a jury could have determined that *at the time of the strikes in question*, Stewardson was not "verbally aggressive, threatening, unpredictable, and unwilling to cooperate." This evidence was not presented by Biggs at Summary Judgment, only that Stewardson had generally, and tried to (while face down and being held, since these knee strikes went into Stewardson's back area), "kick" Officer Funk.

This Court should find that the District Court answered questions reserved for a Jury, and REMAND this matter for trial.

C.    Biggs' Appellate Arguments Fail to Address the District Court's Error

Biggs' appeal argument is that Stewardson changed his position from Summary Judgment to the appeal. Doc. 25, p. 29 ("Stewardson's changed version of the facts and new arguments on appeal."). Initially, Biggs claims that Stewardson did not argue that the video precluded summary judgment as it showed he was not actively resisting. However, Stewardson specifically argued this point at Summary Judgment. Doc. 111, p. 8 ("Importantly, the video shows minimal resistance from Mr. Stewardson; while he was under the emotional and physical stress of being contorted at the bottom of a pile of men, while his head blood painted the floor in front of his face. Ex. A, Surveillance Video, Padded Room, 1:11:43-1:15:37, Ex. F, Notes of Testimony, Cass County, 234:5-239:13.").

Biggs also complains that Stewardson made new arguments on appeal, that the knee strikes were not "in the heat of the moment but over twenty-six minutes…". Doc. 25, p. 30. There is no question that the District Court had in evidence that Stewardson was on the ground for twenty-six minutes. The District Court concluded that this event was "in the heat of these tense moments[.]" The video however shows that there are lulls in the action (though not lulls in being held to the ground). Stewardson argues to this Court that the District Court erred in its conclusion based on the evidence before it. A jury question exists; whether during the time Stewardson was on the ground, and more specifically at the time of Biggs' knee strikes with maximum force, was there a "sudden, tense, or rapidly evolving outburst of

resistance" justifying not just the knee strikes, but more importantly, the maximum force knee strikes.

Biggs waived the theory of maximum force being excessive at Summary Judgment. The District Court did not evaluate the maximum force analysis, and Biggs failed to justify that failure or even make the argument here on appeal. Therefore, the excessive force claims against Biggs should be REMANDED for trial.

II.    Summary Judgment as to Biggs' Failure to Intervene was Improperly Granted.

      A.    Biggs Misremembers Stewardson's Summary Judgment and Appellate Argument on Failure to Intervene, that Failing to Warn Titus Against the Excessive Force Biggs Witnessed and then Giving Titus Unrestricted Access to Stewardson Where More Excessive Force Was Used Against Stewardson Violated the Fourth Amendment.

Biggs' argument (on reconsideration) at Summary Judgment is that Stewardson's theory was "novel." Doc. 139, p. 8. However, Stewardson demonstrated with Seventh Circuit law from 1997 that it generally an issue for the trier of fact to determine if a defendant officer was capable of preventing the harm caused by the other officer. Stewardson Response to Motion for Reconsideration, Doc. 140 at p. 3 citing, *Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 478 (7th Cir. 1997) ("Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other office is generally an issue for the trier of fact...") citing, *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). In *Lanigan*, the Court wrote, "Chief Robertson certainly could have intervened had he felt that further physical force might ensue between Sergeant Krane and Lanigan," but that he did not have

the opportunity to stop the one instance of force, <u>and there were no further acts or threats of further force</u>. *Lanigan,* at 478 (emphasis added).

Stewardson also argued that "evidence in the record that additional force was undertaken by Defendant Titus, after Defendant Biggs knew of Defendant Titus' uses of excessive force. Therefore, in accordance with the Seventh Circuit, this issue must be taken up by the jury. *Heidelberg v. Manias*, 2020 WL 7034315, *17 (C.D. Ill. Nov. 30, 2020) <u>citing</u>, *Yang v. Hardin*, 37, F.3d 282, 286 (7 1994)("The Seventh Circuit has found that a failure to intervene claims may go forward even when a complaint fails to explicitly specify the existence of an opportunity for an officer to have intervened if the facts demonstrate several opportunities during which the officer could have acted."). Here, Defendant Biggs was on notice of Defendant Titus' force, and had an opportunity to prevent Defendant Titus from using additional excessive force, twice." Doc. 140, p. 3.

> B.  Biggs was sufficiently on notice from the Seventh Circuit that he had a duty to prevent Titus' additional excessive force

While a plaintiff cannot over-generalize case law to defeat qualified immunity that does not mean a plaintiff must hyper specify case law to defeat qualified immunity. The clearly established law is that if an officer had an opportunity to prevent additional excessive force, he must take that opportunity. If he does not, and more excessive force occurs, the officer is liable for failing to intervene. *Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467 (7th Cir. 1997).

Since 2005 it has been clearly established that a "realistic opportunity" to intervene means a chance to warn the officer using excessive force to stop. *Abdullahi*

*v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005). In *Miller v. Gonzales*, 761 F.3d 822, 827 (7th Cir. 2014), this Court determined there was not a realistic opportunity for that officer to intervene "because the alleged excessive force was limited to this one act, there was no *ongoing* ability to intervene" (emphasis added). Further, the Seventh Circuit law on the issue however is clearly established that whether "opportunity" to intervene existed is a question of fact for the Jury. *Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 478 (7th Cir. 1997)(additional citations omitted). There was no dispute at Summary Judgment that Biggs witnessed multiple instances of excessive force yet still sent Titus, unsupervised, into Stewardson's cell. There is no dispute that Biggs had about a half hour to intervene before Titus hip tossed Stewardson to the ground. Yet, the District Court concluded that the case law did not clearly establish that Deputy Biggs' "failure to intervene to prevent excessive force separated by time, personal observation, and presence was clearly unlawful" and granted Biggs qualified immunity as to the hip toss. Doc. 145, p. 6.

Since 1972 it has been clearly established that "one who is given a badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence *or otherwise within his knowledge.*" *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)(emphasis added) <u>citing</u>, *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972).

Stewardson argued that the wall slam put the other officers, particular the Officer in Charge Biggs, that excessive force was committed and their duty to intervene activated. This Court established that acting with "reckless disregard of

[another's] actions" could expose an officer defendant to a failure to intervene claim. *Lanigan* at 478. A jury must determine if, under the totality of the circumstances, Biggs recklessly disregarded Titus' prior conduct resulting in the hip toss. A jury could conclude that the reason Biggs was not within arm's reach for the hip toss is because, with a "reckless disregard of [Titus'] actions" (*Lanigan* at 478) he sent Titus into Stewardson's cell. A jury must determine if, under the totality of the circumstances, Biggs had the ability to try to do *anything* to prevent Titus from using more force against Stewardson.

The District Court agreed, "Deputy Biggs had the time and opportunity to intervene. As the officer in charge, he had the authority to do so. He observed the alleged instances of excessive force, and he had other officers available—including himself—who could have dealt with Mr. Stewardson rather than Deputy Titus. The events occurred over the course of several hours after all. A reasonable jury could find that Deputy Biggs failed to intervene as he should have." Doc. 133, p. 11.

In ruling on the Motion for Reconsideration, the District Court goes backwards. (Doc. 145, p. 6, "Approximately thirty-one minutes after Deputy Titus tripped Mr. Stewardson onto the ground, he "hip-tossed" him. Deputy Biggs wasn't present. He didn't observe this use of force or its imminence. Mr. Stewardson asserts that Deputy Biggs failed to intervene to prevent such action after witnessing previous instances of excessive force, but no such right is clearly established.").

Doc. 145 does not logically fit with Doc. 133. The District Court ruled that due to the wall slam, Biggs had notice of Titus' excessive force prior to the trip, which

occurred about thirty-one minutes before the hip toss. Therefore, by the time of the hip toss, Biggs was on extra notice of Titus' excessive force. The District Court ruled that the thirty-ish seconds between the wall slam and the trip offered Biggs a realistic opportunity to intervene and prevent the trip. Therefore, by the time of the hip toss, Biggs had about sixty times the realistic opportunity to prevent the hip toss.

C.    Whether Biggs was "present" is a question for the jury precluding qualified immunity summary judgment in this case

The Seventh Circuit describes "failure to intervene" to occur when an officer is "present" and "has a realistic opportunity to prevent" constitutional violations. The District Court determined that Biggs' was not "present" when Titus "hip-tossed" Stewardson. Doc. 145, p. 6 ("Deputy Biggs wasn't present. He didn't observe *this* use of force or its imminence.")

This raises the issue of what it means to be present in the context of failure to intervene. As Biggs and the District Court view things, presence means that an officer must be within arm's reach of the constitutional violation in order to have a duty to intervene against it. However, there is nothing in the case law that defines presence as "physically within arm's reach" of a constitutional violation. Seventh Circuit law attaches liability for failure to intervene when officers were violating the constitution "in his presence *or otherwise within his knowledge*." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)(emphasis added) <u>citing</u>, *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972). This language necessarily means that arm's length physical presence is not an element of a failure to intervene claim in this Circuit.

In this case, there is no question that Biggs was present; he was in the jail, in that unit of the jail, and in charge of that unit in the jail. Doc. 133, p. 2 ("Deputy Cameron Biggs was the officer in charge…"). Biggs also was present and in charge of Titus when he ordered Titus to return to Stewardson's cell to tie him to a chair. *Id.* at p. 3 ("…Deputy Biggs decided Mr. Stewardson needed to be tied to the restraint chair to prevent him from blocking the camera or harming himself. Deputy Titus, acting under Deputy Biggs' authority as officer in charge…Deputy Titus 'hip tossed' Mr. Stewardson to the ground[.]"). Certainly, the fact that Biggs was not physically within arm's distance of Titus at the precise time of the hip toss is a fact favorable to the defense. However, the procedural posture was one of summary judgment where all inferences are made in Stewardson's favor as the non-moving party.

"Presence" in the context of a failure to intervene claim is not only about being in arms' reach of an offending officer, but really whether the officer was "capable of preventing the harm caused by the other officer." *Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 478 (7th Cir. 1997). This conclusion—that arms reach presence is not dispositive—is necessary since under *Byrd v. Brishke* failure to intervene liability attaches if the officer fails to stop other officers in his presence *or otherwise* within his knowledge." 466 F.2d 6, 11 (7th Cir. 1972). Under the law of this Circuit, that question "is generally an issue for the trier of fact…". *Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 478 (7th Cir. 1997).

According to the District Court, "[a] realistic opportunity to intervene may exist whenever an officer could have 'called for a backup, called for help, or least

cautioned [the officer] to stop.'" Doc. 133, p. 11 <u>citing</u>, *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). The District Court found that Biggs could have called for backup, called for help, or at least cautioned Titus to stop using excessive force between the sally port and the padded cell thereby preventing the trip. Then, the District Court's reconsideration ruling circles back on itself; the additional notice of excessive force (the trip) and the additional time available to Biggs (the thirty-one minutes) somehow removed Biggs' realistic opportunity to intervene. Stated another way, if Biggs intervened before and thus prevented the trip, there would not have been a hip toss.

III. Summary Judgment as to Cass County's Custom of Automatically Stripping All Uncooperative Inmates was Improperly Granted.

    A.    Cass County Waived Argument Against this Claim by Failing to Argue Against it at Summary Judgment.

In the Operative Pleading, Stewardson alleged that "The Cass County Sheriff's Department has, or had, a consistent and widespread custom and policy of stripping inmates naked and tying them to a chair." Doc. 28, ¶ 65. Separately, Stewardson alleged that "The Cass County Sheriff's Department has, or had, a policy and a custom of beating inmates and using excessive force." Doc. 28, ¶ 66.

In its Summary Judgment Briefing, Cass County mentions Stewardson's "Policies, Practices & Customs" in its Statement of Material Facts. Doc. 102, pp. 9-10. Cass County did not however, ever argue that it should win Summary Judgment against Stewardson's "custom of stripping inmates naked and tying them to a chair" claim. Doc. 102, generally. All of the Summary Judgment *Monell* arguments that Cass County made were about "excessive force" (Doc. 28, ¶ 66), and none were about

Doc. 28, ¶ 65 as follows through a review of its Brief at Doc. 102, pp. 11-14, claiming "Stewardson's excessive force official capacity claims fail as a matter of law."

Ultimately, Cass County admitted that "removing a persons' clothing and the use of restraint chairs is governed by the Sheriff's policies, practices, *and customs* relating to the use of force[.]" Doc. 116, p. 2. Stewardson presented evidence of the custom in the form of the Interrogatory Response identifying the myriad times that someone was stripped and/or tied to a chair as well as jail officer testimony that *anyone* who is uncooperative is stripped. <u>See</u>, inter alia, Doc. 111, p. 7. On the basis of waiver, especially since the Motion was designated by Cass County to have been a "partial" motion, this claim should have been tried.

As to the Summary Judgment arguments actually made by Cass County, first, was that there can be no *Monell* liability based on an express policy. *Id.* at pp. 12-13 ("Here, there can be no liability based on an express policy of the Cass County Sheriff's Office…[Sheriff Pryor] had no personal involvement or knowledge of the incidents at the jail that are the subject of this lawsuit."). Stewardson alleged a custom in addition to policy. Doc. 28, ¶ 65. The absence of an express policy is not fatal to the *Monell* claim made in this case.

Second, Cass County argues that the jail staff was properly trained. *Id.* at p. 13 (…"jail's staff was required to meet or exceed the State of Indiana's training requirements…"). While a Monell claim can be based on failure to train, that is not the Monell claim alleged in this case. Third, Cass County states that there is a three-level review of force process. *Id.* at p. 13-4. This may be true, but it does not address

whether a custom of stripping exists and that Stewardson was stripped in accordance with that custom. Fourth, Cass County states that there are always supervisors at the jail. *Id.* at p. 14. Again, the truth of this fact does not address Stewardson's claim at Doc. 28, ¶ 65.

Finally, Cass County argues that the three-level review is designed to prevent patterns of abuse. *Id.* at p. 14. Whether that review accomplishes the design and prevents patterns of abuse would be an issue of fact for the jury to decide, particularly considering evidence presented by Stewardson at Summary Judgment that such policy failed to eliminate the custom. Doc. 111, p. 7 ("Nowhere do Defendants articulate why, or how, Mr. Stewardson has failed to establish a custom of tying inmates to chairs while naked. Ex. D., Notes of Testimony, Christopher Titus, 192:22-200:9; Ex. G. p. 5-7, Interrogatory Response No. 19.").

It was not until the Reply that Cass County argue that Stewardson was stripped and put in the chair because he was suicidal. Doc. 102, generally. Arguments cannot be raised for the first time on reply. *Wright v. United States*, 139 F.3d 551, 553 (7th Cir. 1998); *Wonsey v. City of Chicago*, 940 F.3d 394, 398 (7th Cir. 2019); *O'Neal v. Reilly*, 961 F.3d 973, 974 (7th Cir. 2020); *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009); *Gold v. Wolpert*, 876 F.2d 1327, 1331 n. 6 (7th Cir.1989); *Holman v. Indiana*, 211 F.3d 399, 405 n. 5 (7th Cir. 2000); *Edwards v. Honeywell, Inc.*, 960 F.2d 673, 674 (7th Cir. 1992)(finding that the district court could not rule on summary judgment on a ground raised in a reply brief because the plaintiff had an inadequate opportunity or no opportunity to respond). This rule serves to prevent the nonmoving

party from being sandbagged. See, *Medical Assur. Co., Inc. v. Miller*, No. 4:08–cv–29, 2010 WL 2710607, * 4 (N.D.Ind. Jul.7, 2010).

B.    The District Court's Conclusion Relied on Facts that Required a Jury to Resolve.

The District Court determined that Stewardson "did not show that the jail's practice of stripping people naked and tying them to a restraint chair is unconstitutional or that his rights were violated here." Doc. 133, p. 6. The District Court noted that stripping inmates who come into the jail is reasonable and that stripping suicidal inmates is reasonable. Doc. 133, p. 7. The District Court then concludes what the officers who stripped Stewardson "reasonably believed" regarding Stewardson's state of mind. Doc. 133, pp. 7-8 ("Law enforcement reasonably believed Mr. Stewardson was suicidal based on his own words to that effect…allowing Mr. Stewardson to have kept his clothes could have risked a different constitutional violation—failing to take adequate measures to prevent his suicide. The action here was reasonable.").

The District Court's conclusion was error. Aside from the fact that Cass County waived the issue, it never once addressed the evidence Stewardson presented that the custom existed. Doc. 102, 116, generally. While Biggs (for the first time on Reply) argues that Stewardson said he was suicidal, Biggs could have been lying. Stewardson was not sure whether he said it or not. Doc. 116, p. 4 ("[Stewardson] has said only that he is not sure whether he told them that he was suicidal.").

Also, as pointed out in Stewardson's Summary Judgment response, the published Suicide Watch Policy was violated in this case. Doc. 111, p. 6 ("Mr.

Stewardson was stripped and left, against policy, naked, tied to a chair, with only a blanket as opposed to a blanket and gown. Ex. E, Rules and Regulations, p. 21; Ex. D, Notes of Testimony, Christopher Titus, 203:8-12."). This means that whether Stewardson in fact stated that he was suicidal is a question of fact for the jury to determine. In the light most favorable to Stewardson who was the non-moving party, a jury would have to determine that Stewardson in fact said he was suicidal. Then, the jury would have to determine if Stewardson was tied to a chair because of that statement or because he was "uncooperative."

C.   Cass County's Appellate Arguments Fail to Address the District Court's Errors

Cass County's arguments on appeal label Stewardson's appellate arguments as "new." Doc. 25, pp. 42-44. As an initial matter, this position essentially concedes Stewardson's argument on appeal that Cass County waived this claim to trial at Summary Judgment. Moreover, Stewardson made many of these arguments at Summary Judgment, particularly that Titus' testimony established the existence of the custom to strip uncooperative inmates since, "Q- So suicidal or not, somebody doesn't comply with the strip search and intake procedures, their clothes are coming off, right? A- That was—that was kind of the—kind of the rules. I mean, that was what we were told. Let's just put it that way. . .I mean, I can't really recall who said it. But it was just one of those things that was said. It was kind of passed along— along the way. And then everybody had—knew that that's what you were supposed to do." Doc. 111, p. 6, n. 2. As noted above, this has never been acknowledged by Cass County and was critical question for the jury to resolve.

Cass County also argues on appeal that record citations were incorrect. Stewardson cited to the video evidence that the blanket Stewardson tried to use to cover the camera could not, in fact, cover the camera. The citation proper is akin to a Scrivener's Error. Moreover, this is a fact acknowledged by Cass County in its own briefing. Doc. 25, p. 23 ("…Stewardson picked up a blanket and tried to cover the surveillance camera. [Dist. Ct. Dkt. 103-8 (Aff. to Authenticate Video, video from "Padded Cell 1" camera at approximately 1:18:26 a.m. to 1:18:46 a.m. (see screen shot 20)).] At that point, Biggs decided that Stewardson needed to be placed in the restraint chair to prevent him from blocking the camera and harming himself when he was not in the camera's view. [Dist. Ct. Dkt. 103-5 (30(b)(6) Dep. Vol. II p. 141, l. 7 – p. 142, l. 4).]." The Court can take judicial notice that the event was on video and cited in Cass County's Brief and that the blanket did not cover the camera. In the light most favorable to Stewardson, this is a fact that could lead a reasonable jury to question Biggs' motive in ordering Stewardson to be tied in the restraint chair.

On appeal, Cass County argues is that "[t]he Court will likely recognize on its own that many of the inferences Stewardson claims the district court should have drawn in his favor are conclusory, illogical, and supported by nothing more than his own speculation and conjecture." Doc. 25, p. 44. Cass County does not identify anything specific that is conclusory, illogical, and speculative. Doc. 25, generally. Cass County does not explain how Stewardson's arguments are conclusory, illogical, or speculative. *Id*. Therefore, it is not possible to give a more specific reply to these arguments.

On appeal, this Court is reviewing the District Court's Opinion, and Stewardson has analyzed the District Court's conclusions. Never making any argument concerning Mr. Stewardson's theory that Cass County had a *custom* which violates *Monell*, Cass County complains on appeal that Stewardson did not make all of his arguments at summary judgment. But Stewardson had no reason to make arguments below when Cass County never raised the custom *Monell* claim, resulting in Cass County's waiver. The District Court therefore should have permitted that claim too to proceed to trial.

## Conclusion

Biggs waived argument that the amount of force he used was reasonable at Summary Judgment and on Appeal. The District Court should not have granted Summary Judgment since it did not consider the evidence and arguments in the light most favorable to the non-moving party. Whether Biggs had a reasonable opportunity to intervene despite not being present at the force in issue is a question for the Jury as established by Seventh Circuit precedent. The District Court should not have granted Summary Judgment since Biggs witnessed the force and then allowed Titus unsupervised access to Stewardson. Cass County waived suicide arguments at Summary Judgment, and that theory should have been tried to a Jury. The District Court should not have granted Summary Judgment since it relied on controverted facts that should have been resolved by a Jury. The Monell claim made at Doc. 28, ¶ 65 should be remanded for Trial.

Respectfully submitted,


*/s/ Duran L. Keller*
Duran L. Keller
KELLER LAW
8 North Third Street, Suite 403
Lafayette, Indiana 47901
(765) 416-8884

*Counsel for Plaintiff-Appellee*
*Blake Stewardson*

**CERTIFICATE OF COMPLIANCE**

This document complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32 because this document contains 5,074 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally-spaced typeface using Microsoft Word 2016 in 12-point Century Schoolbook style font.

Dated: June 28, 2024

*/s/ Duran L. Keller*
Duran L. Keller
Counsel for Appellant

**CERTIFICATE OF SERVICE**

I hereby certify that on June 28, 2024 the Reply Brief of Appellee/Cross-Appellant was filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF. system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Duran L. Keller*
Duran L. Keller